UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMY LYONS, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LITTON LOAN SERVICING LP, *et al.*,<br><br>Defendants. | ECF Case<br><br>No. 13 Civ. 00513 (ALC)<br><br>**DECLARATION OF RONALD K. WILSON REGARDING ANTHONY PAPAPIETRO** |

I, Ronald K. Wilson, declare as follows:

1. My name is Ronald K. Wilson. I make this declaration pursuant to the provisions of 28 U.S.C. § 1746. The statements set forth in this declaration are based upon my personal knowledge and a personal review of the business records of Defendant American Security Insurance Company ("ASIC"), and the Declaration of Rebecca H. Voyles filed in this case contemporaneously herewith (the "Voyles Declaration" or "Voyles Dec."). I have reviewed the Second Amended Class Action Complaint in this case.

2. I am over 21 years of age and competent to testify to the statements set forth in this declaration.

3. I make this declaration to document the circumstances surrounding the issuance of hazard insurance coverage by ASIC to Anthony Papapietro and Defendant Ocwen Loan Servicing, LLC to protect the improvements on real property located at 404 Northgate Estates, Stroudsburg, Pennsylvania 18360 (the "Papapietro Property").

4. I am the Vice President of Account Management with Assurant Specialty Property. Assurant Specialty Property ("ASP") is a trade name and service mark sometimes

used by various companies, including ASIC, that provide lender-placed insurance and outsourcing solutions. My duties include managing lender-placed and insurance monitoring programs for lenders and loan servicers with whom ASP companies work. Ocwen Financial Corporation and its affiliate Ocwen Loan Servicing, LLC (collectively, "Ocwen") is one of the lenders/loan servicers with whom ASP insurance companies work, and I manage and oversee the processes and procedures these companies use in carrying out their work for Ocwen.

5.  I am familiar with ASIC's duties to track borrower compliance with insurance obligations and to place lender-placed insurance for Ocwen's loan servicing portfolio. Those duties arise under agreements with Ocwen and under policies and procedures developed by Ocwen. Assurant, Inc. is not a party to those agreements. Pursuant to those agreements, policies and procedures, ASIC is required, among other things, to (a) monitor the status of insurance coverage on properties where the deed of trust/security deed/mortgage indebtedness is serviced by Ocwen, (b) place appropriate policies on those properties in favor of Ocwen if the homeowner/borrower fails to provide evidence of acceptable insurance coverage to Ocwen, or if the insurance coverage obtained by the homeowner/borrower lapses, is insufficient, is not acceptable, or becomes unacceptable, and (c) cancel the placed coverage if evidence of other acceptable insurance coverage on the property is provided by or on behalf of the homeowner/borrower. Among other things, Ocwen authorizes and directs ASIC to send letters on Ocwen letterhead to homeowners/borrowers under mortgages, security deeds, or deeds of trust serviced by Ocwen when such homeowners/borrowers do not provide evidence of acceptable insurance coverage to Ocwen. In addition, ASIC tracks the insurance coverage status of properties in Ocwen's portfolio to properly assess the risk to the portfolio in order to manage

capital levels, obtain reinsurance, set claim reserves, and determine claim and other insurance processing resource needs.

6. Pursuant to the agreements with Ocwen, ASIC monitored insurance coverage on the Papapietro Property, which secures a loan to Mr. Papapietro that is serviced by Ocwen. I have reviewed ASIC's business records regarding Mr. Papapietro's loan, which include information such as the terms and limits of the insurance coverage for the Papapietro Property placed by Ocwen, as well as the premiums charged for such coverage.

7. Attached hereto as Exhibit A is a true and correct copy of a letter sent to Mr. Papapietro on or about September 14, 2011.

8. Attached hereto as Exhibit B is a true and correct copy of a letter and insurance binder issued by ASIC sent to Mr. Papapietro on or about October 16, 2011.

9. Attached hereto as Exhibit C is a true and correct copy of a letter and policy issued by ASIC sent to Mr. Papapietro on or about November 26, 2011. This coverage provided hazard insurance for the Papapietro Property with limits of liability of $389,615 for the period from September 1, 2011 to September 1, 2012 ("Papapietro Policy"). The annual total charged for the Papapietro Policy was $3,273.00.

10. Exhibits A through C to this declaration are retained as business records of ASIC and are maintained in the ordinary course of business.

11. The annual premium charged for the Papapietro Policy was calculated based on premium rates that were filed by ASIC with the Pennsylvania Insurance Department ("PAID") and approved by the PAID. *See* Voyles Declaration and Papapietro Policy. The rates approved by the PAID (the "Filing") were applicable to the Papapietro Policy because it was issued in 2011. *See* Papapietro Policy; Voyles Dec. ¶¶ 9-11 and Exhibits 5-7 thereto. Attached hereto as

Exhibit D are copies of the applicable Manual Pages from the Voyles Declaration that show that the premium charged for the Papapietro Policy was based upon filed and approved premium rates. *See* Voyles Dec. Exhibit 7.

12. The base premium rate ("Base Rate") for the Papapietro Policy was $1.20 per $100 of coverage. Exhibit D.

13. The Filing provided that base rates for residential dwelling policies, such as the Papapietro Policy, were modified based upon the deductibles provided by the policies. *Id.* Because the Papapietro Policy's deductible was $1,000 for All Perils except a $1,000 deductible for Theft or Vandalism and Malicious Mischief and a $1000 deductible for Theft or Vandalism and Malicious Mischief on a vacant property ($1000/$1000/$1000), *see* Exhibit C at 3 (Declarations page), the Base Rate was subject to a deductible adjustment of Base Rate x .70. Exhibit D.

14. The Filing provided that premium rates could be modified by as much as (+) or (-) 25% based upon the unique risk characteristics of the mortgagee's loan portfolio. Exhibit D at 3.

15. The annual premium amount charged for the Papapietro Policy was calculated based on the rates reflected in the Filing, as follows:

The base premium rate of $1.20 was adjusted pursuant to the deductible adjustment:

$1.20 x .70 = $0.84

The adjusted premium rate applicable to the Papapietro Policy was $0.84 per $100 of coverage. The Papapietro Policy provided a limit of liability in the amount of $389,615. Exhibit C at 3 (Declarations page). The annual premium amount was calculated as follows:

$0.84 x 3896.15 = $3,272.77, rounded off to $3,273.00, the actual premium charged.

4

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on January 16TH, 2014.

*Ronald K. Wilson*
Ronald K. Wilson

*264402.2*