UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMY LYONS, JACQUELINE LYONS, LISA CHAMBERLIN ENGELHARDT, GERALD COULTHURST, ENRIQUE DOMINQUEZ FRANCES ERVING, JOHNNIE ERVING ANTHONY PAPAPIETRO, and SHEILA D. HEARD individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>LITTON LOAN SERVICING LP, GOLDMAN SACHS GROUP, INC., ARROW CORPORATE MEMBER HOLDINGS LLC, SAXON MORTGAGE SERVICES, INC., MORGAN STANLEY, OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, LLC, ASSURANT, INC. (d/b/a Assurant Specialty Property), AMERICAN SECURITY INSURANCE COMPANY, STANDARD GUARANTY INSURANCE COMPANY, AMERICAN MODERN INSURANCE GROUP, and AMERICAN MODERN HOME INSURANCE COMPANY<br><br>   Defendants. | Case No. 1:13-cv-513-ALC-HBP |

**MEMORANDUM OF LAW IN SUPPORT OF SAXON MORTGAGE
SERVICES, INC. AND MORGAN STANLEY'S MOTION TO SEVER**

  Defendants Saxon Mortgage Services, Inc. ("Saxon") and Morgan Stanley, by and

through their undersigned counsel, respectfully submit this memorandum in support of their

motion for an order severing the improperly joined claims asserted against Saxon and Morgan

Stanley in Plaintiffs' Second Amended Class Action Complaint (the "Complaint" or "Compl."),

pursuant to Federal Rules of Civil Procedure 20(a) and 21.[1]  Saxon and Morgan Stanley respectfully submit that any joinder of claims in this action must be on a servicer-insurer basis, as described at p. 11, below.

## INTRODUCTION

The claims of Plaintiffs Frances Erving and Johnnie Erving (the "Ervings") against Saxon and Morgan Stanley have been variously pending in this action and others since December 2012. The present Complaint is the *fourth* to assert claims based on Saxon's placement of hazard insurance on property owned by the Ervings.  The allegations concerning Saxon and Morgan Stanley, in the Ervings' various pleadings, remain essentially unchanged.  But the case caption continues to grow.

The most recent Complaint joins the claims of seven sets of Plaintiffs (five individuals and two couples) with no apparent relationship to each other.  The only Plaintiffs alleged to have had any relationship with Saxon or Morgan Stanley are the Ervings.  The remaining Plaintiffs' claims arise out of entirely *different* transactions: *different* insurance policies placed on *different* properties by *different* servicers under *different* servicer-insurer programs.

---

[1] Saxon and Morgan Stanley file the instant motion pursuant to the Court's order, dated October 29, 2013 (the "October 29 Order"), directing Defendants to file (1) motions to sever and (2) motions to dismiss for lack of subject matter jurisdiction by today, January 21, 2014.  Pursuant to the October 29 Order, motions to dismiss for failure to state a claim under Rule 12(b)(6) are expressly reserved until a future date to be set by the Court.  At that time, Saxon and Morgan Stanley will file a motion to dismiss on grounds, among others, that the filed-rate doctrine operates to bar Plaintiffs' claims.  *See Curtis v. Cenlar FSB*, No. 1:13-cv-03007-DLC, 2013 WL 5995582, at *2 (S.D.N.Y. Nov. 12, 2013) (Cote, J.) (holding that the filed-rate doctrine may properly be invoked on a motion to dismiss for failure to state a claim under Rule 12(b)(6)).  Saxon and Morgan Stanley also respectfully reserve their right to challenge Plaintiffs' Article III standing at a later stage of the proceeding, including, in particular, at the class certification stage, assuming, *arguendo*, that the Complaint survives Defendants' motions to sever and to dismiss pursuant to Rule 12(b)(6).  *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 406 (S.D.N.Y. 2011) (Preska, C.J.) ("[T]his case is one where class certification issues are the source of any standing problems, making it appropriate to defer consideration of standing until the class certification stage."); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F.Supp.2d 198, 213-14 (S.D.N.Y. 2012) (Seibel, J.) (holding under similar circumstances that "class certification is logically antecedent to the issue of standing"); *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Assoc.*, No. 1:11-cv-08066-JGK, 2013 WL 6508843, at *6 n.3 (S.D.N.Y. Dec. 12, 2013) (Koeltl, J.) (compiling decisions).

