UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMY LYONS, JACQUELINE LYONS, LISA CHAMBERLIN ENGELHARDT, GERALD COULTHURST, ENRIQUE DOMINGUEZ, FRANCES ERVING, JOHNNIE ERVING, ANTHONY PAPAPIETRO, and SHEILA D. HEARD individually and on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>LITTON LOAN SERVICING LP, GOLDMAN SACHS GROUP, INC., ARROW CORPORATE MEMBER HOLDINGS LLC, SAXON MORTGAGE SERVICES, INC., MORGAN STANLEY, OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, LLC, ASSURANT, INC. (d/b/a Assurant Specialty Property), AMERICAN SECURITY INSURANCE COMPANY, STANDARD GUARANTY INSURANCE COMPANY, AMERICAN MODERN INSURANCE GROUP, and AMERICAN MODERN HOME INSURANCE COMPANY,<br><br>                    Defendants. | Case No. 1:13-cv-00513-ALC-HBP |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANTS THE GOLDMAN SACHS GROUP, INC. AND
ARROW CORPORATE MEMBER HOLDINGS LLC
TO SEVER FOR MISJOINDER**

NY 74855382

- i -

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. ALLEGATIONS OF THE COMPLAINT............................................................................2

    A. Plaintiffs' Claims .........................................................................................................2

    B. The Litton Plaintiffs....................................................................................................3

    C. The Other Plaintiffs....................................................................................................4

III. ARGUMENT:  THE LITTON PLAINTIFFS' CLAIMS SHOULD BE SEVERED..........5

    A. Permissive Joinder Standard ....................................................................................5

    B. The Litton Plaintiffs' Claims Are Not Properly Joined In This Action And, Thus, Should Be Severed ......................................................................................................5

IV. CONCLUSION........................................................................................................................8

NY 74855382

## TABLE OF AUTHORITIES

Page(s)

**CASES**

Alessi v. Monroe Cnty.,
　No. 07-CV-6163T, 2008 WL 398509 (W.D.N.Y. Feb. 12, 2008) ............................................. 6

Deskovic v. City of Peekskill,
　673 F. Supp. 2d 154 (S.D.N.Y. 2009) ................................................................................. 5, 7

In re Mortg. Lender Force-Placed Ins. Litig.,
　895 F. Supp. 2d 1352 (J.P.M.L. 2012) ................................................................................ 6, 7

Kalie v. Bank of Am. Corp.,
　No. 12 CIV 9192 PAE, 2013 WL 4044951 (S.D.N.Y. Aug. 9, 2013) ...................................... 7

McDowell v. Morgan Stanley & Co., Inc.,
　645 F. Supp. 2d 690 (N.D. Ill. 2009) ...................................................................................... 7

Morris v. Northrop Grumman Corp.,
　37 F. Supp. 2d 556 (E.D.N.Y. 1999) ...................................................................................... 7

Pergo, Inc. v. Alloc, Inc.,
　262 F. Supp. 2d 122 (S.D.N.Y. 2003) .................................................................................... 6

Puricelli v. CNA Ins. Co.,
　185 F.R.D. 139 (N.D.N.Y. 1999) ............................................................................................ 5

Ropfogel v. Wise,
　112 F.R.D. 414 (S.D.N.Y. 1986) ............................................................................................ 7

Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.,
　No. 10-81589-CV, 2011 WL 2134534 (S.D. Fla. May 27, 2011) ........................................... 6

Tardd v. Brookhaven Nat. Lab.,
　No. 04 CV 3262 (ADS), 2007 WL 1423642 (E.D.N.Y. May 8, 2007) .................................... 8

**RULES**

Fed. R. Civ. P. 20(a)(1) ............................................................................................................ 5, 6, 7

Fed. R. Civ. P. 21 .......................................................................................................................... 5

NY 74855382

I.      INTRODUCTION

In this putative class action, nine plaintiffs allege, in a prolix, ninety-six page, Second Amended Complaint ("Complaint"), that they were parties to seven separate mortgage transactions, in which three separate defendant mortgage servicers—through arrangements with two unrelated, competitor defendant insurers—improperly received financial benefits from the procurement of hazard lender-placed insurance ("LPI").[1]  Plaintiffs' various claims involve different mortgage loan agreements, different loans, different mortgage servicers, different insurance carriers, different properties and different circumstances resulting in the procurement of hazard LPI.  Put simply, plaintiffs' effort to bring all of their claims in a single action is improper.

