**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

JIMMY LYONS, *et al.,*

               Plaintiffs,

     v.

LITTON LOAN SERVICING LP, *et al.,*

             Defendants.

Case No.: 1:13-cv-00513-ALC-HBP

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTIONS TO SEVER**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND................................................................................. 2

III.  LEGAL STANDARD .......................................................................................... 4

IV.  ARGUMENT ....................................................................................................... 5

    A.  Plaintiffs' Claims Satisfy Rule 20(a) ............................................................... 5

       1.  Plaintiffs' claims are logically related ..................................................... 6

       2.  Plaintiffs' claims present numerous common questions of law and fact .................. 9

    B.  Discretionary Factors Weigh In Favor of Joinder ........................................... 12

       1.  Joinder will facilitate judicial economy................................................... 12

       2.  Defendants will suffer no prejudice if severance is denied......................... 14

       3.  Plaintiffs' claims involve overlapping witnesses and evidence ................ 18

V.   CONCLUSION .................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Abraham v. Am. Home Mortg. Servicing, Inc.,*
    947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...................................................................8

*Agnesini v. Doctor's Assocs., Inc.,*
    275 F.R.D. 456 (S.D.N.Y. 2011) .................................................................5, 6

*Anticancer, Inc. v. Pfizer Inc.,*
    No. 11-cv-107, 2012 WL 1019796 (S.D. Cal. Mar. 2, 2012) .................................16

*Barr Rubber Prod. Co. v. Sun Rubber Co.,*
    425 F.2d 1114 (2d Cir. 1970)................................................................17

*Blesedell v. Mobil Oil Co.,*
    708 F. Supp. 1408 (S.D.N.Y. 1989)........................................................5, 10

*Casale v. Kelly,*
    257 F.R.D. 396 (S.D.N.Y. 2009) ...........................................................9

*Casey v. Citibank, N.A.,*
    No. 5:12-cv-820 (N.D.N.Y.) ...............................................................17

*Chaltry v. Ollie's Idea, Inc.,*
    No. 76 Civ. 25, 1980 WL 2078 (W.D. Mich. April 23, 1980) ..............................7

*Epstein v. Kemper Ins. Cos.,*
    210 F. Supp. 2d 308 (S.D.N.Y. 2002).......................................................6

*Favors v. Cuomo,*
    285 F.R.D. 187 (E.D.N.Y. 2012) ..........................................................17

*German by German v. Fed. Home Loan Mortg. Corp.,*
    896 F. Supp. 1385 (S.D.N.Y. 1995)......................................................13, 16

*Ghaly v. U.S. Dept. of Agriculture,*
    228 F. Supp. 2d 283 (S.D.N.Y. 2002)......................................................8

*H-W Tech, L.C. v. Apple, Inc.,*
    No. 3:11-CV-651-G, 2012 WL 959316 (N.D. Tex. Feb. 23, 2012) ........................16

*In Re: JPMorgan Chase Bank, N.A., Mortgage Corporation Force-Placed*
    *Hazard Insurance Litigation*, MDL No. 2465 (J.P.M.L Aug. 7, 2013)....................11

*Kalie v. Bank of Am. Corp.*,
No. 12.–cv-9192, 2013 WL 4044951 (S.D.N.Y. Aug. 9, 2013) ................................................8

*Kassman v. KPMG LLP*,
925 F. Supp. 2d 453 (S.D.N.Y. 2013) ......................................................................................5

*Kehr v. Yamaha Motor Corp.*,
96 F. Supp. 2d 821 (S.D.N.Y. 2008) ..................................................................12, 14, 15, 18

*Kovian v. Fulton County Nat. Bank & Trust Co.*,
No. 86–cv–154, 1990 WL 36809 (N.D.N.Y. 1990) ................................................................6

*Laureano v. Goord*,
No. 06-cv-7845, 2007 WL 2826649 (S.D.N.Y. Aug. 31, 2007) ..................................5, 12, 14

*In re Mortg. Lender Force-Placed Ins. Litig.*,
895 F. Supp. 2d 1352 (J.P.M.L. 2012) ..................................................................................11

*Nkemakolam v. St. John's Military Sch.*,
No. 12-2132-JWL, 2014 WL 200918 (D. Kan. Jan. 17, 2014) ......................................13, 16

*Peterson v. Regina*,
935 F. Supp. 2d 628 (S.D.N.Y. 2013) ....................................................................................8

*Puricelli v. CNA Ins. Co.*,
185 F.R.D. 139 (N.D.N.Y. 1999) ..........................................................................................11

*Schumacher v. Richards Shear Co., Inc.*,
59 N.Y.2d 239, 451 N.E.2d 195 (1983) ..................................................................................7

*Scott v. Fairbanks Capital Corp.*,
284 F. Supp. 2d 880 (S.D. Ohio 2003) ................................................................................10

*Sprint Commc'ns Co. v. TheGlobe.com, Inc.*,
233 F.R.D. 615 (D. Kan. 2006) ......................................................................13, 14, 16, 17

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966) ....................................................................................................1, 5, 9

*United States v. Aquavella*,
615 F.2d 12 (2d Cir. 1979) ....................................................................................................6

*United States v. Unger*,
No. 06-cv-2453, 2007, WL 677712 (D. Kan. March 2, 2007) ................................................7

