UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- X
                                             :
JIMMY LYONS, *et al.*, individually and on behalf :
of all others similarly situated,            :
                                             :
                Plaintiffs, :   Case No. 13-cv-00513-ALC-HBP
                                             :
           - v -                      :
                                             :
LITTON LOAN SERVICING LP, *et al.*,          :
                                             :
                Defendants. :
------------------------------------------- X


**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS ASSURANT, INC., AMERICAN SECURITY INSURANCE COMPANY, AND STANDARD GUARANTY INSURANCE COMPANY**

 

SULLIVAN & WORCESTER LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 660-3069
Facsimile: (212) 660-3001

CARLTON FIELDS
JORDEN BURT, P.A.
1025 Thomas Jefferson Street NW
Suite 400 East
Washington, DC 20007
Telephone: (202) 965-8100
Facsimile: (202) 965-8104

*Attorneys for Defendants Assurant, Inc., American Security Insurance Company, and Standard Guaranty Insurance Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    I.     The Filed-Rate Doctrine Is Properly Considered Under Rule 12(b)(1). ........................ 1

    II.    The Filed-Rate Doctrine Depends On The Objective Implications Of Plaintiffs' Suit. .................................................................................................................. 2

    III.   Involvement Of Loan Servicing Defendants Does Not Preclude Application Of Filed-Rate Doctrine. .......................................................................... 4

    IV.   Standing Is A Threshold Question That Cannot Await Class Certification. ........................................................................................................................ 6

    V.    Plaintiffs Cannot Trace Their Alleged Injury To Assurant, Inc. ................................. 9

CONCLUSION ............................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 7, 8

*In re Bayer Corp. Combination Aspirin Prods. Mkt'g & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) ................................................................................... 8

*Catlin v. Hanser*, No. 10 Civ. 451, 2011 WL 1002736 (S.D. Ind. Mar. 17, 2011) ........................ 7

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................................ 6

*Cochran-May v. Wells Fargo Bank, N.A.*, 2:12-CV-240, 2014 WL 361177
   (S.D. Tex. Feb. 3, 2014) .................................................................................................. 9, 10

*Coll v. First Am. Title Ins. Co.*, 642 F.3d 876 (10th Cir. 2011) .................................................... 2

*Cornelius v. Fid. Nat'l Title Co.*, No. 08 Civ. 754, 2009 WL 596585
   (W.D. Wash. Mar. 9, 2009) ................................................................................................... 7

*Curtis v. Cenlar FSB*, No. 13 Civ. 3007, 2013 WL 5995582
   (S.D.N.Y. Nov. 12, 2013) ................................................................................................. 3, 4

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, MDL No. 2031,
   2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ........................................................................ 6

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
   903 F. Supp. 2d 198 (S.D.N.Y. 2012) ................................................................................... 8

*Decambaliza v. QBE Holdings, Inc.*, No. 13-286, 2013 WL 5777294
   (W.D. Wis. Oct. 25, 2013) .................................................................................................... 4

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................................ 7

*Dolan v. Fidelity National Title Insurance Co.*, 365 F. App'x 271 (2d Cir. 2010) .................. 2, 3

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*,
   Civ. A. No. 12-169, 2013 WL 5503308, at *11 (D.N.J. Oct. 2, 2013) .................................. 6

*Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ............................................................ 8

*Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*,
   301 F.3d 329 (5th Cir. 2002) ................................................................................................. 8

*In re G-Fees Antitrust Litig.,* 584 F. Supp. 2d 26 (D.D.C. 2008) ................................................. 7

*In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, MDL No. 06-1739,
  2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006)..................................................................8

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007)....................................................................................7

*Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 274-75 (E.D.N.Y. 2010) ...............................6

*Hunnicutt v. Zeneca, Inc.*, No. 10 Civ. 708, 2012 WL 4321392
  (N.D. Okla. Sept. 19, 2012) ......................................................................................................7

