UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMY LYONS, JACQUELINE LYONS, LISA CHAMBERLIN ENGELHARDT, GERALD COULTHURST, ENRIQUE DOMINQUEZ FRANCES ERVING, JOHNNIE ERVING ANTHONY PAPAPIETRO, and SHEILA D. HEARD individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>LITTON LOAN SERVICING LP, GOLDMAN SACHS GROUP, INC., ARROW CORPORATE MEMBER HOLDINGS LLC, SAXON MORTGAGE SERVICES, INC., MORGAN STANLEY, OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, LLC, ASSURANT, INC. (d/b/a Assurant Specialty Property), AMERICAN SECURITY INSURANCE COMPANY, STANDARD GUARANTY INSURANCE COMPANY, AMERICAN MODERN INSURANCE GROUP, and AMERICAN MODERN HOME INSURANCE COMPANY<br><br>       Defendants. | Case No. 1:13-cv-513-ALC-HBP |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SAXON
MORTGAGE SERVICES, INC. AND MORGAN STANLEY'S MOTION TO SEVER**

      Defendants Saxon and Morgan Stanley, by and through their undersigned counsel, respectfully submit this reply memorandum in further support of their motion to sever and in response to Plaintiff's Consolidated Memorandum of Law in Opposition to Defendants' Motions to Sever, submitted February 14, 2014 ("Opp.").[1]

---

[1] Capitalized terms used herein but not defined have the meanings ascribed to them in the Memorandum of Law in Support of Saxon Mortgage Services, Inc. and Morgan Stanley's Motion to Sever, filed January 21, 2014 ("Saxon Br.").

**INTRODUCTION**

Plaintiffs offer no compelling reason why this latest attempt to join unrelated lender-placed insurance claims should not suffer the same fate as other failed attempts.[2] Indeed, Plaintiffs' consolidated opposition to Defendants' motions to sever is based almost entirely on their false premise that all Defendants are "Ocwen-related entities" and that the issues presented therefore share an "interwoven common nucleus of operative facts." (Opp. at 1). Neither Saxon nor Morgan Stanley is an "Ocwen-related" entity and the fact that Saxon sold the servicing rights to the Ervings' loan to Ocwen does not transform it into one. The alleged liability of Saxon and Morgan Stanley will *not* depend upon the testimony of any Ocwen witnesses or documentary evidence obtained from Ocwen. Rather, Saxon and Morgan Stanley's alleged liability *to one set of Plaintiffs* -- the Ervings -- will turn *solely* on the facts and circumstances related to *Saxon's* lender-placed insurance program, which involves *only* Saxon and ASIC (i.e., the insurer for the lender-placed insurance program). Thus, the Court should sever Plaintiffs' misjoined claims into three separate actions as delineated below.[3]

| Case One | | Case Two | | Case Three | |
| --- | --- | --- | --- | --- | --- |
| **Plaintiffs** | **Defendants** | **Plaintiffs** | **Defendants** | **Plaintiffs** | **Defendants** |
| *Lyonses<br>*Papapietro<br>*Heard | *Litton Defendants<br>*American Modern | *Ervings | *Saxon Defendants<br>*Assurant Defendants | *Engelhardt<br>*Coulthurst<br>*Dominguez<br>*Ervings<br>*Papapietro<br>*Heard | *Ocwen Defendants<br>*Assurant Defendants |

---

[2] *See In re Mortg. Lender Forced-Placed Ins. Litig.*, 895 F. Supp. 2d 1352 (2012) (refusing to centralize lender-placed insurance cases on the grounds that, among other things, "individualized discovery and legal issues are likely to be numerous and substantial"); *In re Wells Fargo Bank, N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*, 959 F. Supp. 2d 1363 (MDL Aug. 7, 2013) (refusing to centralize lender-placed insurance cases against one servicer and one insurer because "individualized discovery and legal issues still will be substantial").

[3] Even Plaintiffs recognize the propriety of dividing these three groups by separately alleging a "Litton Force Placed Insurance Enterprise," a "Saxon Force-Placed Insurance Enterprise" and an "Ocwen Force Placed Insurance Enterprise," and proposing separate classes and subclasses for each servicer Defendant. (Compl. ¶¶ 225-27, 247-52).

**ARGUMENT**

I.   **Plaintiffs Fail to Show Joinder Is Proper Under Rule 20**

In their opening brief, Saxon and Morgan Stanley demonstrated that joinder was not proper under Rule 20(a) pursuant to either the plain language of the statute or the "logical relationship" test because Plaintiffs' claims do not arise "out of the same transaction, occurrence, or series of transactions or occurrences." (Saxon Br. at 6-8). Plaintiffs do not dispute (or even respond to) the fundamental point raised in support of the motion to sever, namely that the Ervings are the *only* Plaintiffs who have any connection whatsoever to Saxon and Morgan Stanley.[4] Instead, Plaintiffs, painting with the broadest of brushes, argue that the same transaction or occurrence requirement is satisfied because all Plaintiffs' claims involve the "servicing of their mortgage loan by Ocwen or a legacy Ocwen loan servicer." (Opp. at 6). As explained below, Plaintiffs' argument is factually inaccurate and, in any event, insufficient to establish that joinder is proper.

