UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JIMMY LYONS, JACQUELINE LYONS,  :
LISA CHAMBERLIN ENGELHARDT,     :
GERALD COULTHURST, ENRIQUE      :
DOMINQUEZ FRANCES ERVING,       :   1:13-cv-513 (ALC) (GWG)
JOHNNIE ERVING ANTHONY          :
PAPAPIETRO, and SHEILA D. HEARD :   **OPINION AND ORDER**
individually and on behalf of all others :
similarly situated,             :
                                :
                     Plaintiffs, :
                                :
           -against-            :
                                :
LITTON LOAN SERVICING LP,       :
GOLDMAN SACHS GROUP, INC.,      :
ARROW CORPORATE MEMBER          :
HOLDINGS LLC, SAXON MORTGAGE    :
SERVICES, INC., MORGAN STANLEY, :
OCWEN FINANCIAL CORPORATION,    :
OCWEN LOAN SERVICING, LLC,      :
ASSURANT, INC. (d/b/a Assurant Specialty :
Property), AMERICAN SECURITY    :
INSURANCE COMPANY, STANDARD     :
GUARANTY INSURANCE COMPANY,     :
AMERICAN MODERN INSURANCE       :
GROUP, and AMERICAN MODERN      :
HOME INSURANCE COMPANY,         :
                     Defendants. :
                                :
                                :
-----------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Eight plaintiff mortgagors bring this class action suit against seven loan servicers and five insurers, alleging that the loan servicers, which force-placed insurance on Plaintiffs' properties, had exclusive and illegal arrangements with the insurers that included "kickbacks" (in the form of commissions, fees, services, and illusory reinsurance contracts). Plaintiffs also allege that loan servicers and insurers breached common law, contractual, and/or statutory duties to Plaintiffs with

false or misleading communications and backdated, excessive, or improperly placed insurance. Defendants have all moved for severance, pursuant to Federal Rules of Civil Procedure 20 and 21. For the reasons set forth below, Defendants' Motions to Sever are DENIED without prejudice and Defendants are granted leave to renew their motions at a later time.

I.     BACKGROUND

Plaintiffs Jimmy Lyons, Jacqueline Lyons, Lisa Chamberlin Engelhardt, Gerald Coulthurst, Enrique Dominguez, Frances Erving, Johnnie Erving, and Sheila D. Heard (collectively, "Plaintiffs")[1] bring this suit on behalf of themselves and all other persons who were required to pay for "force-placed" hazard insurance in connection with a residential mortgage loan serviced by one or more of three sets of alleged loan servicers: (1) the "Litton Defendants" (which includes Defendants Litton Loan Servicing LP ("Litton"), Goldman Sachs Group, Inc. ("Goldman Sachs"), and Arrow Corporate Member Holdings LLC ("Arrow"), collectively); (2) the "Ocwen Defendants" (which includes Ocwen Loan Servicing, LLC ("OLS") and Ocwen Financial Corporation ("OFC"), collectively); and (3) the "Saxon Defendants" (which includes Saxon Mortgage Services, Inc. ("Saxon") and Morgan Stanley, collectively). (Plaintiffs' Second Amended Complaint ("SAC") ¶ 1, ECF No. 93).[2]

Plaintiffs each had mortgage agreements that required them to carry hazard insurance on the mortgaged property. (Id. ¶ 6). If Plaintiffs failed to maintain the required insurance, the agreements permitted lenders or their loan servicers to "force-place" insurance on the property.[3]

---

[1] An additional plaintiff, Anthony Papapietro, voluntarily dismissed his claims and is no longer a party to this suit. See 04/16/2014 Notice of Partial Voluntary Dismissal by Plaintiff Anthony Papapietro. (ECF No. 130).
[2] The loan servicer groupings were created by Plaintiffs (SAC ¶ 1) and each group consists of at least one loan servicer and its alleged affiliates and subsidiaries.
[3] Plaintiffs' SAC does not fully explain the relationship between lenders and loan servicers, but it

(Id. ¶ 92). This force-placed insurance ("FPI") or lender-placed insurance ("LPI") was selected by the loan servicers, but paid for by the Plaintiffs as per their mortgage agreements. (See, e.g., Id. ¶ 186 (referencing mortgage agreement stating that FPI was "at Lender's option and Borrower's expense.")) Plaintiffs do not appear to challenge that loan servicers were contractually permitted to force place insurance on the mortgaged properties.