The Ervings' claims against Saxon and Morgan Stanley are plainly misjoined to the claims asserted by the other six sets of Plaintiffs. Joinder of the Ervings' claims with those of the other Plaintiffs is not permitted by the plain language of Rule 20(a), which allows joinder only where claims arise "out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). Joinder of the Ervings' claims is similarly inappropriate under the Second Circuit's "logical relationship" test: joinder of Plaintiffs' unrelated claims against multiple, unrelated servicers would affirmatively disserve judicial economy and risk unfair "spillover prejudice" against Saxon. Further, even if joinder of Plaintiffs' claims were permissible under Rule 20(a) (it is not), the consideration of discretionary factors compels the conclusion that joinder is inappropriate in the present case.

## PROCEDURAL BACKGROUND

In December 2012, Plaintiffs Frances Erving and Johnnie Erving filed a putative class action complaint against Saxon and Morgan Stanley, among others.[2] The parties exchanged pre-motion letters, Plaintiffs filed an amended complaint, and the parties agreed to a briefing schedule for defendants' motions to dismiss.[3] In May, less than two weeks before motions were due to be filed, the Ervings advised that they planned to exercise their right to voluntarily dismiss their complaint and join their claims in two actions already pending before this Court: this action (which concerns hazard insurance) and *Clarizia v. Ocwen Fin. Corp.*, 1:13-cv-02907-ALC-HBP (which concerns flood insurance).[4] Saxon and Morgan Stanley informed the Ervings at the time

---

[2] *See* Class Action Complaint (Dkt. #1), *Erving v. Saxon Mortg. Servs., Inc.*, 1:12-cv-8992-ALC-HBP.

[3] *See* First Amended Class Action Complaint (*Erving* Dkt. #40) (Apr. 8, 2013); Stipulation and Order Setting Briefing Schedule for Motions to Dismiss (*Erving* Dkt. #41) (Apr. 26, 2013).

[4] The *Clarizia* action was formerly captioned: *Engelhardt, et al. v. Ocwen Financial Corporation, et al.*

3

that they expressly reserved their right to object to the new complaints on grounds of misjoinder.[5]

The Ervings' claims against Saxon and Morgan Stanley were joined to this action by Plaintiffs in the First Amended Class Action Complaint, which Plaintiffs filed on July 17, 2013.[6] Following another round of letters and a pre-motion conference on October 29, 2013, Plaintiffs filed the operative Complaint on November 19, 2013.[7] Citing articles and public testimony describing alleged industry-wide abuses (none of which mention Saxon or Morgan Stanley), the Ervings and six other sets of Plaintiffs purport to join their disparate claims against numerous servicers, insurers, and their respective corporate affiliates.

## FACTUAL BACKGROUND

Notwithstanding a threefold increase in the number of parties, the essence of the allegations concerning Saxon and Morgan Stanley remains the same. Plaintiffs are mortgagors who acknowledge they were required to obtain and maintain hazard insurance as a condition of their respective mortgage contracts (Compl. ¶ 6), and who further acknowledge that their respective lenders (or mortgagors) were authorized to obtain replacement hazard insurance in the event of a lapse in coverage (*id.* ¶ 92). Such replacement insurance is sometimes referred to as "lender-placed" or "force-placed" insurance, and it is typically purchased on the mortgagee's behalf by its mortgage loan servicer. *Id.*

The ***only*** Plaintiffs alleged to have had any relationship with Saxon or Morgan Stanley are the Ervings. *See id.* ¶¶ 130-98. Between November 2007 and April 2012, Saxon serviced a mortgage on the Ervings' property in Hallandale, Florida (the "Property"). *Id.* ¶¶ 63-64, 166,

---

[5] *See* Order Extending Time to Answer or Otherwise Respond (*Erving* Dkt. #47) (May 23, 2013) (approving parties' stipulation).

[6] Dkt. # 37.

[7] Dkt. # 93.

173.  Because the Ervings failed to maintain hazard insurance on the Property, Saxon obtained replacement hazard insurance from defendant American Security Insurance Company ("ASIC") in 2010 and 2011.  *Id.* ¶¶ 169-71.

Saxon sold its mortgage servicing rights to Ocwen Loan Servicing, LLC ("Ocwen") in an arms-length transaction in March 2012.  *Id.* ¶ 78.  Following that transfer, Ocwen did not renew the hazard insurance policy previously placed by Saxon, but, in its capacity as servicer, obtained a new hazard policy for the Property under Ocwen's own lender-placed insurance program in August 2012.  *Id.* ¶ 175-76.