Four of the nine plaintiffs, Jimmy Lyons, Jacqueline Lyons, Anthony Papapietro and Sheila Heard (collectively, the "Litton Plaintiffs"), claim that hazard LPI was procured on their properties by their loan servicer, defendant Litton Loan Servicing LP ("Litton"), through defendant American Modern Home Insurance Company ("American Modern"); and that, as a result of those transactions, The Goldman Sachs Group, Inc. ("GS Group"), as the ultimate parent of Litton at the time, and Arrow Corporate Member Holdings LLC ("Arrow"), as a reinsurer of American Modern, may somehow be liable for the acts of Litton.  However, while there is no allegation in the Complaint that GS Group and Arrow had anything to do with the other five plaintiffs or their claims, or with the other defendants,[2] nonetheless, the Complaint lumps GS Group and Arrow together with other, unrelated defendants, as "Loan Servicing

---

[1]  Hazard LPI is a form of insurance that mortgage lenders procure when borrowers fail to maintain their own hazard coverage.
[2]  The Complaint alleges that defendant Ocwen Financial Corporation ("OFC") acquired Litton in September 2011.  (Complaint ¶ 75.)

- 1 -

Defendants,"[3] and asserts collective claims on behalf of all of the plaintiffs against all of the Loan Servicing Defendants.

The fact that all of the plaintiffs' claims deal with the subject of hazard LPI is an insufficient basis for the joinder of all of plaintiffs' claims against all defendants in a single action.  Accordingly, the Litton Plaintiffs' claims should be severed.[4]

## II.   ALLEGATIONS OF THE COMPLAINT

### A.   Plaintiffs' Claims

Plaintiffs allege that each of their respective mortgage servicers acted in concert with each of their respective insurers to "exploit" the mortgage servicers' contractual authority to "force-place hazard insurance."  (Complaint ¶ 5.)  Plaintiffs claim that this caused them to be charged higher premiums for hazard LPI than they otherwise would have incurred because the hazard LPI premiums provide the respective mortgage servicers with undisclosed "kickbacks" and other financial benefits.  (See id. ¶¶ 19, 23, 40.)

Notwithstanding that plaintiffs do not allege that the mortgage servicers/insurers or their respective corporate parents conspired with one another or that they are jointly and severally liable, each of the counts in the Complaint is asserted on behalf of all of the plaintiffs and, with few exceptions, against substantially all of the defendants.  Thus, for example, despite the fact that the plaintiffs entered into seven separate mortgage agreements with six different lenders, serviced by three different mortgage servicers, plaintiffs' single claim for breach of contract is asserted against all seven of the Loan Servicing Defendants, which include GS Group and

---

[3]   In the Complaint, the Loan Servicing Defendants are defined collectively as Litton, GS Group and Arrow, and defendants Saxon Mortgage Services, Inc. ("Saxon"), Morgan Stanley, Ocwen Loan Servicing LLC ("OLS") and OFC.  (Complaint ¶ 1.)

[4]   GS Group and Arrow file this motion pursuant to the October 29, 2013 Pre-Motion Conference and the Minute Entry dated October 29, 2013.  GS Group and Arrow respectfully reserve all other motions that may be directed to the Complaint or this Court's jurisdiction over the matter.

NY 74855382

Arrow. Likewise, despite the separate circumstances resulting in the procurement of hazard LPI, a single claim for conversion is also alleged against all of the Loan Servicing Defendants.

In total, ten counts are brought in the Complaint.[5] Seven of the ten counts are alleged against GS Group and Arrow[6], and, in each instance, the counts are asserted on behalf of all of the plaintiffs—including plaintiffs who have no relation to, and no possible claim against, GS Group or Arrow—and include other defendants, which also have no relation to GS Group or Arrow.

### B. The Litton Plaintiffs

While each of the Litton Plaintiffs' loans are alleged to share the common fact that Litton, as their loan servicer at a given point in time, procured hazard LPI policies on their properties through American Modern, each of the Litton Plaintiffs entered into different loan agreements with different lenders and had different circumstances resulting in the procurement of their hazard LPI.

As alleged in the Complaint, the Lyons obtained a mortgage through Fremont Investment and Loan for real property located in Palm Bay, Florida. (Id. ¶ 52.) Litton is alleged to have serviced that mortgage, and to have procured a hazard LPI policy through American Modern in July 2011. (Id. ¶¶ 130, 136-137.)