*Viada v. Osaka Health Spa, Inc.*,
235 F.R.D. 55 (S.D.N.Y. 2006) ..............................................................................................5

*Williams v. Chartwell Fin. Serv., Ltd.*,
204 F.3d 748 (7th Cir. 2000) ...................................................................................................9

**Rules**

Fed. R. Civ. P. 20 ................................................................................................. *passim*

Fed. R. Civ. P. 21 ...................................................................................................5

**Other Authorities**

7 FED. PRAC. & PROC. § 1652 (3d ed. 2001).................................................................5

## I.  __INTRODUCTION__

Plaintiffs are seven individuals or couples who assert claims against: (1) Ocwen[1]; (2) the loan servicers subsequently acquired by Ocwen; and (3) the insurers from whom Ocwen directly, or as successor-in-interest, purchased force-placed insurance for Plaintiffs' properties.  These Ocwen-related entities present an interwoven common nucleus of operative facts.  Defendants are requesting that the Court split Plaintiffs' claims and unnecessarily burden this Court with three lawsuits instead of one.  Such as result is the paragon of inefficiency and waste and would do prejudice to Plaintiffs by forcing them to incur additional costs and wasted efforts.

All Plaintiffs' claims are logically related and inherently intertwined.  Plaintiffs' claims raise numerous common questions of law and fact.  As a result, Plaintiffs will present nearly identical legal arguments in their class certification and dispositive motions.  Similarly, Defendants are likely to pursue many of the same defenses and affirmative defenses, thereby presenting the court with identical legal theories.  Additionally, Plaintiffs will propound substantially identical written discovery requests on Ocwen, seeking substantially identical documents, noticing the same depositions of Ocwen employees and corporate representatives, designating the same expert witnesses, and examining the same Ocwen witnesses at trial.

Defendants arguments rely on an overly narrow construction of the joinder rules that the Supreme Court has long held should be construed to have "the broadest possible scope."  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).  Defendants argue that the "transactions" at issue in this lawsuit are necessarily defined by a precise pairing of the loan servicer at the time of forced placement and the force-placed insurance services provider.

---

[1] As described below, "Ocwen" refers both to Defendant Ocwen Loan Servicing, LLC and Defendant Ocwen Financial Corporation, the former of which is a subsidiary of the latter.  *See* Second Am. Comp. ("SAC") ¶ 80.

Defendants willfully ignore the broader scope of the action which, when considered, demonstrates that joinder is proper.

Indeed, each individual or couple Plaintiff has a loan currently serviced by Ocwen, and asserts claims against Ocwen, either directly or as successor-in-interest to his or her loan servicer, related to the forced placement of hazard insurance policies pursuant to Plaintiffs' standard form mortgage loans (themselves, transactions in a series of transactions that built Ocwen's mortgage servicing portfolio). Each plaintiff should be entitled to litigate common issues relating to servicing that arise out of their single mortgage loan transaction in a single lawsuit regardless of the (sometimes numerous) exchanges of servicing rights on secondary markets. In fact, only the Lyons Plaintiffs were not directly force-placed by Ocwen.[2] Defendants' overly narrow reading of the joinder rules would require such Plaintiffs to bring separate lawsuits against different mortgage servicers to enforce the provisions of *their single mortgage transactions* and is therefore both inappropriate and not supported by joinder rules.

Under these circumstances, neither severance nor reconfiguration of this action could yield any increased efficiency. Severance of this action would run counter to the spirit and purpose of Rule 20. Accordingly, Defendants' motions to sever should be denied, and Plaintiffs should be permitted to proceed in a single action.

## II.   FACTUAL BACKGROUND

Ocwen Loan Servicing, LLC ("OLS") and Ocwen Financial Corporation ("OFC") (together "Ocwen") are named as Defendants in connection with their own FPI abuses and also

---

[2] The Lyons Plaintiffs were, however, force-placed as Litton borrowers in the same manner as the Papapietro and Heard Plaintiffs. Moreover, Ocwen is named as successor in interest to Litton.

as successor-in-interest to Defendants Litton Loan Servicing LP ("Litton") and Saxon Mortgage Services, Inc. ("Saxon").[3][4]  SAC ¶ 1.  Plaintiffs also name force-placed insurance services providers as defendants: Assurant, Inc. (d/b/a Assurant Specialty Property) ("Assurant, Inc." or "ASP"), and its subsidiaries, American Security Insurance Company ("ASIC") and Standard Guaranty Insurance Company ("SGIC") (Assurant, Inc., ASIC and SGIC collectively referred to herein as "Assurant Defendants"); and American Modern Insurance Group ("AMIG") and its subsidiary, American Modern Home Insurance Company ("AMHIC") (AMIG and AMHIC collectively referred to herein as "American Modern Defendants").  The Assurant Defendants were substantially involved in the Ocwen Defendants' and Saxon Defendants' FPI schemes and the American Modern Defendants were similarly involved in the Litton Defendants' FPI scheme.

The Ocwen, Litton, and Saxon Defendants (collectively, "Loan Servicing Defendants") entered into illicit agreements with the Assurant and American Modern Defendants (collectively, "Insurer Defendants") to purchase force-placed insurance policies that enabled them to defraud borrowers into paying amounts unrelated to any contractual or other legitimate interest in protecting the insurable interest in the loan that should be borne by borrowers.  SAC ¶ 4.