*Indergit v. Rite Aid Corp.*, No. 08-cv-9361, 2009 WL 1269250
  (S.D.N.Y. May 4, 2009) ............................................................................................................8

*Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156 (1922) .........................................1

*Kunzelmann v. Wells Fargo Bank, N.A.*, Civ. A. No. 11-81373,
  2013 WL 139913 (S.D. Fla. Jan. 10, 2013)..............................................................................4

*Lauren v. PNC Bank, N.A.*, Case No. 13-cv-762, 2014 WL 123099
  (W.D. Pa. Jan. 14, 2014)......................................................................................................6, 8

*In re Magnesium Oxide Antitrust Litig.*, No. 10 Civ. 5943, 2011 WL 5008090
  (D.N.J. Oct. 20, 2011)...........................................................................................................7, 8

*Mahon v. Ticor Title Insurance Co.*, 683 F.3d 59 (2d Cir. 2012)............................................6, 7, 8

*Miller v. Wells Fargo Bank, N.A.*, No. 13 Civ. 1541 (VB), 2014 WL 349723
  (S.D.N.Y. Jan. 30, 2014) ...........................................................................................2, 3, 4, 5

*Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*,
  341 U.S. 246 (1951)..................................................................................................................3

*Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418 (S.D. Fla. 1997).............................1

*In re N.J. Title Ins. Litig.*, 683 F.3d 451 (3d Cir. 2012)...................................................................1

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................7, 8

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011).................................7

*Parks v. Dick's Sporting Goods, Inc.*, No. 05 Civ. 6590, 2006 WL 1704477
  (W.D.N.Y. June 15, 2006).....................................................................................................8, 9

*Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976 (N.D. Cal. 2009) .................................................7

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009).................................................7

*Rapp v. Green Tree Serv. LLC*, No. 12-CV-2496, 2013 WL 3992442
  (D. Minn. Aug. 5, 2013) ................................................................................................4

*In re Refrigerant Compressors Antitrust Litig.*, No. 09 Civ. 2042,
  2012 WL 2917365 (E.D. Mich July 17, 2012) ...............................................................7

*Roberts v. Wells Fargo Bank, N.A.*, Case No. 4:12-cv-200,
  2013 WL 1233268 (S.D. Ga. Mar. 27, 2013) .........................................................4, 10

*Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412 (S.D.N.Y. 2009),
  *aff'd* 379 F. App'x 30 (2d Cir. 2010) .............................................................................5

*Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392 (3d Cir. 2004) ..........................8

*Saunders v. Farmers Insurance Exchange*, 440 F.3d 940 (8th Cir. 2006) ......................1

*Simon v. KeySpan Corp.*, 694 F.3d 196 (2d Cir. 2012) ....................................................2

*Simington v. Lease Finance Group, LLC*, No. 10 Civ. 6052, 2012 WL 651130
  (S.D.N.Y. Feb. 28, 2012) ................................................................................................9

*Singleton v. Wells Fargo Bank, N.A.*, No. 12-216, 2013 WL 5423917
  (N.D. Miss. Sept. 26, 2013) ............................................................................................4

*Smith v. Lawyers Title Ins. Corp.*, No. 07 Civ. 12124, 2009 WL 514210
  (E.D. Mich. Mar. 2, 2009) ..............................................................................................7

*Smith v. Pizza Hut, Inc.*, No. 09 Civ. 1632, 2011 WL 2791331
  (D. Colo. July 14, 2011) .............................................................................................7, 8

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .............................................1

*Stone v. Crispers Restaurants, Inc.*, No. 06 Civ. 1086, 2006 WL 2850103
  (M.D. Fla. Oct. 3, 2006) .................................................................................................7

*Temple v. Circuit City Stores, Inc.*, No. 06 Civ. 5303, 2007 WL 2790154
  (E.D.N.Y. Sept. 25, 2007) .........................................................................................6, 9

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365
  (S.D. Fla. 2001) ..............................................................................................................7

*Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212 (W.D. Okla. 2008) .....................7

*In re Title Insurance Antitrust Cases*, 702 F. Supp. 2d 840 (N.D. Ohio 2010) ...............1

*Wah Chang v. Duke Energy Trading & Mktg., LLC*,
  507 F.3d 1222 (9th Cir. 2007) ....................................................................................1, 5

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009)..............................................7

*Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399 (D. Md. 2012) ...................................................7

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition to the Assurant Defendants' motion to dismiss (Dkt. No. 97) is premised on arguments that are both illogical and which have been rejected by controlling authority. Plaintiffs shroud these defects with the hyperbolic declaration that "[i]t is time for the Assurant Defendants to face justice." Oppo. at 1. This torch-and-pitchfork approach does not overcome the dispositive points raised in the Assurant Defendant's opening Motion.

**ARGUMENT**

**I.     The Filed-Rate Doctrine Is Properly Considered Under Rule 12(b)(1).**

"At the core of the filed rate doctrine is the issue of standing." *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1429 (S.D. Fla. 1997). Plaintiffs correctly point out that the Article III standing inquiry turns on plaintiffs' injuries and whether they are actual, traceable, and redressable. *See* Oppo. at 6; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Without legally cognizable injury, there is no standing; here, plaintiffs have no legally cognizable injury. Because insureds "have no legal right to pay anything other than the promulgated rates, they have suffered no cognizable injury by virtue of paying said rates." *Morales*, 983 F. Supp. at 1429; *see also In re N.J. Title Ins. Litig.*, 683 F.3d 451, 461 n.7 (3d Cir. 2012) (paying "existing rates do[es] not constitute a cognizable legal injury under the filed rate doctrine"). The Assurant Defendants' motion to dismiss is properly a Rule 12(b)(1) challenge to plaintiffs' standing rather than a Rule 12(b)(6) challenge to the merits of their claims.[1]

---

[1] *See, e.g., Keogh v. Chicago & Nw. Ry. Co.*, 260 U.S. 156, 163 (1922) (when a party pays the filed rate, they have suffered no injury); *Wah Chang v. Duke Energy Trading & Mkt'g, LLC*, 507 F.3d 1222, 1225, 1227 n.17 (9th Cir. 2007) (affirming dismissal under 12(b)(1) where filed rate doctrine applied to "completely dispose[] of this case"); *Saunders v. Farmers Ins. Exchange*, 440 F.3d 940, 944 (8th Cir. 2006) ("the no-injury principle of *Keogh* applies to deprive a RICO or antitrust plaintiff of standing under federal law to challenge a filed rate that must be charged under state law."); *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 846, 849 (N.D. Ohio
(*footnote continued on next page*)

**II.     The Filed-Rate Doctrine Depends On The Objective Implications Of Plaintiffs' Suit.**

Plaintiffs argue that the filed-rate doctrine does not apply because "plaintiff [sic] does not challenge the rate itself but rather challenges the defendants' practice of exchanging kickbacks to secure business."  But that is not the governing test.  "Importantly, the doctrine 'applies even when a claim is based on fraud or impropriety in the method by which the rate is determined.'" *Miller v. Wells Fargo Bank, N.A.*, No. 13 Civ. 1541 (VB), 2014 WL 349723, at * 7 (S.D.N.Y. Jan. 30, 2014) (quoting *Simon v. KeySpan Corp.*, 694 F.3d 196, 205 (2d Cir. 2012).  *See also Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 890 (10th Cir. 2011) ("[T]he underlying conduct [of the defendant] does not control whether the filed rate doctrine applies.  Rather, the focus . . . is the impact the court's decision will have" on prior agency rate determinations.).  Thus, application of the filed-rate doctrine is determined by an objective test, not by plaintiffs' subjective view of their claims.  This is the express rule in the Second Circuit, and plaintiffs' continued emphasis of the Assurant Defendants' purported conduct ignores this binding precedent.