Saxon is *not* a "legacy Ocwen loan servicer." Ocwen did not buy Saxon. To the contrary, and as the Complaint alleges, "[Ocwen Loan Servicing] acquired *servicing rights* on loans previously serviced by the Saxon Defendants."[5] (Compl. ¶ 78). Accordingly, there will be no overlap between the Ervings' claims against Saxon and the Ervings' claims against Ocwen, *much less* any overlap with any other Plaintiffs' claims against other Defendants. Saxon and Morgan Stanley are strangers to every other "transaction or occurrence," every other Plaintiff and every insurer other than ASIC.[6]

---

[4] At the appropriate stage of the proceedings, Morgan Stanley intends to demonstrate that it had no relationship or involvement with the Ervings.

[5] Contrary to Plaintiffs' suggestion, indemnification or other loss sharing provisions in the contract between Saxon and Ocwen would not somehow transform Ocwen into a "successor-in-interest" to Saxon. *See Lyons v. Rienzi & Sons, Inc.*, 863 F. Supp. 2d 213, 223 (E.D.N.Y. 2012) (acknowledging general rule that, "[t]he purchaser of assets, as distinct from the stock, of a corporation generally does not acquire the seller's liabilities, even if all the assets are transferred by the sale so that in effect the entire business has been sold, and the purchaser intends to continue it as a going concern").

[6] Plaintiffs argue that they should be able to adjudicate each "mortgage-loan relationship" in a single action. (Opp. at 7). In other words, the Ervings should not have to litigate a case against Saxon and

3

Ocwen also is the supposed factual link Plaintiffs rely on in arguing that the "logical relationship" test is met. (Opp. at 6-7). Plaintiffs argue that they "all . . . appropriately asserted claims against Ocwen" and that their claims "arise from a common and related force-placed insurance kickback scheme." (Opp. at 6). Plaintiffs again sweep much too broadly. The mere presence of a common defendant does not satisfy the same transaction or occurrence requirement. *Smith v. Am. Sec. Ins. Co.*, No. 13-6328, 2013 WL 6628358, at *4 (E.D.N.Y. Dec. 16, 2013). Furthermore, there is nothing "related" about the alleged "force-placed insurance kickback scheme." Saxon's lender-placed insurance program is entirely separate and distinct from the program of any other servicer Defendant. The Complaint's allegations concerning the other Plaintiffs in this case concern entirely ***different*** properties, ***different*** servicers and ***different*** lender-placed insurance programs and hazard insurance policies.

Plaintiffs labor unsuccessfully to distinguish the court's decision in *Kalie v. Bank of America Corporation*, No. 12-9192, 2013 WL 4044951 (S.D.N.Y. Aug. 9, 2013). Plaintiffs claim that *Kalie* is different because the conduct at issue there was "far broader than the scope of the allegations here" and that the claims in *Kalie* supposedly lacked factual detail. (Opp. at 8). Plaintiffs miss the point entirely. The decision in *Kalie* did not turn on the issues Plaintiffs identify. Rather, the court found that joinder was improper because, among other things, plaintiffs each entered into "different loan transactions" involving "multiple different lenders." *Id.* at *4. In terms equally applicable here, the court found that "each plaintiff [allegedly] was injured as a result of a separate mortgage transaction affecting his or her property." *Id.* at *5. Similarly, the Ervings alleged injuries arise only from the

---

Assurant and another case against Ocwen and Assurant. However, even in a case with a single plaintiff, "[i]t is settled that joinder is ***improper*** where the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way." *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) (internal quotation marks omitted) (emphasis added). Moreover, the Ervings voluntarily split their claims between this case and *Clarizia v. Ocwen Financial Corp.*, 1:13-cv-02907-ALC-HBP, which undermines the supposed necessity of trying all claims related to a "mortgage-loan relationship" in one action.

4

terms and conditions of the separate lender-placed insurance programs that applied to their property at any given time. The other Plaintiffs' claims and the terms and conditions of other Defendants' lender-placed insurance programs have no bearing whatsoever on the Ervings' claims against Saxon and Morgan Stanley.

For all these reasons, the Court should sever the claims of these improperly joined Plaintiffs. *See, e.g., Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009).

## II.  Discretionary Considerations Warrant Severance

As explained in Saxon and Morgan Stanley's opening brief, even if joinder were permissible under Rule 20(a) (which it is not), considerations of judicial economy, prejudice to the parties and issues related to witnesses and evidence all favor severance. (Saxon Br. at 9-10). Plaintiffs' superficial arguments to the contrary are unavailing. (Opp. at 12-19).