Instead, Plaintiffs' allegations of wrongdoing rest heavily on the contention that each loan servicer had an exclusive and illegal arrangement with a particular insurer – either one of the (1) "Assurant Defendants" (which includes Assurant, Inc. d/b/a Assurant Specialty Property ("Assurant" or "ASP"), American Security Insurance Company ("ASIC"), and Standard Guaranty Insurance Company ("SGIC"), collectively) or (2) "American Modern Defendants" (which includes American Modern Insurance Group ("AMIG") and American Modern Home Insurance Company ("AMHIC"), collectively).[4] (Id. ¶ 2). The loan servicer-insurer arrangements alleged are: (1) the Litton Defendants force-placing insurance exclusively with the American Modern Defendants (Id. ¶ 98); (2) the Saxon Defendants force-placing insurance exclusively with the Assurant Defendants (Id.); and (3) the Ocwen Defendants force-placing insurance exclusively with the Assurant Defendants (Id.). These exclusive arrangements purportedly consisted of "kickbacks" from the insurer to the loan servicer, either in the form of a commission to the loan servicer paid out of the FPI premium, a fee for referral of the FPI business, free or low cost

---

appears that Plaintiffs assert that the Litton Defendants, Saxon Defendants, and the Ocwen Defendants (collectively, the "Loan Servicing Defendants") in some cases both owned and serviced the at-issue loans (Id. ¶ 91). For loan servicers that were not also lenders, Plaintiffs' SAC suggests that loan servicers take the place of lenders in enforcing lenders' rights under mortgage agreements, and have the same rights and ability to force place loans as lenders.
[4] The insurer groupings were created by Plaintiffs (SAC ¶ 2), and each group consists of alleged affiliates and subsidiaries of a FPI insurer. Assurant Defendants and American Modern Defendants are collectively referred to as the "Insurer Defendants."

3

administrative services performed by the insurer or affiliates for the loan servicers, or lucrative reinsurance contracts given by the insurers to affiliates of the loan servicers. (Id. ¶¶ 17-19, 40, 99, 101, 107).

Plaintiffs also allege that the loan servicers and/or insurers improperly backdated insurance, made material misrepresentations about the nature of the FPI and mortgage agreements, insured properties for amounts in excess of what the mortgage agreements allowed, and otherwise improperly force-placed insurance. (Id. ¶ 40). The contested FPI was reimbursed by Plaintiffs, at times taken directly out of Plaintiffs' escrow funds by the loan servicers. (Id.).

In total, Plaintiffs' 96-page SAC asserts ten causes of action: (1) breach of contract; (2) unjust enrichment and disgorgement; (3) breach of fiduciary duty and misappropriation of funds held in trust; (4) aiding and abetting a breach of fiduciary duty; (5) conversion; (6) violation of New York General Business Law § 349; (7) violation of the Florida Deceptive and Unfair Trade Practices Act; (8) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq.; (9) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(C) ("RICO"); and (10) violation of 18 U.S.C. § 1962(d), RICO conspiracy.

## II.   DISCUSSION

Defendants contend that this suit was improperly joined under Fed. R. Civ. P. 20 because the claims against Defendants do not arise out of the same transactions or occurrences, and there are no common questions of law or fact. Failing a finding of misjoinder, Defendants ask the Court to use its discretion to sever under Fed. R. Civ. P. 21.