## ARGUMENT

Under Rule 20(a), Plaintiffs may join their claims in a single action if: (1) they assert claims "arising out of the same transaction, occurrence, or series of transactions of occurrences"; *and* (2) a "question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  As is clear from the plain language of the rule, "both criteria must be met for joinder to be proper."  *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009).  The remedy for improper joinder is severance under Rule 21.  *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 556, 567 (S.D.N.Y. 2004).

Even when Rule 20(a)'s threshold requirements are met, the district court may decide that joinder is inappropriate and decline to exercise jurisdiction.  *Ghaly v. U.S. Dep't of Agric.*, 228 F.Supp.2d 283, 292-93 (S.D.N.Y. 2002).  In deciding whether joinder may be inappropriate (notwithstanding the satisfaction of Rule 20(a)'s threshold requirements), a district court considers: "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence."  *Deskovic*, 673 F. Supp. 2d at 171.

5

I.     **Plaintiffs' Claims Do Not Arise out of the "Same Transaction, Occurrence, or Series of Transactions or Occurrences."**

It is clear from the face of the Complaint that Plaintiffs' claims against Saxon and Morgan Stanley arise solely out of Saxon's placement of hazard insurance for the Ervings' Property. Compl. ¶¶ 169-72. Neither Saxon nor Morgan Stanley has any relationship with any other Plaintiff in this action -- specifically, the Lyonses, Ms. Engelhardt, Mr. Coulthurst, Mr. Dominguez, Mr. Papapietro or Ms. Heard -- nor do Plaintiffs allege any. *See id.* ¶¶ 130-98. The Complaint's allegations concerning these other six sets of borrowers arise out of alleged wrongdoing around the placement of *entirely different* hazard insurance policies, which were placed on *different* properties by *different* mortgage loan servicers under *different lender-placed insurance programs* unrelated in any way to Saxon's program. *See id.* In addition, although Saxon had a lender-placed insurance program with defendant ASIC (*id.* ¶ 8), Saxon had no similar relationship with any of the other so-called "Insurer Defendants" in the action, nor is any alleged. Apart from Saxon's interactions with the Ervings, Saxon and Morgan Stanley are indisputably strangers to every other "transaction or occurrence," every other Plaintiff, and every insurer other than ASIC described in the Complaint. Plaintiffs have not even attempted to plead a "plausible connection" between the transactions that give rise to the Ervings' claims and those that support the claims of the other Plaintiffs. *See Kalie*, 2013 WL 4044951, at *5.

Because Plaintiffs' claims clearly do not arise "out of the same transaction, occurrence, or series of transactions of occurrences" as those of the other Plaintiffs, severance under Rule 21 is "mandatory." *Kalie*, 2013 WL 4044951, at *6; *see Deskovic*, 673 F. Supp. 2d at 159.

II.    **Joinder of Plaintiffs' Claims Does Not Satisfy the "Logical Relationship" Test.**

Finding Rule 20(a)'s plain language inhospitable, Plaintiffs turn to the Second Circuit's "logical relationship" test for compulsory counterclaims, which courts may draw on to determine

6

whether claims arise from the same "transaction or occurrence."  *See Kalie v. Bank of Am. Corp.*, No. 1:12-cv-09192-PAE, --- F.R.D. ----, 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013).  Applying the "logical relationship" test, a court will consider "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Id.*

But "considerations of judicial economy and fairness" do not dictate that the Ervings' claims be tried with those of other Plaintiffs.  The Ervings' claims arise out of insurance- and mortgage-related transactions that are distinct from the transactions on which the other plaintiffs' claims are based.  *See id.*, at *6.  Thus, there is unlikely to be *any* overlapping discovery across the Ervings' and the other Plaintiffs' claims.  *See id.*  And in the event Plaintiffs' claims were to proceed to trial, "distinct witnesses and documentary proof would be required to establish (or rebut) their separate claims."  *Id.*  In short, ***"[t]he interest in [judicial] economy is affirmatively disserved*** by forcing these many parties to attend a common trial at which these separate, unrelated claims, only a fraction of which implicates the rights of any one party, would be resolved."  *Id.* (emphasis added).  Additionally, given that only the Ervings assert any claims against Saxon, and given that Saxon's lender-placed insurance program is entirely separate and distinct from the program of the other servicer defendants, trying the Ervings' claims with those of the other Plaintiffs may cause jury confusion and would risk unfair "spillover prejudice" against Saxon.[8]  *See id.*, at *6.  Under the "logical relationship" test, the Ervings' claims are plainly misjoined.