---

[5] Those counts are for: (1) breach of contract (id. ¶¶ 265-275); (2) unjust enrichment/disgorgement (id. ¶¶ 276-283); (3) breach of fiduciary duty/misappropriation of funds held in trust (id. ¶¶ 284-291); (4) aiding and abetting a breach of fiduciary duty (id. ¶¶ 292-297); (5) conversion (id. ¶¶ 298-309); (6) violation of New York General Business Law Section 349 (id. ¶¶ 310-318); (7) violation of the Florida Deceptive and Unfair Trade Practices Act (id. ¶¶ 319-328); (8) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (id. ¶¶ 329-341); (9) violation of Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (id. ¶¶ 342-346); and (10) violation of Section 1962(d) of RICO (id. ¶¶ 347-350).

[6] Counts 1, 2, 4, 5, 8, 9 and 10.

NY 74855382

Papapietro allegedly obtained a mortgage through Washington Finance for real property located in Stroudsburg, Pennsylvania, which Litton began servicing in 2009 and for which Litton charged him for hazard LPI in September 2009, October 2009 and February 2011.  (Id. ¶¶ 67, 180-183.)

Heard alleges she obtained a mortgage through Provident Bank for real property located in East St. Louis, Illinois, which Litton is alleged to have begun servicing beginning prior to 2006, and for which Litton procured a hazard LPI policy through American Modern in August 2011.  (Id. ¶¶ 70, 187, 190.)

Although all of the Litton Plaintiffs' specific allegations regarding procurement of hazard LPI implicate only Litton, they contend that:  (1) GS Group is liable for the acts of Litton because it was the indirect parent of Litton, and (2) Arrow is liable because it reinsured the hazard LPI policies that American Modern issued.  (See id. ¶¶ 18, 73-74.)

**C.   The Other Plaintiffs**

The remaining five plaintiffs do not allege any involvement or relationship with Litton or American Modern—or, in turn, GS Group and Arrow—and thus do not allege that GS Group or Arrow bear any responsibility for the hazard LPI policies placed on their behalf.[7]  Nevertheless, those plaintiffs are grouped together with the Litton Plaintiffs, without any differentiation, on each of the seven claims asserted against GS Group and Arrow.

---

[7]   Plaintiffs Lisa Chamberlin Engelhardt, Gerald Coulthurst and Enrique Dominguez (collectively, the "OLS Plaintiffs") allege that their mortgage loans were serviced by OLS and that OLS procured LPI policies on their properties through either defendant American Security Insurance Company ("ASIC") or Standard Guaranty Insurance Company, affiliates of defendant Assurant, Inc. ("Assurant").  (Complaint ¶¶ 142, 145, 151-152, 157, 162.)  Plaintiffs Frances Erving and Johnnie Erving (together, the "Saxon Plaintiffs") allege that their mortgage loan was serviced by Saxon and that Saxon procured multiple LPI policies on their property through ASIC.  (Id. ¶ 170.)

## III.   ARGUMENT

## THE LITTON PLAINTIFFS' CLAIMS SHOULD BE SEVERED

**A.   Permissive Joinder Standard**

Federal Rule of Civil Procedure 20 governs permissive joinder and provides that plaintiffs may join claims in a single action if:  "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1) (emphasis added).  "The well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits."  Puricelli v. CNA Ins. Co., 185 F.R.D. 139, 142 (N.D.N.Y. 1999).  If the requirements of permissive joinder are not satisfied, a court may sever the misjoined party or claims.  See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."); Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) ("The plaintiff bears the burden of demonstrating that joinder is warranted under Rule 20.").

**B.   The Litton Plaintiffs' Claims Are Not Properly Joined In This Action And, Thus, Should Be Severed.**

While there is a serious question whether any of the plaintiffs' claims can be joined together, we submit it is beyond question that the Litton Plaintiffs' claims cannot be joined with the other plaintiffs' claims.  The Litton Plaintiffs' claims simply do not arise out of the same transactions or occurrences as the other plaintiffs' claims.  The Litton Plaintiffs had mortgage loans, which they allege were serviced by Litton, and LPI policies placed by Litton through American Modern, while the OLS Plaintiffs allegedly had mortgage loans serviced by OLS and LPI policies placed by OLS through an Assurant affiliate.  Likewise, the Saxon Plaintiffs'

- 5 -

mortgage loan was allegedly serviced by Saxon and their multiple LPI policies were placed by Saxon through ASIC.