A condition of each Plaintiff's mortgage was the purchase and maintenance of hazard insurance coverage on the secured property.  SAC ¶ 6.  When Plaintiffs failed to maintain their

---

[3] Plaintiffs have also pleaded claims against Goldman Sachs Group, Inc. ("Goldman Sachs"), Arrow Corporate Member Holdings LLC ("Arrow"), and Morgan Stanley.  Goldman Sachs and Arrow were part of the Litton force-placed insurance scheme and Morgan Stanley was part of the Saxon force-placed insurance scheme.

[4] OFC acquired Litton from Goldman Sachs on September 1, 2011, and agreed to share losses under an indemnification provision.  SAC ¶ 75.  OLS acquired servicing rights on loans serviced by Saxon Defendants in October 2011, and also assumed liability pursuant to a loss share provision in the purchase agreement.  SAC ¶ 78.

hazard insurance policies, the Loan Servicing Defendants replaced those policies with more expensive "force-placed" policies. SAC ¶ 7. All Plaintiffs' mortgage contracts permitted the Loan Servicing Defendants to purchase these force-placed policies, but limited the amount that could be charged to borrowers to the amount needed to protect the lenders' interest in the secured property. SAC ¶¶ 92-94. No plaintiff's mortgage permitted the Loan Servicing Defendants to charge them amounts exchanged between Defendants in exchange for the Loan Servicing Defendants agreeing to enter into exclusive force-placed insurance arrangements to the financial detriment of borrowers.

Plaintiffs assert overlapping claims against common defendants. All plaintiffs, except the Lyons, were force-placed directly by Ocwen and assert claims challenging those loan servicing abuses. Of those plaintiffs, Papapietro and the Heards also assert claims against Litton and American Modern Defendants in connection with hazard insurance force-placed before Ocwen's purchase of Litton and the Ervings similarly assert claims against Saxon and Assurant Defendants in connection with hazard insurance force-placed before Ocwen's purchase of Saxon. The Lyons's claims mirror those brought by Papapietro and the Heards against Litton and the American Modern Defendants.

Despite the factual similarities and overlap of all Plaintiffs' claims (not to mention identical legal issues raised by these common and intertwined factual scenarios), Defendants moved to sever Plaintiffs' claims and require Plaintiffs to proceed against Defendants in three separate actions. *See* Dkt. 96, 98, 108, 110, 112. Such disjoinder would be the model of inefficiency.

### III.   LEGAL STANDARD

Pursuant to Rule 20(a)'s two-prong test for determining whether the joinder of parties is proper: (1) the parties joined must assert, or have asserted against them, a right to relief "arising

out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must arise in the action "any question of law or fact common" to the joined parties. FED. R. CIV. P. 20(a)(1) and (2). "The purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits." *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989); *see also* 7 FED. PRAC. & PROC. § 1652 (3d ed. 2001). Accordingly, the requirements of Rule 20(a) are to be interpreted liberally "to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Viada v. Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006) (citation omitted). Indeed, the Supreme Court has long held that, under this rule, "the impulse is toward the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

While Rule 21 permits courts to "sever any claim against a party," FED. R. CIV. P. 21, "[f]ederal courts view severance as a procedural device to be employed only in exceptional circumstances." *Laureano v. Goord*, No. 06-cv-7845, 2007 WL 2826649, *8 (S.D.N.Y. Aug. 31, 2007) (internal citations and quotations omitted). "The moving party bears the burden of demonstrating that 'severance is required to avoid prejudice or confusion and to promote the ends of justice.'" *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011) (citation omitted).

## IV.    ARGUMENT

### A.    Plaintiffs' Claims Satisfy Rule 20(a)

The two requirements for joinder set forth in Rule 20(a) are "not rigid tests. They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." *Kassman*

*v. KPMG LLP*, 925 F. Supp. 2d 453, 477 (S.D.N.Y. 2013) (citing 7 FED. PRAC. & PROC. § 1653 (3d ed. 2001)).  Joinder is appropriate in this case as Plaintiffs' claims both arise out of the same transaction, occurrence, or series of transactions or occurrences (the servicing of their mortgage loan by Ocwen or a legacy Ocwen loan servicer) and raise a multitude of questions of law and fact common to the joined parties.

### 1.   Plaintiffs' claims are logically related

In this Circuit, Rule 20(a)'s "same transaction or occurrence" requirement is interpreted broadly to encompass "all logically related claims."  *Agnesini*, 275 F.R.D. at 459 (quoting *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008)); *see also Epstein v. Kemper Ins. Cos.*, 210 F. Supp. 2d 308, 320 (S.D.N.Y. 2002); *Kovian v. Fulton County Nat. Bank & Trust Co.*, No. 86–cv–154, 1990 WL 36809, *8-9 (N.D.N.Y. 1990).  In applying the "logical relationship" test, courts consider "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979) (citation omitted) (addressing analogous standard for compulsory counterclaims).  A plain reading of Plaintiffs' Second Amended Complaint shows that Plaintiffs' claims meet the minimal required showing of being "logically related."