Notably, in *Dolan v. Fidelity National Title Insurance Co.*, 365 F. App'x 271, 272 (2d Cir. 2010), plaintiffs challenged title insurance rates, theorizing that defendants had engaged in a price-fixing conspiracy.  Plaintiffs argued that the court could issue injunctive relief "designed to put an end to the conspiracy" without running afoul of the filed-rate doctrine.  *Id*. at 276.  Plaintiffs' emphasis on the defendants' purported bad conduct rather than the insurance rates is analogous to plaintiffs' argument here.  Unfortunately for plaintiffs, the Second Circuit rejected that exact reasoning:

---

2010) ("[t]he filed rate doctrine is merely a judicially created restriction on remedies and standing.").

> Although plaintiffs artfully characterize the requested injunction as one to prohibit 'concerted efforts,' that does not permit their claim to escape application of the filed rate doctrine . . . Plaintiffs merely seek lower title insurance rates, and those rates must be set by the Department, not this court.

*Id*. Consistent with this precedent, two courts in this District recently declared in similar LPI litigation that "[t]he applicability of the Filed Rate Doctrine does not turn on the conduct underlying the rate setting. Rather, 'it is [the] judicial determination of a reasonable rate that the filed rate doctrine forbids.'" *Curtis v. Cenlar FSB*, No. 13 Civ. 3007, 2013 WL 5995582 (S.D.NY. Nov. 12, 2013); *see also Miller*, 2014 WL 349723, at * 7 (holding that for purposes of the filed rate doctrine, the nature of the challenged conduct "simply does not matter").[2]

Plaintiffs' argument also ignores U.S. Supreme Court precedent. In *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246 (1951), the plaintiff disputed the reasonableness of utility rates. But rather than cast its challenge solely as one directly assailing rates, the plaintiff instead "g[ave] its case a different cast by alleging that by fraudulent abuse of [an] interlocking relationship[,] its predecessor was deprived of its independence and power to resort to its administrative remedy." *Id*. at 250-51. The Court distilled the ultimate issue to "whether it is open to the courts to determine what the reasonable rates during the past should have been." *Id*. at 251. Satisfied that the claims required the Court to delve into reasonability of rates, the Court concluded, "[t]o reduce the abstract concept of reasonableness to concrete expression in dollars and cents is the function of the Commission." *Id*.

---

[2] Plaintiffs attempt to minimize *Curtis* because the plaintiff there was *pro se*. However, Mr. Curtis is an attorney, not a layperson. *Curtis*, 2013 WL 5995582, at n.1. More important, the court in *Curtis* engaged in its own analysis of the issues and governing case law when it determined that underlying conduct is irrelevant.

3

Along with *Milleri and* Curtis, *n*umerous other courts have rejected plaintiffs' exact argument in nearly identical LPI class actions.[3] In short, just because plaintiffs repeatedly insist that they are challenging conduct rather than rates does not mean that such distinction carries any legal significance, and it is telling that plaintiffs have never articulated precisely how the Court can dispense the relief sought without running afoul of the filed-rate doctrine.

### III.  Involvement Of Loan Servicing Defendants Does Not Preclude Application Of The Filed-Rate Doctrine.

In their opening Motion, the Assurant Defendants detailed why involvement of the Loan Servicing Defendants as intermediaries between the Assurant Defendants and plaintiffs has no impact on application of the filed-rate doctrine.  Mtn. at 10-11.  The Assurant Defendants also established that rate regulators were well aware that intermediary "financial institutions" would place this particular insurance product, and that those same regulators approved the Assurant Defendants' rates for that precise application.[4]  *Id*. at 11.  Finally, the Assurant Defendants