First, Plaintiffs' doomsday scenario involving "*three* rounds of fact and expert discovery, *three* sets of briefing and hearings on class certification, procedural and dispositive motions, and *three* separate trials" is vastly overstated. (Opp. at 12). Briefing on dispositive motions and discovery can be coordinated so as to minimize the burden on the Court and the parties. Furthermore, Plaintiffs again focus on Ocwen and how severance would require "each plaintiff to separately depose Ocwen personnel" and "to separately propound fact discovery on Ocwen." (Opp. at 12-13). But, as noted in the chart above, Defendants propose that all Plaintiffs' claims against Ocwen proceed in a single action. Thus, Plaintiffs' argument is nothing more than a straw man.

Second, Plaintiffs' cavalier suggestion that no Defendant will suffer prejudice if the Court permits joinder ignores the fact that there are significant factual differences among the Defendants. For example, the terms and conditions of each of the lender-placed insurance programs will necessarily vary and inevitably result in comparisons that may well be prejudicial to one or more Defendants. Furthermore, the Complaint alleges that some Defendants were parties to reinsurance

5

arrangements, but Saxon was not and Plaintiffs have not alleged that it was. *See* Compl. ¶¶ 18, 20, 99-105, 203.[7] The risk of spillover prejudice is particularly acute as to Saxon and Morgan Stanley because only one set of Plaintiffs -- the Ervings -- assert claims against them. *Kalie*, 2013 WL 4044951, at *6 (holding joint trial could unfairly prejudice defendants, which was "especially true for [defendant] Seterus, against whom only one plaintiff has a claim").

Third, Plaintiffs again sweep much too broadly in proclaiming that their claims "indisputably involve overlapping fact and expert witnesses and evidence." (Opp. at 18). To the contrary, the alleged liability of Saxon related to its lender-placed insurance program has nothing whatsoever to do with any Defendant other than insurer ASIC.[8] If Plaintiffs' claims are severed, no Plaintiff, other than the Ervings, or Defendant, other than ASIC, would need to attend the depositions of Saxon or Morgan Stanley witnesses. And neither Saxon nor Morgan Stanley would need to attend the deposition of any witnesses other than the Ervings and ASIC. On the other hand, if all Plaintiffs remained joined, Saxon and Morgan Stanley would have to participate in numerous depositions of other Plaintiffs and Defendants to protect their interests, which would dramatically (and unnecessarily) increase the cost and burden of defending against the Ervings' claims.[9] As the court stated in *Kalie*, "[t]he interest in economy is affirmatively disserved by forcing these many parties to

---

[7] Neither was Saxon a party to any kickback scheme through the payments of commissions or otherwise, notwithstanding Plaintiffs' bare allegations that it was.

[8] For this reason, Plaintiffs' reliance on decisions where there was substantial overlap of witnesses and evidence is misplaced. (Opp. at 13 (citing *Laureano v. Goord*, No. 06-7845, 2007 WL 2826649, at *9 (S.D.N.Y. Aug. 31, 2007) (denying motion to sever where there was "substantial overlap of witnesses and evidence"); *German by German v. Federal Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1401 (S.D.N.Y. 1995) (denying motion for severance where "[p]roof . . . likely will in significant part require the testimony of the same witnesses and presentation of the same evidence"); *Nkemakolam v. St. John's Military School*, No. 12-2132, 2014 WL 200918, at *1 (D. Kans. Jan. 17, 2014) (denying severance where "overlapping evidence indicates that requiring eleven separate trials would result in delay, inconvenience to the parties and witnesses, and added expense))).

[9] Contrary to Plaintiffs' suggestion, consolidation under Rule 42(a) is not "beyond question." (Opp. at 14 n.8). To the extent that consolidation would require Saxon and Morgan Stanley to participate in discovery unrelated to the Ervings, consolidation would result in the same unnecessary costs and

attend a common trial at which these separate, unrelated claims, only a fraction of which implicates the rights of any one party, would be resolved." 2013 WL 4044951, at *6.

## CONCLUSION

For all of the foregoing reasons, Saxon and Morgan Stanley respectfully request that the Court sever the Ervings' claims against Saxon and Morgan Stanley from the other claims asserted in the Complaint and grant such other and further relief as it deems just and proper.

Dated:   March 7, 2014
         New York, New York

                                Respectfully submitted,

                                BINGHAM MCCUTCHEN LLP

                            By: */s/ Mary Gail Gearns*
                                Mary Gail Gearns
                                marygail.gearns@bingham.com
                                Matthew Minerva
                                matthew.minerva@bingham.com
                                399 Park Avenue
                                New York, New York 10022
                                Telephone:  212.705.7000
                                Facsimile:  212.752.5378

                                *Attorneys for Morgan Stanley and*
                                *Saxon Mortgage Services, Inc.*

---

inefficiencies as joinder.  This does not mean, however, that the cases could not be coordinated to diminish any burden on the Court and the parties.