Defendants generally suggest the following method of severing this action[5]:

---

[5] See Memorandum of Law in Support of American Modern Defendants' Motion to Sever ("American Modern MTS"), at 2, ECF No. 96; MTD, at 16; Memorandum of Law in Support of

| Case One | | Case Two | | Case Three | |
|---|---|---|---|---|---|
| **Plaintiffs** | **Defendants** | **Plaintiffs** | **Defendants** | **Plaintiffs** | **Defendants** |
| - Lyons<br>- Heard | - Litton Defendants<br>- American Modern Defendants | - Ervings | - Saxon Defendants<br>- Assurant Defendants | - Engelhardt<br>- Coulthurst<br>- Dominguez<br>- Ervings<br>- Heard | - Ocwen Defendants<br>- Assurant Defendants |

### A. Federal Rule of Civil Procedure 20

Rule 20 permits joinder of parties if (1) rights to relief are asserted jointly, severally, or arise out of the same transactions and occurrences; and (2) any questions of law or fact common to all plaintiffs or defendants will arise in the action. Fed. R. Civ. P. 20. Because this is a conjunctive test, even if common questions of law or fact will arise in the action, the right to relief must arise out of the same transactions and occurrences. See Yi Liu v. Selective Ins. Co. of Am., 13-CV-5997 JS AKT, 2013 WL 6537176, at *2 (E.D.N.Y. Dec. 13, 2013) (both preconditions of Rule 20 must be met for joinder to be proper); Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) ("both criteria [of Rule 20] must be met for joinder to be proper").

Plaintiffs bear the burden of demonstrating that their claims arise out of the same "transaction" or "occurrence" for Rule 20 purposes. Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F. Supp. 2d 821, 827 (S.D.N.Y. 2008). However, "in assessing whether the requirements of [Rule 20] are met, courts must accept the factual allegations in a plaintiff's complaint as true." Deskovic, 673 F. Supp. 2d at 159 (internal citations omitted).

---

Saxon Defendants' Motion to Sever ("Saxon MTS"), at 11, ECF No. 108; Memorandum of Law in Support of Arrow's and Goldman Sachs' Motion to Sever ("Arrow and Goldman MTS"), at 8, ECF No. 110 (requesting that the Court sever the Litton Plaintiffs' claims from the rest of the action); Memorandum of Law in Support of Ocwen Defendants' and Litton's Motion to Sever, at 25 ("Ocwen and Litton MTS"), ECF No. 112 (requesting severance "according to Plaintiffs' respective loan servicer and insurer").

1. Questions of Law or Fact Common to Plaintiffs or Defendants

Defendants' pleadings make clear that there are common questions of law among these cases. For example, Assurant Defendants assert in their Motion to Dismiss that the filed-rate doctrine bars Plaintiffs' claims because the at-issue FPI premiums were approved by state agencies. (See Memorandum of Law in Support of Assurant Defendants' Motion to Dismiss the Second Amended Class Action Complaint ("MTD"), at 4-11, ECF No. 98). Other defendants have also made clear their intentions to assert this same argument in their upcoming motions to dismiss,[6] and this is a possibly dispositive issue which pertains to all parties. Such common questions of law will continue to arise throughout this case.

Additionally, Plaintiffs' claims of conspiracy and aiding and abetting breaches of fiduciary duty can raise questions of fact that would be common to multiple defendants. See Crown Cork & Seal Co. Master Ret. Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 331, 333 (S.D.N.Y. 2013) ("claims for conspiracy provide one area of overlap of facts and issues"). For example, the alleged conspiracies would raise common questions of fact between each loan servicer and its respective insurer, e.g. what statements were made by the insurer to its partner loan servicer.

However, common questions of law and fact are not enough to merit joinder. The Court must also inquire into the "transactions or occurrences" prong of Rule 20. Fong v. Rego Park Nursing Home, 95 CIV. 4445 (SJ), 1996 WL 468660 (E.D.N.Y. Aug. 7, 1996) ("courts have held that parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a)") (citing Glendora v. Malone, 917 F.Supp. 224, 227 (S.D.N.Y.1996)).