---

[8] Plaintiffs acknowledge that Saxon's historical loan-servicing activity, at its peak, was a fraction of that of the other so-called "Loan Servicing Defendants."  Compl. ¶¶ 47-48.  Further, certain of the Defendants are alleged to have been parties to reinsurance arrangements (*id.*, ¶¶ 18, 20, 203), a practice that is subject to particular criticism in Plaintiffs' allegations of purported industry-wide misconduct (*id.*, ¶¶ 99-105).  Saxon was not a party to any reinsurance arrangement, nor have Plaintiffs alleged that it was.

In their pre-motion letter, Plaintiffs suggested that the "logical relationship" test could be satisfied by the fact that each Plaintiff (including the Ervings) asserts claims against Ocwen. This argument is flawed for two reasons. ***First***, Plaintiffs' interpretation of the "logical relationship" test as requiring only a common defendant is without evident basis in relevant case law. Indeed, as the District Court for the Eastern District of New York recently held: "the ***mere presence of a common defendant*** and common questions of law or fact ***does not satisfy the same transaction or occurrence requirement***." *Smith v. Am. Sec. Ins. Co.*, No. 2:13-cv-06328-JS-ARL, 2013 WL 6628358, at *4 (E.D.N.Y. Dec. 16, 2013) (emphasis added) (internal quotation marks omitted). Though properly joined claims of multiple plaintiffs will necessarily involve one or more common defendant(s), the presence of a common defendant, standing alone, is not nearly enough to permit joinder under Rule 20(a). ***Second***, even if Plaintiffs' "common defendant" theory were correct (it is not), Plaintiffs' purported basis for naming Ocwen as a defendant in the Ervings' claims against Saxon is Plaintiffs' contention that Ocwen may be liable as Saxon's successor-in-interest. This is wrong as a matter of fact and law. As Plaintiffs acknowledge in the Complaint, in March 2012, Ocwen acquired Saxon's mortgage-servicing rights; the transaction was not a stock acquisition. Compl. ¶ 78.[9] Ocwen's acquisition of servicing rights in connection with Saxon's exit from the servicing business does not provide a basis for successor liability. *See Schumacher v Richards Shear Co.*, Inc. 59 N.Y.2d 239, 244-45 (N.Y. 1983).

---

[9] *See also* Ocwen Fin. Corp., Form 10-K, at 5 (Mar. 1, 2013) (describing acquisition of mortgage-servicing rights from Saxon), http://www.sec.gov/Archives/edgar/data/873860/000101905613000315/ocn_10k12a.htm (last visited Jan. 14, 2014).

8

### III.   Discretionary Considerations Also Warrant Severance.

Even if joinder were permissible under Rule 20(a) (which it is not), the Court's consideration of discretionary factors should lead to the same conclusion: joinder of the Ervings' claims is inappropriate. *See Kalie*, 2013 WL 4044951, at *6. As discussed above,[10] there is "no meaningful economy of scale" to be gained from trying the Ervings' claims with those of the other Plaintiffs. *See id.* The various claims involve "distinct witnesses and documentary proof." *See id.* And, trying the claims against Saxon with those of the other "Loan Servicing Defendants" would run the risks of jury confusion and "spillover prejudice" against Saxon. *See id.* & n.8, *supra*. For these independent reasons, severance of the Ervings' claims under Rule 21 is appropriate. *See id.*; *Deskovic*, 673 F. Supp. 2d at 171.

Prior efforts to centralize or join unrelated actions in the manner attempted here have failed. In 2012, the judicial panel on multidistrict litigation denied a motion to centralize lender-placed insurance litigation in an MDL in the Southern District of Florida. The Panel observed that the cases "involve not only different defendants but different lender agreements with insurers, different alleged abuses, and different mortgage loan documents. Thus, the misconduct is not sufficiently uniform to justify industry-wide centralization." *See In re Mortg. Lender Force-Placed Ins. Litig.*, 895, F. Supp. 2d 1352, 1353-54 (J.P.M.L. 2012). Counsel subsequently filed an action combining claims by numerous plaintiffs against five lender banks in a single

---

[10] The discretionary factors that a court may consider on a severance motion largely overlap with the Second Circuit's "logical relationship" test, discussed above. *Compare Smith*, 2013 WL 6628358, at *4 ("In deciding whether to sever a claim under Rule 21, courts generally consider, in addition to the preconditions set forth in Rule 20(a), (1) whether settlement of the claims or judicial economy would be facilitated; (2) whether prejudice would be avoided if severance were granted; and (3) whether different witnesses and documentary proof are required for the separate claims.") (internal quotation marks omitted); *with Kalie*, 2013 WL 4044951, at *3 ("[Under the 'logical relationship' test], courts are to look to the logical relationship between the claims and determine whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.") (internal quotation marks omitted).