It is abundantly clear from the Complaint that the various plaintiffs' hazard LPI policies were placed as the result of different and separate LPI programs. Indeed, the distinction between the hazard LPI programs is underscored by plaintiffs' own grouping of the various defendants as "the Litton Defendants," "the Saxon Defendants" and "the Ocwen Defendants." (Complaint ¶ 1.) Further, the differences among plaintiffs' claims are supported by the Judicial Panel on Multidistrict Litigation's (the "Panel") denial of a motion to consolidate and transfer various LPI cases into a multidistrict litigation. As the Panel stated in its denial order:

> All actions focus on an alleged industry-wide practice among banks and insurers concerning abuses in the placement of force-placed insurance policies covering homeowner properties. Common questions of fact, however, do not predominate. <u>Each action involves only one mortgage lender and a different force-placed insurance program governed by a lender-specific agreement negotiated with an insurance company. Additionally, the mortgage contracts at issue vary widely as to key matters such as the amount of insurance coverage required, the payment of commissions, and other rights of the borrower and lender</u>.

<u>In re Mortg. Lender Force-Placed Ins. Litig.</u>, 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012) (emphasis added). See <u>Pergo, Inc. v. Alloc, Inc.</u>, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) (finding that joinder was improper under Rule 20 where defendants, like certain of the defendants herein, were competitors; there were "no allegations of any cooperative or collusive relationship between the two sets of defendants"; and the "only connection between the two sets of defendants is that they may have infringed the same patents"); <u>Alessi v. Monroe Cnty.</u>, No. 07-CV-6163T, 2008 WL 398509, at *2 (W.D.N.Y. Feb. 12, 2008) (ordering severance where "[e]ach plaintiff had separate dealings with defendant [], and the claims alleged by each plaintiff arise out of separate incidents"); see also <u>Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.</u>, No. 10-81589-CV, 2011 WL 2134534, at *4 (S.D. Fla. May 27, 2011) ("'One or more

defendants' similar conduct, without anything more, does not rise to a sufficient level that would justify joining those defendants in a single action pursuant to Rule 20.'") (quoting McDowell v. Morgan Stanley & Co., Inc., 645 F. Supp. 2d 690, 697 (N.D. Ill. 2009)).

Moreover, allowing joinder of these various parties contravenes the purpose of Rule 20. Joining three different, entirely unrelated, groups of defendants which are represented by different law firms will not promote trial convenience and expedite the resolution of these disputes. To the contrary, joinder here would have the opposite effect. It will present this Court with an unwieldy, unnecessarily complicated, administrative burden. Joinder will force counsel for each defendant to monitor and respond to the actions of others at significant expense. Further, as the Panel stated in In re: Mortg. Lender Force-Placed Ins. Litig., "defendants are direct competitors with each other, and placing them into the same action would complicate case management due to the need to protect trade secret and confidential information from full disclosure to the parties." 895 F. Supp. 2d at 1354.

Joinder here may also result in "spillover prejudice"—the claims asserted against the other defendants, and the testimony and documents of those defendants, may unfairly taint GS Group and Arrow. Kalie v. Bank of Am. Corp., No. 12 CIV 9192 PAE, 2013 WL 4044951, at *6 (S.D.N.Y. Aug. 9, 2013). This is precisely the type of situation where "[a] joint trial 'could lead to confusion of the jury' and thereby prejudice defendants." Id. (quoting Deskovic, 673 F. Supp. 2d at 171); see also Ropfogel v. Wise, 112 F.R.D. 414, 416 (S.D.N.Y. 1986) ("Where, as here, the claims against, and defenses of, some parties are substantially different from those of others, a consolidated trial of the 'mixed bag' works prejudice."); Morris v. Northrop Grumman Corp., 37 F. Supp. 2d 556, 581 (E.D.N.Y. 1999) ("The potential inferences or conclusions that the jury may draw from the different claims and the strength of the respective cases could

- 7 -

unfairly prejudice the defendants . . . ."); Tardd v. Brookhaven Nat. Lab., No. 04 CV 3262 (ADS), 2007 WL 1423642, at *11  (E.D.N.Y. May 8, 2007) (finding "that there is a serious risk of jury confusion, and prejudice to the defendants, if the plaintiffs' claims are tried together").

## IV.   CONCLUSION

For the foregoing reasons, GS Group and Arrow respectfully request that the Court sever the Litton Plaintiffs' claims from the action.

Dated:  January 21, 2014

    /s/ Lisa M. Simonetti
Lisa M. Simonetti (*pro hac vice*)
lsimonetti@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1600
Los Angeles, California  90067-3086
Telephone:  (310) 556-5800
Facsimile:  (310) 556-5959

Melvin A. Brosterman
mbrosterman@stroock.com
Quinlan D. Murphy
qmurphy@stroock.com
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY  10038-4982
Telephone:  (212) 806-5400
Facsimile:  (212) 806-6006

Attorneys for Defendants
THE GOLDMAN SACHS GROUP, INC.
and ARROW CORPORATE MEMBER HOLDINGS LLC