A review of the "essential facts" in this case reveals that all plaintiffs have appropriately asserted claims against Ocwen and that Plaintiffs' claims arise from a common and related force-placed insurance kickback scheme.  Simply put, all plaintiffs challenge the Ocwen Defendants' decision (either directly or as successor-in-interest)[5] to purchase force-placed hazard insurance

---

[5] Courts specifically recognize that joinder of successor-in-interest defendants is proper under Rule 20(a), particularly where, as is the case here, "any right to relief of defendants['] …

policies from insurers that provided improper financial benefits to Defendants and/or their affiliates. Plaintiffs further challenge the Insurer Defendants' business practice of obtaining the business of loan servicers (such as the Loan Servicing Defendants) by offering and paying illicit kickbacks. SAC ¶ 44. The Ocwen Defendants' wrongful conduct (committed either directly or as successor-in-interest) could not have occurred but for the assistance of the Insurer Defendants, and vice versa.

Because Plaintiffs' mortgage loans created the relationships between Plaintiffs and Defendants – and Ocwen has acquired the servicing rights to all plaintiffs' loans - the liability for the actions of each defendant concerning each mortgage loan-based relationship should be adjudicated in a single action. This conclusion is further justified by the fact that Ocwen, by its own choice, has assumed the responsibilities of the legacy loan servicers Litton and Saxon. Thus, while Plaintiffs have limited their claims to the loan servicer that serviced their mortgage at the time of the forced placement and to that loan servicer's exclusive force-placed hazard insurance provider at that time, the liability of all or part of the Loan Servicing Defendants lies with Ocwen, either directly or as successor-in-interest to the Litton and Saxon Defendants.

---

successors would arise out of the same transaction or occurrence." *See United States v. Unger*, No. 06-cv-2453, 2007 WL 677712, at *2 (D. Kan. March 2, 2007) (joinder proper because relief sought by plaintiffs could not be granted in full without joinder of both parent and successor defendants); *Chaltry v. Ollie's Idea, Inc*., No. 76 Civ. 25, 1980 WL 2078, at *3 (W.D. Mich. April 23, 1980) (finding joinder of parent defendant proper despite parent company's formation and acquisition of original defendant occurring after lawsuit was filed);. OFC and OLC acquired Litton and Saxon respectively and expressly assumed liability for, among other things, those companies' force-placed insurance practices. SAC ¶ 2, 75, 78. "A corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 245, 451 N.E.2d 195 (1983).

The cases cited by Defendants to support their motions for severance are factually distinct and inapposite.  For example, the scope of the allegations in *Kalie v. Bank of Am. Corp.*, No. 12.–cv-9192, 2013 WL 4044951 (S.D.N.Y. Aug. 9, 2013), was far broader than the scope of the allegations here, where one specific type of behavior is alleged:  unlawful "force-placed" hazard insurance policies and procedures.  Additionally, the court in *Kalie* faulted plaintiffs' complaint for failing to "include a single factual allegation keyed to a particular plaintiff or defendant," for failing to give defendants the requisite notice of what a plaintiff's allegations of wrongdoing were as to any particular loan, and for failing to demonstrate any overlapping discovery.  *Id.* at *2, 5, 6.  Here, by contrast, Plaintiffs have identified, and Defendants have acknowledged in their briefing, the specific claims against each individual defendant and the common transactions on which those claims are based:  unlawful "force-placed" hazard insurance policies and procedures.  Furthermore, unlike *Kalie* and *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222 (E.D.N.Y. 2013), where separate loan transactions by different lenders did not constitute a series of transactions or occurrences, here, ownership by Ocwen of all the Loan Servicing Defendants unites all of the force-placed hazard insurance transactions under the same loan servicing umbrella, serving as a common thread connecting all of Plaintiffs' claims.  *Cf. Kalie*, 2013 WL 4044951 at *4; *Abraham*, 947 F. Supp. 2d at 229.[6] [7]

---

[6] Other cases cited by Defendants in support of their motions for severance are likewise distinguishable due to the vastly different claims or circumstances at issue.  Defendants' reliance on such cases is therefore misplaced.  *See Ghaly v. U.S. Dept. of Agriculture*, 228 F. Supp. 2d 283 (S.D.N.Y. 2002) (joinder denied because federal employee plaintiff seeking relief under the Whistleblower Protection Act was not in same administrative exhaustion posture as parties proposed to be joined); *Peterson v. Regina*, 935 F. Supp. 2d 628 (S.D.N.Y. 2013) (joinder prohibited in § 1983 action for malicious prosecution, false arrest, and false imprisonment because court found two separate arrests by different officers were unrelated incidents).

In short, Defendants fail to adequately support their conclusion that Plaintiffs' claims bear no logical connection.  To the contrary, Plaintiffs' claims all arise from the same type of force-placed insurance occurrence, are all related to a series of mortgage loan transactions that created Ocwen's loan servicing portfolio, and result from the forced placement of hazard insurance by the same Loan Servicing Defendants (either Ocwen or its legacy servicers, Litton or Saxon).  Plaintiffs' claims, therefore, are "logically related" within the meaning of Rule 20(a).

### 2.   Plaintiffs' claims present numerous common questions of law and fact

In keeping with "the impulse [] toward entertaining the broadest possible scope of action consistent with fairness to the parties," *Gibbs*, 383 U.S. at 724, joinder is proper if "*any* question of law *or* fact common to all plaintiffs will arise in the action." FED. R. CIV. P. 20(a)(1) (emphasis added).  Indeed, "Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be *at least one* common question of law *or* fact." 7 FED. PRAC. & PROC. CIV. § 1653 (3d ed.)