---

[3] *See Singleton v. Wells Fargo Bank, N.A.*, No. 12-216, 2013 WL 5423917, at *2 (N.D. Miss. Sept. 26, 2013) ("[i]t appears to the court that Plaintiff is essentially alleging that the policy rates are too high and that recovery is sought based on this issue."); *Roberts v. Wells Fargo Bank, N.A.*, Case No. 4:12-cv-200 2013 WL 1233268, at *13 (S.D. Ga. Mar. 27, 2013) ("Regardless of the spin put on [plaintiff's] allegations and claims, at bottom this case calls for relief that itself triggers application of the filed rate doctrine."); *Decambaliza v. QBE Holdings, Inc.*, No. 13-286, 2013 WL 5777294, at *6-7 (W.D. Wis. Oct. 25, 2013) (plaintiff's "attempt[] to characterize her claims as a challenge to improper and unlawful insurance practices and not to the reasonableness of the filed rate" is "an illusory distinction because the alleged fraud necessarily implicates the reasonableness of the filed rates.").  *See also Rapp v. Green Tree Serv. LLC*, No. 12-CV-2496, 2013 WL 3992442, at *10 (D. Minn. Aug. 5, 2013) (plaintiffs' argument is "that the insurance sold by [ASIC] was really, really expensive—so expensive, in fact, that *some* portion of the amount that [ASIC] retained must have been for something other than providing insurance.") (emphasis in original); *Kunzelmann v. Wells Fargo Bank, N.A.*, Civ. A. No. 11-81373, 2013 WL 139913, at *13 (S.D. Fla. Jan. 10, 2013) (reconsidering the court's previous adoption of the argument that plaintiffs are not challenging the rates, and declaring that "the filed-rate doctrine is an issue that must be addressed.").

[4] For this reason, plaintiffs' argument that it was the Assurant Defendants rather than the Loan Servicing Defendants who secured rate approvals falls flat.  *See* Oppo. at 12.  What matters is that the rates were approved for use with a financial institution situated between plaintiffs and the Assurant Defendants.

pointed out that authority holding otherwise conflicted head-on with precedent from this District which was affirmed by the Second Circuit. *See Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 417-19 (S.D.N.Y. 2009), *aff'd* 379 F. App'x 30 (2d Cir. 2010) (the filed-rate doctrine bars challenges to approved rates, regardless of whether those rates are paid to the insurer through an intermediary).

Plaintiffs do not dispute this account of *Roussin*'s holding. Instead, they attempt to distinguish it. Plaintiffs confusingly argue that the third party in *Roussin* qualified as an "intermediary," while the Loan Servicing Defendants do not so qualify simply because they were insureds. *See* Oppo. at 13. This is hair-splitting. First, being an insured and an intermediary are not mutually exclusive, and plaintiffs do not show why that should be the case, or why this purported "difference" does not destroy the distinction they attempt to create. To the extent plaintiffs' point is that the Loan Servicing Defendants are not "intermediaries" because they, **rather than** plaintiffs, were insureds, plaintiffs are equally wrong. *See* Oppo. at 13. In fact, plaintiffs attached numerous exhibits listing individual plaintiffs as additional insureds on ASIC coverage to the Complaint, expressly rebuffing any attempt to distinguish *Roussin* on those grounds. Compl., *e.g.*, at Exs. 34, 40, 44, & 55.

Plaintiffs also argue that the Loan Servicing Defendants' intermediary role somehow precludes application of the filed-rate doctrine. *See* Oppo. at 12. But in the next breath, faced with precedent contradicting that position, plaintiffs argue that the Loan Servicing Defendants were not intermediaries. *Id.* at 13. Which is it? Regardless, *Roussin* plainly holds that the filed-rate doctrine applies whether or not the Loan Servicing Defendants were intermediaries between the Assurant Defendants and plaintiffs. *See also Miller*, 2014 WL 349723 at *7 (citing *Roussin* and holding the presence of a lender does not bar application of the filed rate doctrine); *Wah*

5

*Chang*, 507 F.3d at 1226 (rejecting the argument that an indirect payment of rates precludes application of the filed-rate doctrine as "an asthenic distinction at best.").