---

[6] See Saxon MTS, at 2 n.1 (reserving the right to assert the filed-rate doctrine as grounds for 12(b)(6) dismissal); Ocwen and Litton MTS, at 4 n.3 (reserving the right to assert the filed-rate doctrine as grounds for 12(b)(6) dismissal).

### 2. Same Transactions or Occurrences

Courts in this district have used the Second Circuit's interpretation of Fed. R. Civ. P. 13(a)(1)(A)'s "transaction or occurrence" language as guidance in interpreting the Rule 20 requirement. Peterson v. Regina, 935 F. Supp. 2d 628, 637 (S.D.N.Y. 2013); Kalie v. Bank of Am. Corp., 297 F.R.D. 552, 557 (S.D.N.Y. 2013). Consequently, New York district courts have adopted a "logical relationship" test in analyzing "transactions or occurrences" under Rule 20. Id. This test requires the court to "assess the logical relationship between the claims and determine whether 'the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit.'" Peterson, 935 F. Supp. 2d at 637 (internal citations omitted). Here, the essential facts of Plaintiffs' claims are logically related – not by loan transactions, but by loan servicer-insurer relationships and seemingly by a common loan servicer defendant.

Defendants assert that "separate loan transactions by different lenders do not constitute a single transaction or occurrence and claims by plaintiffs who engaged in those separate transactions generally cannot be joined in a single action." Kalie, 297 F.R.D. at 557 (granting motion to sever where there were distinct mortgage transactions and different lenders lumped together in one action) (internal citation omitted); see also Abraham v. Am. Home Mortgage Servicing, Inc., 947 F. Supp. 2d 222, 229 (E.D.N.Y. 2013) (granting motion to sever where "Plaintiffs engaged in separate loan transactions with different lenders in different offices in different states over a nine-year period"). Defendants are correct. The separate mortgage-based transactions here, handled by different loan servicers, do not constitute a single transaction or occurrence, and do not warrant joining all Loan Servicing Defendants together in one suit.

However, the essential facts of Plaintiffs' claims are logically related in two other ways.

First, each Loan Servicing Defendant has an alleged "kickback" arrangement and exclusive agreement with a specific Insurer Defendant. Plaintiffs allege three sets of transactions: (1) the agreements between, conduct of, and alleged conspiracy concerning Litton Defendants and American Modern Defendants;[7] (2) the agreements between, conduct of, and alleged conspiracy concerning Saxon Defendants and Assurant Defendants; and (3) the agreements between, conduct of, and alleged conspiracy concerning Ocwen Defendants and Assurant Defendants. Plaintiffs also provide some factual details to support their claims regarding relevant relationships between the Insurer Defendants and the Loan Servicing Defendants. (See, e.g., SAC ¶¶ 8, 10 (citing to documents suggesting that Assurant Defendants and American Modern Defendants had exclusive agreements with their loan servicers). Hence claims against Litton Defendants and American Modern Defendants are related; claims against Saxon Defendants and Assurant Defendants are related; and claims against Ocwen Defendants and Assurant Defendants are related. Defendants do not appear to contest the relatedness of loan servicers to their insurers, and indeed have requested severance along the lines of loan servicer-insurer relationships.

Second, the essential facts of Plaintiffs' claims may also be logically related through the Ocwen Defendants. This is where Defendants disagree. Plaintiffs insist that all of the claims arise out of the same transactions because Ocwen Defendants either force-placed the loan or are "successors-in-interest" to the loan.[8] Defendants point out that the "mere presence of a common

---

[7] For instance, the American Modern Defendants are alleged to have entered into an exclusive FPI insurer agreement with the Litton Defendants that established the American Modern Defendants as the exclusive force-placed provider for the Litton Defendants. (SAC ¶ 98). Litton Defendants and American Modern Defendants are consequently also accused of being in the same RICO enterprise. (Id. ¶ 225).