9

complaint in the same district, similar to what Plaintiffs are attempting here.  Defendants in that action moved to sever the claims on grounds of misjoinder, and the court granted the motion, ordering that the claims be severed and separate complaints filed.  *See* Order (Dkt. #177), *Hall v. Bank of Am.*, No. 1:12-cv-22700-FAM (S.D. Fla. Mar. 2013) (dismissing action and grating plaintiffs leave to file separate complaints against their particular lender and the corresponding insurer).

### IV. The Ervings' Claims against Saxon and Morgan Stanley Should Be Severed from their Claims against the "Ocwen Defendants."

The Ervings' claims against Saxon and Morgan Stanley should likewise be severed from the Ervings' claims against Ocwen and Ocwen Financial Corporation (the so-called "Ocwen Defendants").  The Ervings' claims against Saxon and Morgan Stanley arise out of Saxon's placement of hazard insurance policies in 2010 and 2011 (Compl. ¶¶ 170-71); the Ervings' claims against the Ocwen Defendants arise out of Ocwen's placement of a separate hazard insurance policy, in 2012, at a different rate and under a different lender-placed insurance program.  Compl. ¶176 ("Like the ASIC policy previously force placed by Saxon, the ASIC policy force-placed by the Ocwen Defendants provided $189,342 in coverage; however, the ASIC policy the Ocwen Defendants force-placed had an annual premium of $5,575.35 – an increase of more than $580.").  Because the Ervings' claims against Saxon and Morgan Stanley do not arise from the same transaction or occurrence as those asserted against the Ocwen Defendants, severance of the Ervings' claims is mandatory.  *See Kalie*, 2013 WL 4044951, at *6.

Severance is also supported by consideration of discretionary factors.  The Ervings' respective claims against Saxon and Ocwen involve "distinct witness and documentary proof." *Id.*  A jury trial involving lender-placed insurance programs with superficial similarities "could lead to confusion of the jury" and would risk "spillover prejudice." *Id.*  And, judicial economy

10

would not be disserved by severance, as the Ervings could join their claims with those of other Plaintiffs whose claims similarly arise out of policies purchased under the Ocwen-ASIC hazard insurance program.

Even in a case with a single plaintiff, "[i]t is settled that joinder is improper where the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way." *Peterson v. Regina*, 935 F.Supp.2d 628, 638 (S.D.N.Y. 2013) (internal quotation marks omitted). That is precisely what Plaintiffs seek to do here. The Ervings' claims against Saxon and Morgan Stanley should be severed from their claims against the Ocwen Defendants.

Accordingly, for all of the foregoing reasons, Saxon and Morgan Stanley respectfully request that Plaintiffs' claims be severed as follows:

| Case One | | Case Two | | Case Three | |
|---|---|---|---|---|---|
| **Plaintiffs** | **Defendants** | **Plaintiffs** | **Defendants** | **Plaintiffs** | **Defendants** |
| *Lyonses<br>*Papapietro<br>*Heard | *Litton Defendants<br>*American Modern | *Ervings | *Saxon Defendants<br>*Assurant Defendants | *Engelhardt<br>*Coulthurst<br>*Dominguez<br>*Ervings<br>*Papapietro<br>*Heard | *Ocwen Defendants<br>*Assurant Defendants |

## CONCLUSION

For all of the foregoing reasons, Saxon respectfully requests that the Court sever the Ervings' claims against Saxon and Morgan Stanley from the other claims asserted in the Complaint and grant such other and further relief as it deems just and proper.

Dated:   January 21, 2014
         New York, New York

**BINGHAM MCCUTCHEN LLP**

By: */s/ Mary Gail Gearns*
    Mary Gail Gearns
    marygail.gearns@bingham.com
    Robert C. Stillwell
    robert.stillwell@bingham.com
    399 Park Avenue
    New York, New York 10022
    Telephone:  212.705.7000
    Facsimile:  212.752.5378

    *Attorneys for Morgan Stanley and*
    *Saxon Mortgage Services, Inc.*