---

[7] Defendants also make wholly unsupported – and, indeed, erroneous – arguments that Plaintiffs' pleaded subclasses demonstrate that the claims unrelated and cannot be joined.  *See* American Modern Memo. at 3; Assurant Memo. at 16; Litton Memo. at 6.  Subclasses exist, and routinely are certified, for the purpose of allowing plaintiffs to proceed as a class, even where "class members assert divergent claims based on non-overlapping factual circumstances, harms and systemic failures."  *See Casale v. Kelly*, 257 F.R.D. 396, 409 (S.D.N.Y. 2009).  Rule 20, like Rule 23, requires that there be only one common question of law or fact.  Neither rule requires that all questions of law and fact be common.  In the class certification context, where different legal and factual questions also exist, the solution is to create subclasses, not to deny certification.  *Williams v. Chartwell Fin. Serv., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000) ("The fact that Rule 23 provides for subclasses when they are efficient makes it clear that the existence of multiple classes, in and of itself, is not sufficient to justify the district court's denial of class certification.").  Likewise, the fact that subclasses may be appropriate to address certain uncommon questions of law or fact or otherwise divergent claims is not dispositive of the propriety of joinder.  Rather, subclasses are a procedural mechanism that exists to facilitate joint or collective actions under precisely these circumstances.

(emphasis added); *Blesedell*, 708 F. Supp. at 1422.  Here, all Plaintiffs allege that Defendants wrongfully force-placed hazard insurance policies on their mortgages, and "they have relied upon the same legal theories for their claims."  *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 888 (S.D. Ohio 2003).  Yet Defendants argue that Plaintiffs' claims must be severed because "the court will have to review the individual facts particular to each lender/servicer/insurer arrangement in order to determine liability."  Assurant Memo. at 22. This, however, is not the relevant standard:  Rule 20(a) requires there be at least one common question of law or fact; it does *not* require an absence of any individualized facts.

The factual and legal issues are substantially similar across all of Plaintiffs' claims.  As previously noted, all plaintiffs except the Lyonses were directly force-placed by Ocwen.  The Ervings also assert claims against Saxon, its affiliates and the Assurant Defendants for a substantially similar scheme concerning an earlier forced placement, as well as Ocwen as successor in interest to Saxon.  Similarly, Papapietro and the Heards also assert claims against Litton, its affiliates, and the American Modern Defendants in connection with a substantially similar force-placed insurance scheme, and also name Ocwen as successor in interest to Litton. The Lyonses thus share the Papapietro and Heard Plaintiff Groups' claims against Litton and Ocwen as successor in interest.  Thus, Plaintiffs are united not only by their claims related to Ocwen's continuing course of conduct and its successor-liability, but also by their common allegations that the Loan Servicing and Insurer Defendants engaged in an unlawful force-placed insurance scheme.  Litigating the successor liability claims separately is inappropriate where the same plaintiff would be forced to litigate separate actions concerning such closely related conduct that arises out of one loan agreement.

Defendants point to recent decisions by the Judicial Panel on Multidistrict Litigation in support of their motions to sever.  While those cases involved FPI practices, their factual and procedural circumstances differ significantly from the factual and procedural circumstances in the case at bar.  For example, the MDL cases involved nearly five dozen cases against a multitude of unrelated banks in connection with an array of hazard, flood, and wind FPI policies. *See*, *e.g.*, *In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1352-53 (J.P.M.L. 2012).  Additionally, commonality was only one of many factors cited by the Panel in its denial of plaintiffs' motions to consolidate.  *See, e.g.*, *id.* at 1354 (a number of the actions were at or near the close of discovery); *In Re: JPMorgan Chase Bank, N.A., Mortgage Corporation Force-Placed Hazard Insurance Litigation*, MDL No. 2465 (J.P.M.L Aug. 7, 2013) (one group of plaintiffs had already settled their claims and was on the verge of filing preliminary approval papers).

Given the multitude of common issues of law and fact asserted in the SAC, particularly in light of the fact that only one common issue of law or fact is required, Plaintiffs easily satisfy Rule 20(a)'s commonality requirement.  Granting Defendants' motions to sever would result in duplication of efforts on the part of Plaintiffs, Defendants, and this Court at every stage of the litigation, including in preparing, responding to, and ruling on motions to dismiss, motions for summary judgment, motions for class certification, and countless discovery issues that are bound to arise along the way.  This result would fly in the face of Rule 20's objective of "promot[ing] trial convenience and expedit[ing] the resolution of lawsuits," and therefore instructs that Defendants' motion be denied.  *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999) (citing *Blesedell*, 708 F. Supp. at 1421).

**B.**     **Discretionary Factors Weigh In Favor of Joinder**

In addition to the requirements of Rule 20(a), courts consider the following discretionary factors when ruling on a motion to sever: (1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence. *Kehr v. Yamaha Motor Corp.*, 96 F. Supp. 2d 821, 826 (S.D.N.Y. 2008). Not only do Plaintiffs' claims satisfy both prongs of Rule 20(a), but also each of the relevant discretionary considerations weighs heavily against severance and in favor of joinder. Accordingly, Defendants' motions to sever must be denied.