IV.     **Standing Is A Threshold Question That Cannot Await Class Certification.**

Plaintiffs argue that the Court cannot address the Assurant Defendants' standing argument unless and until the putative class is certified. *See* Oppo. at 14-16. Another federal court passing on this issue in the LPI context has emphatically rejected this argument holding, in language equally applicable to this case, that a putative class representative "whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law[.]" *See Lauren v. PNC Bank, N.A.*, Case No. 13-cv-762-TFM, 2014 WL 123099 (W.D. Pa. Jan. 14, 2014) (citations omitted). The holding in *Lauren* is consistent with—and plaintiffs' argument is contrary to—an emerging consensus among federal courts, including several courts in the Second Circuit, that plaintiffs must show individual standing to advance multi-state class allegations prior to certification because: (1) constitutional standing is a "threshold requirement," *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); and (2) named plaintiffs "have no standing to bring claims for injuries under the laws of [foreign] states" since "[s]uch injuries, if they occurred, were suffered by other people," *Temple v. Circuit City Stores, Inc.*, No. 06 Civ. 5303, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007). *See also Mahon v. Ticor Title Insurance Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (disagreeing "with the approach that analyzes class certification before Article III standing and treats the class as the relevant legal entity"); *Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 274-75 (E.D.N.Y. 2010). Dozens of courts in nearly every circuit have agreed.[5]

---

[5] *See also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, MDL No. 2031, 2013 WL 4506000, at *5-6 (N.D. Ill. Aug. 23, 2013); *In re Ductile Iron Pipe Fittings Indirect Purchaser*
(*footnote continued on next page*)

6

Plaintiffs rely primarily on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), but a careful reading of those cases reveals that they actually address a different issue – the pre-certification standing of **unnamed** class members – than presented here.  Standing of unnamed class members would become relevant only if the class were certified, prompting the Supreme Court to defer the standing inquiry in that narrow context.  *Ortiz*, 527 U.S. at 831.  Here, by contrast, the issue is the **named plaintiffs'** standing to assert claims under the laws of foreign states, even prior to certification.

The Supreme Court, in other words, did not intend to delay standing inquiries for named plaintiffs.  Removing any doubt on this point, the Second Circuit recently explained that the *Ortiz* "language regarding the logical antecedence of class certification issues appears to us to be a description of the case before it" and is not "a general directive regarding the order in which a court should treat class certification and Article III standing in every class action."  *Mahon*, 683 F.3d at 65.  "Because the Article III concerns would arise only if the Court affirmed class certification, and because the Rule 23 class certification issues were dispositive, it was logical for

---

*Antitrust Litig.*, Civ. A. No. 12-169, 2013 WL 5503308, at *11 (D.N.J. Oct. 2, 2013); *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012); *In re Refrigerant Compressors Antitrust Litig.*, No. 09 Civ. 2042, 2012 WL 2917365, at *7 (E.D. Mich. July 17, 2012); *Hunnicutt v. Zeneca, Inc.*, No. 10 Civ. 708, 2012 WL 4321392, at *4-5 (N.D. Okla. Sept. 19, 2012); *In re Magnesium Oxide Antitrust Litig.*, No. 10 Civ. 5943, 2011 WL 5008090, at *8-10 (D.N.J. Oct. 20, 2011); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657-59 (E.D. Mich. 2011); *Catlin v. Hanser*, No. 10 Civ. 451, 2011 WL 1002736, at *6-8 (S.D. Ind. Mar. 17, 2011); *Smith v. Pizza Hut, Inc.*, No. 09 Civ. 1632, 2011 WL 2791331, at *7-8 (D. Colo. July 14, 2011); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 920-23 (N.D. Ill. 2009); *Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009); *Smith v. Lawyers Title Ins. Corp.*, No. 07 Civ. 12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009); *Cornelius v. Fid. Nat'l Title Co.*, No. 08 Civ. 754, 2009 WL 596585, at *9-10 (W.D. Wash. Mar. 9, 2009); *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1225 (W.D. Okla. 2008); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26 (D.D.C. 2008); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007); *Stone v. Crispers Restaurants, Inc.*, No. 06 Civ. 1086, 2006 WL 2850103, at *1-2 (M.D. Fla. Oct. 3, 2006); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371-72 (S.D. Fla. 2001).