[8] Ocwen allegedly acquired Litton and servicing right for Saxon Defendants in September 2011 and October 2011 respectively. (See Memorandum of Law in Opposition to Defendants' Motions to Sever ("Opp."), at 2-3, ECF No. 117).

defendant ... does not satisfy the same transaction or occurrence requirement." Yi Liu, 2013 WL 6537176, at *3 (severing plaintiffs' claims against insurers sua sponte pursuant to Rules 20 and 21) (internal quotations omitted). However, accepting the factual allegations in Plaintiffs' complaint as true, as the Court must under Rule 20(a) analysis, then there are common questions about Ocwen Defendant's liability for and connection to the actions of Litton and Saxon Defendants that merit denying severance for now. See Deajess Med. Imaging P.C. v. Allstate Ins. Co., 03 CIV.3920 RWS, 2004 WL 2729790, at *4 (S.D.N.Y. Nov. 30, 2004) (where some of the grounds offered for severance were factually unclear, the court denied the motion to sever without prejudice and with leave to renew at a later date). Here, Rule 20 analysis weighs in favor of finding that joinder is currently proper.

### B. Federal Rule of Civil Procedure 21

Even if a joinder is proper, the Court may still sever at its discretion. Fed. R. Civ. P. 21; see also State of N.Y. v. Hendrickson Bros., 840 F.2d 1065, 1082 (2d Cir. 1988) ("decision whether to grant a severance motion is committed to the sound discretion of the trial court"). However, Courts acknowledge that this is a procedural device to be employed "in exceptional circumstances," and the moving party bears the burden of demonstrating that "severance is required to avoid prejudice or confusion and to promote the ends of justice." Agnesini v. Doctor's Associates, Inc., 275 F.R.D. 456, 458 (S.D.N.Y. 2011) (internal quotations omitted). In addition to the considerations under Rule 20, a decision to sever under Rule 21 examines three supplementary factors: "whether settlement of the claims or judicial economy would be facilitated"; "whether prejudice would be avoided if severance were granted"; and "whether different witnesses and documentary proof are required for the separate claims." Crown Cork, 288 F.R.D. at 332-33 (internal citations omitted). Given the current procedural posture of this

9

action, Defendants' arguments do not yet warrant severance under Rule 21 analysis.

   1. <u>Settlement of the Claims or Judicial Economy</u>

Concerns for judicial economy weigh in favor of keeping the cases joined for now. As discussed above, there are pending and upcoming dispositive motions which will have legal questions – common to all defendants – determinative of whether the cases can go forward at all. The similar questions of law here weigh heavily in favor of keeping the cases joined.

Also, judicial economy weighs in favor of keeping the cases consolidated until it can be determined the extent to which Ocwen Defendants will have to be involved in the litigation concerning the Litton Defendants and the Saxon Defendants. Keeping the cases joined for right now will allow parties an opportunity to confer to determine, or seek rulings from the Court on, the extent to which Ocwen Defendants may be liable under the acquisition agreements for the alleged wrongdoing of Litton and Saxon Defendants. If Ocwen Defendants' role as a successor-in-interest can be defined early on, it can help narrow the issues and discovery in these cases.

However, while joinder is best for the upcoming dispositive motions, the circumstances here strongly suggest that severance may be warranted for discovery and trial. With already twenty parties involved, and possibly more if classes are certified, the Court takes seriously concerns of long-term judicial economy. As Defendants rightfully point out, placing defendants who are direct competitors into the same action would complicate case management "due to the need to protect trade secret and confidential information from full disclosure to the parties." <u>See</u> <u>In re: Mortgage Lender Force-Placed Ins. Litig.</u>, MDL 2388, 2012 WL 4479578, at 1353 (Sept. 28, 2012) (MDL panel denied order for centralization partly on those grounds).

Additionally, certain defendants' workloads may unfairly be increased with joint discovery

and trial. For instance, Saxon Defendants only have one pair of plaintiffs (the Ervings) bringing claims against it in this suit. For Saxon Defendants to have to participate in joint discovery that includes 20 parties may be unnecessarily burdensome.