**1.**     **Joinder will facilitate judicial economy**

Contrary to Defendants' contention, severance would significantly undermine judicial economy. Indeed, severance of Plaintiffs' claims in the manner proposed by Defendants would require *three* rounds of fact and expert discovery, *three* sets of briefing and hearings on class certification, procedural, and dispositive motions, and *three* separate trials. The resulting burden on the court, the parties, and the witnesses would be significant. Indeed, the burden is especially significant where Plaintiffs would be required to bring separate actions – sitting for repeated depositions, responding to separate discovery requests, etc. – in connection with their single mortgage loan.

The efficiency achieved by proceeding with one action, in which all of Plaintiffs' inter-related and overlapping claims are litigated together, cannot be overstated. Each plaintiff has asserted claims against Ocwen – either directly as his or her loan servicer and/or as the successor-in-interest to his or her loan servicer. To require each plaintiff to separately depose Ocwen personnel, to separately propound fact discovery on Ocwen, to separately retain expert witnesses and produce expert reports related to Ocwen's liability and resulting damages, to separately brief procedural and substantive motions related to Ocwen, and to separately examine

Ocwen witnesses at trial would be exceedingly duplicative, and would result in significant unnecessary burden and expense to the parties, the witnesses, and the Court.  *See Laureano*, 2007 WL 2826649, at *9 ("The parties are in the initial stage of discovery, and all of the discovery relating to [certain of the defendants] would have to be duplicated if the actions were severed."); *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1401 (S.D.N.Y. 1995) ("Proof of many of these points as they pertain [one set of defendants] likely will in significant part require the testimony of the same witnesses and presentation of the same evidence as will be required in proving them against the other defendants.  To require the German Plaintiffs to prove these points at separate trials, one against [one set of defendants], and another against the [other defendants] as prior owners and managers of the same building, would be repetitious, prolong the ultimate termination of this litigation, and place an unnecessary burden on the German Plaintiffs.  In addition, severance of the claims against [one set of] Defendants would pose a significant danger of inconsistent judgments in the separate actions."); *Nkemakolam v. St. John's Military Sch.*, No. 12-2132-JWL, 2014 WL 200918, at *1 (D. Kan. Jan. 17, 2014) ("Moreover, the eleven plaintiffs share the same liability expert, and each plaintiff intends to offer [similar evidence against Defendants].  Such overlapping evidence indicates that requiring eleven separate trials could result in delay, inconvenience to the parties and witnesses, and added expense."); *Sprint Commc'ns Co. v. TheGlobe.com, Inc.*, 233 F.R.D. 615, 617-18 (D. Kan. 2006) ("[W]itnesses should not be deposed more than once on identical issues.  Thus, to the extent that there are common issues here, there are clear economies to be achieved on behalf of all parties.").

Moreover, Plaintiffs' claims against the various Defendants implicate identical legal questions and theories, and the various Defendants are likely to raise similar, if not identical,

affirmative defenses.[8]  The inefficiency that would result from requiring the parties to brief these same issues separately, and from requiring the court to hear and rule on these same issues multiple times, is profound.  *See Laureano*, 2007 WL 2826649, at *9 (severance would result in duplication with respect to "any dispositive motions brought on behalf of these defendants, which at this [stage] would appear to be identical"); *Sprint*, 233 F.R.D. at 617 ("Further, the defendants have raised several identical affirmative defenses.  As a result, it is undeniable that the court will inevitably be faced with duplicative arguments and overlapping evidence.").

Accordingly, "[p]roceeding with [Plaintiffs'] claims as a single case would no doubt promote judicial economy and efficiency."  *Kehr*, 596 F. Supp. 2d at 828 (joinder facilitates judicial economy and efficiency where much of the discovery and depositions will be identical and where there will be overlap between the witnesses and documentary proof used at trial).  *See also Laureano*, 2007 WL 2826649, *9 ("it seems more likely that joinder, rather than severance, would promote judicial economy" where severance would result in duplication of discovery and briefing on dispositive motions).

### 2.    Defendants will suffer no prejudice if severance is denied

Defendants paint a doomsday picture of the prejudice they will face if severance is denied.  Specifically, they maintain that they will suffer from jury confusion and "spillover prejudice" if forced to try their cases together.  The Insurer Defendants, moreover, claim that

---

[8] Even if Defendants are correct that Plaintiffs' claims are misjoined – and they are not – it is unclear what Defendants hope to gain from succeeding in these motions other than yet another unnecessary delay.  If the Court rules in Defendants' favor, it is beyond question that Plaintiffs meet the burden for consolidation pursuant to Fed. R. Civ. P. 42(a).  Plaintiffs have clearly met the burden of demonstrating common questions of law and fact such that consolidation would be appropriate.  Because Defendants' proposed three case structure would involve three cases where venue is proper in this Court, Plaintiffs would immediately move for and meet the requirements for consolidation.

they cannot be joined as defendants in the same action because they are direct competitors, and complain that, in the absence of severance, their confidential and proprietary information would be compromised.  These contentions are unsupported by fact or law.