the Court to treat those issues first."[6] *Id.* Indeed, *Ortiz* reaffirmed that, "[o]rdinarily," an Article III "court must be sure of its own jurisdiction before getting to the merits," 527 U.S. at 831, while *Amchem* cautioned that it was reaching the class certification issues "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act." 521 U.S. at 612-13. The Court "may properly consider the motion to dismiss now, as opposed to waiting until after ruling on a motion for class certification." *Parks v. Dick's Sporting Goods, Inc.*, No. 05 Civ. 6590, 2006 WL 1704477, at *3 (W.D.N.Y. June 15, 2006).[7]

In addition to *Mahon* (controlling authority) and *Lauren* (the only case involving LPI claims to rule on this point), other courts in New York have held that putative class representatives' inability to trace their personal claims to the laws of states in which they were not injured resulted in a lack of Article III standing. To wit:

---

[6] Although they cite a laundry list of decisions from other jurisdictions that they believe support their position, plaintiffs fail to address (or even mention) *Mahon*, which is controlling authority and the views of which accord with the views of other federal circuit courts of appeals. *See, e.g., Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("Although the court in *Fibreboard* examined class issues before the question of Article III standing, it did so in the very specific situation of a mandatory global settlement class. *Fibreboard* does not require courts to consider class certification before standing."); *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 395 (3d Cir. 2004) (rejecting parties' invitation to "address the certification issue before scrutinizing subject matter jurisdiction," distinguishing *Amchem* as involving circumstances that "are quite different," and instead "follow[ing] the usual sequence of looking first to subject matter jurisdiction"); *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 333 n.2 (5th Cir. 2002) (noting the limited exception enunciated in *Ortiz* and *Amchem* and holding that Article III standing ruling must precede class certification issues).

[7] Plaintiffs' reliance on *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198 (S.D.N.Y. 2012); *In re Bayer Corp. Combination Aspirin Prods. Mkt'g & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010); *Indergit v. Rite Aid Corp.*, No. 08-cv-9361, 2009 WL 1269250, at *4 (S.D.N.Y. May 4, 2009); and *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, MDL No. 06-1739, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006), is misplaced. Other than *DDAVP Indirect Purchaser Antitrust Litig.*, all of these district court decisions antedate the Second Circuit's *Mahon* decision, and *DDAVP Indirect Purchaser Antitrust Litig.* wholly ignored it. All of these cases are incompatible with *Mahon*, and some have been specifically rejected or criticized by other federal courts. *See, e.g., Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *9 ("declin[ing] to follow the *In re Bayer* approach"); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *10 (disapproving *Grand Theft Auto*).

- *Simington v. Lease Finance Group, LLC*, No. 10 Civ. 6052, 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) ("Article III standing is clear: a plaintiff must assert an injury traceable to the conduct of which the plaintiff complains.  Accordingly, the Court need only consider whether plaintiffs adequately pleaded consumer fraud under New York's, Arizona's and Connecticut's statutes because defendants' alleged purported fraudulent scheme can only be traceable to the states in which plaintiffs have connections via residence or business.") (internal quotation marks omitted);

- *Temple*, 2007 WL 2790154, at *8 ("[Plaintiffs] present no such case or controversy if they lack standing to sue, *i.e.*, if they allege no (a) injury-in-fact that is (b) fairly traceable to the defendants' allegedly unlawful conduct and (c) likely to be redressed by a favorable decision.  Here, the plaintiffs allege no injury within any state other than Tennessee.") (internal quotation marks omitted); and

- *Parks*, 2006 WL 1704477, at *1 ("The issue before the Court is whether plaintiff, the sole named plaintiff in this proposed class action, has standing to assert claims arising under the laws of states in which he was never employed by defendant. . . . here, there is just one named plaintiff, who lacks either statutory or Article III standing to sue for violations of state laws other than those of New York . . .") (internal quotation marks omitted).