   2. Prejudice

Much like judicial economy, here potential prejudice weighs in favor of keeping cases joined until discovery or trial. In these initial stages, the Court is responsible for deciding relevant legal and factual questions, and prejudice is not yet a germane concern. See Wausau Bus. Ins. Co. v. Turner Const. Co., 99 CIV 0682(RWS), 2001 WL 963943, at *3 (S.D.N.Y. Aug. 23, 2001) (noting lesser concerns of prejudice when the court, rather than a jury, is determining at least some of the questions).

However, the Court does note that a joint trial could lead to jury confusion and thereby prejudice the jury. Kalie, 297 F.R.D. at 559. Plaintiffs' claims currently teeter between alleging specific loan servicer-insurer arrangements and alleging an industry-wide scheme. Including all of the parties in one trial could create the false illusion of all of the defendants being involved in one common scheme.

Moreover, combining the Saxon Defendants and Litton Defendants with the Ocwen Defendants in a single trial also risks spillover prejudice. According to Plaintiffs' successor-in-interest theory, all eight plaintiffs here have claims against Ocwen Defendants – either directly or because Ocwen is an alleged successor-in-interest to both Litton Defendants and Saxon Defendants. Saxon Defendants have only one set of plaintiffs suing them in this case (the Ervings) and Litton Defendants have only two sets (the Lyonses and Ms. Heard). With the larger number of Ocwen plaintiffs, there is a risk that jurors will get confused as to liability and will find the other Loan Servicing Defendants liable if they find Ocwen Defendants liable. This is similar

11

to concerns in Kalie. In Kalie, the court found that trying 16 plaintiffs together – where only one of the plaintiffs brought claims against defendant Seterus, and the rest were against defendant Bank of America – could create spillover prejudice for Seterus. See Kalie, 297 F.R.D. at 559 (S.D.N.Y. 2013).

There is also the possibility of confusion about the grounds on which Ocwen Defendants' liability rests if their successor-in-interest cases are tried with their direct liability cases. While the Court respects the jury's intellect and believes that it can parse out complex issues, there is no need to overcomplicate a matter than can easily be simplified. Severance may be warranted if the cases proceed to trial.

### 3. Different Witnesses and Documentary Proof

The use of different witnesses and documentary proof also weighs in favor of severing the cases before discovery and trial. S.E.C. v. Pignatiello, 97 CIV. 9303 (SWK), 1998 WL 293988 (S.D.N.Y. June 5, 1998) (severance warranted in part because "the two schemes appear[ed] to require the testimony of different witnesses and different documentary proof"). Plaintiffs allege three distinct loan servicer-insurer kickback arrangements, conspiracies, and RICO enterprises. There will certainly be distinct witnesses and documentary proof for each of the three loan servicer-insurer pairings, e.g. Saxon witnesses will not be need for claims against Litton. Overlap, if any, between these three separate deals will likely be minimal.

However, Rule 21 analysis suggests that severance is not warranted at this stage of the litigation. See, e.g., Beth Israel Med. Ctr. v. Goodman, 12 CIV. 1689 AJN, 2013 WL 1248622, at *5 (S.D.N.Y. Mar. 26, 2013) (finding that "severance is not warranted at this stage of the litigation, particularly because [defendant] has identified no prejudice that would be suffered by proceeding at least through discovery on a common case management schedule"). However,

Defendants have correctly noted issues that may merit severance later in the action – before trial and possibly before discovery. As such, Defendants will have an opportunity to renew their motions to sever at a later date to be determined by the Court.

### III. CONCLUSION

For the reasons set forth above, Defendants' motions to sever (ECF Nos. 95, 97, 107, 109, and 111) are DENIED without prejudice, with leave to renew the motions at a later date to be determined by the Court.

**SO ORDERED.**

Dated: September 29, 2014
       New York, New York

ANDREW L. CARTER, JR.
United States District Judge