As an initial matter, Defendants' arguments regarding jury confusion and so-called "spillover prejudice" are belied by the existence of Rule 20(a)(2) itself.  The sole purpose of the rule is to allow for a single action – including a single trial – against multiple defendants.  If the court were to accept Defendants' suggestion that Plaintiffs cannot proceed against them jointly because of the potential for "spillover prejudice" – an argument that conceivably could be made by any defendant joined with another in any action – the exception would swallow the rule.[9]

More critically, Rule 20(b) expressly contemplates and empowers the courts to address the very types of concerns raised by Defendants.  Entitled "Protective Measures," Rule 20(b) provides:

> The court may issue orders – including an order for separate trials – to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the part asserts no claim and who asserts no claim against the party.

To the extent any risk of jury confusion or "spillover prejudice" is found to exist, this Court can exercise its authority under Rule 20(b) to implement an array of protective measures, including appropriate jury instructions and, if necessary, even separate trials.  Confronted, just weeks ago, with a similar argument, the district court in *Nkemakolam v. St. John's Military School* denied defendant's motion to sever, stating:

---

[9] Nor has this Court found such arguments persuasive.  *See, e.g.*, *Kehr*, 596 F. Supp. 2d at 828 ("Yamaha's claim of prejudice amounts to an argument that if the claims of the [] plaintiffs are tried together that there is a likelihood of juror confusion.  I do not find this [] argument to be credible . . . I am unconvinced that jurors will be unable to separate the different fact patterns presented by the [plaintiffs'] claims during trial or that trying the claims together will result in prejudice to either party.").

> The Court is not convinced, however, that defendant will suffer such prejudice in a single trial.  In the Court's experience, juries are quite able to keep track of details of different [sets of facts], particularly since the jurors will be allowed to take notes during the trial.  The Court will instruct the jury about any evidence that may be considered with respect to some claims but not others, and there is no reason to presume that the jury will not follow any such instructions.  Moreover, the Court does not agree with defendant that the jury will be confused by the fact that some claims remain as asserted only by some of the plaintiffs; counsel can easily make that distinction in their arguments, and the Court's instructions and verdict form will make clear which claims are asserted by which plaintiffs.

2014 WL 200918, at *2; *see also German by German*, 896 F. Supp. at 1401 ("whatever minimal degree of prejudice might inhere in a joint trial can be eliminated by careful instructions to the jury"); *Anticancer, Inc. v. Pfizer Inc*., No. 11-cv-107, 2012 WL 1019796, *3 (S.D. Cal. Mar. 2, 2012) (denying motion to sever and finding that defendant "has failed to convince the Court that a jury instruction would not cure any potential confusion").   Accordingly, Defendants' unsupported and subjective fears that they face a greater likelihood of a negative verdict if they are tried together do not warrant severance.[10]

Likewise, the Insurer Defendants' suggestion that they cannot be joined in the same action because they are direct competitors is unavailing.  Nothing in Rule 20 supports such a contention.  To the contrary, competitors are routinely joined as defendants in the same lawsuit.  *See, e.g.*, *Sprint*, 233 F.R.D. at 617; *H-W Tech, L.C. v. Apple, Inc.*, No. 3:11-CV-651-G, 2012 WL 959316 (N.D. Tex. Feb. 23, 2012).  In *Sprint*, the court rejected defendant's argument that

---

[10] Defendants' arguments, moreover, are "premature, in that the Court will be in a better position to consider severance after the parties have conducted discovery, claim construction, and pretrial motion practice." *Anticancer, Inc.*, 2012 WL 1019796 at *2-3 (denying motion to sever without prejudice to defendant renewing its request at a later date when the court is in "a better position . . . to weigh the benefits of joinder against [defendant's] concerns regarding jury confusion and prejudice during trial").  "The Court [can] revisit the choice of severing the proceedings in connection with the final pretrial conference if requested, but denying the motion to sever until the parties have completed discovery is appropriate." *Sprint*, 233 F.R.D. at 618.

"it is inherently unfair to join separate defendants in the same proceeding when they are competitors," explaining:

> If the court were to accept this unsupported assertion, however, the court would nullify the primary purpose behind Rule 20, which is to join separate defendants if the joined suits have overlapping issues.  That [defendants] are competitors who allegedly have infringed the same patents enhances, rather than undermines, the rational for permissive joinder in this matter.

233 F.R.D. at 617.  Moreover, Plaintiffs' counsel has recently litigated a force-placed insurance case involving two competing loan servicers (Citibank and Midfirst Bank) without incident.  *See Casey v. Citibank, N.A.*, No. 5:12-cv-820 (N.D.N.Y.).[11]

The Insurer Defendants fare no better by arguing that, in the absence of severance, they will be forced to disclose confidential and proprietary information to their competitors.  As noted above, Rule 20(b) exists for the very purpose of protecting parties from any prejudice that may arise from Rule 20 joinder.  *See Barr Rubber Prod. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1127 (2d Cir. 1970) ("Rule 20 . . . specifically vests in the district court the discretionary power to make such orders as may be required to prevent delay or prejudice.").   In addition to the "protective measures" authorized by Rule 20(b), the court's inherent "authority to issue protective orders is broad."  *Favors v. Cuomo*, 285 F.R.D. 187, 207 (E.D.N.Y. 2012).   This Court, then, is authorized to issue protective orders specifying how and to whom documents and other discovery materials are disclosed in order to protect the Insurer Defendants from any prejudice that potentially could result from the exchange of confidential and proprietary information to each other.  *See Sprint*, 233 F.R.D. at 618 ("[Defendant] also fails to explain why

---

[11] Plaintiff Gordon Casey, like the Erving, Papapietro, and Heards, had a single mortgage loan for which the servicing rights were transferred from Citibank to Midfirst.  The Casey plaintiff was force-placed by both servicers and brought a single action against both servicers to challenge the conduct.

the court cannot prevent any possible pretrial disclosure of trade secrets or confidential material by a protective order.  [Defendant's] alleged prejudice is unsupported either by argument or precedent.").