The situation here is precisely the same, and the Court should dismiss the nationwide class allegations for lack of subject matter jurisdiction.

## V.      Plaintiffs Cannot Trace Their Alleged Injury To Assurant, Inc.

In its Motion, the Assurant Defendants established that Assurant is not an insurance company, did not issue the insurance policies, did not collect the premiums paid by plaintiffs, did not pay commissions, and was not involved in ASIC's or SGIC's business operations.  *See* Dkt. No. 104. For these reasons, plaintiffs have no injury traceable to Assurant and lack standing to pursue claims against it.  As one court recently held in a similar case, "[plaintiff] cannot point to a single act by which Assurant participated in the conduct complained of or benefited from it in any manner other than that by which a shareholder benefits from its stock ownership." *Cochran-May v. Wells Fargo Bank, N.A.*, 2:12-CV-240, 2014 WL 361177, at *3 (S.D. Tex. Feb. 3, 2014).

In their Opposition, plaintiffs accuse the Assurant Defendants of "misunderstanding" plaintiffs' basis for suing Assurant and argue that their harm is traced not to Assurant, but to Assurant doing business as ASP.  They claim, therefore, that it is irrelevant that Assurant did not

engage in any of the conduct underlying their claims because ASP did. *See* Oppo. at 17-18. This logic is inconsistent with the Complaint; regardless of the name to which they attribute the conduct, plaintiffs accuse *Assurant* of engaging in those very acts. Besides, two other federal courts have rejected this exact argument conflating Assurant with ASP, with one flatly declaring that "Assurant is not [Assurant Specialty Property . . . ." *Roberts*, 2013 WL 1233268, at *6; *Cochran-May,* 2014 WL 361177, at *2. Simply put, ASP "is a trade name and service mark sometimes used by various companies, including *ASIC*, that provide lender-placed insurance and outsourcing solutions." *See*, *e.g.*, Wilson Decl. (Coulthurst) (Dkt. No. 99), ¶ 4. Assurant is not an entity engaged in the insurance business, whether under the ASP trade name or otherwise.[8]

## CONCLUSION

Plaintiffs' claims against the Assurant Defendants should be dismissed for lack of subject matter jurisdiction.

| | |
|---|---|
| Dated: New York, New York<br>March 7, 2014 | Franklin G. Burt (*pro hac vice*)<br>W. Glenn Merten (*pro hac vice*)<br>CARLTON FIELDS JORDEN BURT |
| /s/ Andrew T. Solomon<br>Andrew T. Solomon<br>Karen E. Abravanel<br>SULLIVAN & WORCESTER LLP<br>1633 Broadway, 32nd Floor<br>New York, New York 10019<br>Telephone: (212) 660-3000<br>Facsimile: (212) 660-3001<br>asolomon@sandw.com<br>kabravanel@sandw.com | 1025 Thomas Jefferson Street, NW<br>Suite 400 East<br>Washington, DC 20007<br>Telephone: (202) 965-8100<br>Facsimile: (202) 965-8104<br>fburt@cfjblaw.com<br>gmerten@cfjblaw.com<br><br>*Attorneys for Defendants Assurant, Inc.,*<br>*American Security Insurance Company, and*<br>*Standard Guaranty Insurance Company* |

---

[8] While plaintiffs point to the use of plural pronouns in Assurant's Forms 10-K to conflate Assurant with ASP and ASIC, they are not the first to unsuccessfully do so and, in any event, "[s]uch statements . . . are mere 'snippets' [of the Forms 10-K] and do not paint a full picture of the relationship between Assurant, [ASP], and ASIC." *Roberts*, 2013 WL 1233268, at *6.