Despite the failure of any single Defendant to acknowledge or even mention Rule 20(b), this provision equips the court with all of the tools necessary to address the very concerns raised by Defendants.  Their attempts to defeat joinder on the ground of potential prejudice are meritless.

### 3.   <u>Plaintiffs' claims involve overlapping witnesses and evidence</u>

As discussed above, Plaintiffs' claims indisputably involve overlapping fact and expert witnesses and evidence, underscoring the propriety of joinder.  First, because Ocwen is central to the claims of all Plaintiffs – either directly as the loan servicer or as the successor-in-interest to the loan servicer – all Plaintiffs will serve overlapping if not identical discovery requests on Ocwen.  Second, because all of the Loan Servicing Defendants "serviced loans evidenced by substantially similar standard form notes and mortgage contracts or deeds of trust," SAC at ¶ 266, Plaintiffs will rely, in large part, on the same documentary evidence.  Third, because Plaintiffs' claims arise out of common legal theories, Plaintiffs are likely to share liability and damages experts.  This means that Plaintiffs are likely to designate the same experts for deposition, and proffer the same expert reports, on the same issues.  The same may be true for Defendants, who are likely to assert similar or identical defenses and affirmative defenses and thus may rely on the same expert testimony and reports.  In short, because all Plaintiffs allege that Ocwen, or a servicer subsequently acquired by Ocwen, abused its limited right to force-place hazard insurance on Plaintiffs' properties, by charging Plaintiffs for improper kickbacks exchanged between Defendants, it is anticipated that there will be significant overlap between Plaintiffs' discovery.  Therefore, this factor – like each of the others – weighs heavily against

severance and in favor of joinder.  *See Kehr*, 596 F. Supp. 2d at 828 ("Plaintiffs' submit that both

the Kehr and Taber plaintiffs will require discovery from and possibly call as witnesses identical

Yamaha employees.   Severing the claims of the Kehr and Taber plaintiffs will force the

duplication of efforts by the parties, counsel and this Court.")

## V.      **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants'

respective motions to sever, and allow Plaintiffs to proceed jointly, pursuant to Rule 20 of the

Federal Rules of Civil Procedure.

Dated: February 14, 2014                        **LOWEY DANNENBERG**
                                                **COHEN & HART, P.C**.

                                   By:_____/s/ David Harrison_____
                                        Barbara J. Hart (BH-3231)
                                        David Harrison (DH-3834)
                                        One North Broadway, Suite 509
                                        White Plains, NY 10601-2301
                                        Telephone: (914) 997-0500
                                        Facsimile:  (914) 997-0035
                                        Email: bhart@lowey.com
                                                 dharrison@lowey.com

                                        **KESSLER TOPAZ**
                                        **MELTZER & CHECK, LLP**
                                        Edward W. Ciolko
                                        Peter A. Muhic
                                        Tyler S. Graden
                                        280 King of Prussia Road
                                        Radnor, PA 19087
                                        Telephone: (610) 667-7706
                                        Facsimile:  (610) 667-7056
                                        Email: eciolko@ktmc.com
                                                 pmuhic@ktmc.com
                                                 tgraden@ktmc.com

                                        **TREUHAFT & ZAKARIN**
                                        Norah Hart
                                        305 Broadway, 9th Floor
                                        New York, New York 10007

Telephone: (212) 725-6418
Facsimile:  (646) 924-0554
Email: nhart@treulaw.com

**BERGER & MONTAGUE, P.C**.
Shanon J. Carson
Patrick Madden
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Facsimile:  (215) 875-4604
Email: scarson@bm.net
          pmadden@bm.net

**TAUS, CEBULASH & LANDAU,
LLP**
Brett Cebulash
Kevin S. Landau
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
Facsimile:  (212) 931-0703
Email: bcebulash@tcllaw.com
          klandau@tcllaw.com

**LOCKRIDGE GRINDAL
NAUEN P.L.L.P.**
Robert K. Shelquist
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Email: rksheIquist@locklaw.com

**NIX PATTERSON & ROACH,
LLP**
Jeffery J. Angelovich
Michael B. Angelovich
Brad Seidel
Christopher R. Johnson
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile:  (903) 645-4415

**DEALY SILBERSTEIN**

**& BRAVERMAN, LLP**
Milo Silberstein
225 Broadway, Suite 1405
New York, NY 10007
Telephone: (212) 385-0066
Facsimile:  (212) 385-2117
msilberstein@dsblawny.com

**CUNEO GILBERT & LaDUCA, LLP**
Charles J. LaDuca
8120 Woodmont Avenue
Bethesda, MD 20814
Telephone: (202) 789-3960
Facsimile:  (202) 789-1813
Email: charlesl@cuneolaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 14, 2014, I electronically filed the foregoing with the Clerk of the United States District Court for the Southern District of New York through the CM/ECF system, thereby automatically serving all registered parties.

/s/ David C. Harrison
David C. Harrison