**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIMMY LYONS, *et al.*,<br>Plaintiffs,<br>v.<br>LITTON LOAN SERVICING LP, *et al.*,<br>Defendants. | Civil Action No. 1:13-cv-00513-ALC-HBP<br>Judge Andrew L. Carter, Jr.<br>Magistrate Judge Henry Pitman |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS AMERICAN MODERN INSURANCE GROUP, INC. AND AMERICAN MODERN HOME INSURANCE COMPANY**

Lauren J. Resnick
lresnick@bakerlaw.com
BAKER HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
T 212.589.4200
F 212.589.4201

Mark A. Johnson (*pro hac vice*)
mjohnson@bakerlaw.com
Rodger L. Eckelberry (*pro hac vice*)
reckelberry@bakerlaw.com
Joseph E. Ezzie (*pro hac vice*)
jezzie@bakerlaw.com
Robert J. Tucker (*pro hac vice*)
rtucker@bakerlaw.com
BAKER HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
T 614.228.1541
F 614.462.2616

*Attorneys for Defendants American Modern Insurance Group, Inc. and American Modern Home Insurance Company*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................1

II. LAW AND ARGUMENT ..........................................................................................1

A. Plaintiffs Continue to Overlook the Causation Element of Each Claim..................1

B. The Filed-Rate Doctrine Is a Live Issue and Bars Heard's Claims .........................3

C. Plaintiffs Cannot Identify a Fiduciary Duty for Litton to Have Breached .............4

D. Heard's ICFA Claim Defies Appellate Authority ..................................................5

E. Plaintiffs Cannot Overcome Any of American Modern's Several Reasons for Dismissing Their Unjust Enrichment Claims .........................................................7

F. Plaintiffs Cannot Plead a RICO Claim with Particularity by Pointing to "Hundreds of Thousands of Mailings" and Other Documents ................................8

III. CONCLUSION.........................................................................................................10

CERTIFICATE OF SERVICE ......................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron Transfer & Storage, Inc. v. Bekins Van Lines, Inc.*,
No. 02 C 1836, 2002 WL 31509775 (N.D. Ill. Nov. 12, 2002)....5

*Cannon v. Wells Fargo Bank, N.A.*,
No. 12-cv-1376, 2014 WL 324556 (N.D. Cal. Jan. 29, 2014)....10

*Cedar Swamp Holdings v. Zaman*,
487 F. Supp. 2d 444 (S.D.N.Y. 2007)....10

*Circeo-Loudon v. Green Tree Servicing, LLC*,
No. 14-21384, 2014 WL 4219587 (S.D. Fla. Aug. 25, 2014)....7, 8

*Cohen v. Am. Sec. Ins. Co.*,
735 F.3d 601 (7th Cir. 2013)....1, 6

*Control Solutions LLC v. Oshkosh Corp.*,
No. 10 C 121, 2012 WL 3096678 (N.D. Ill. July 27, 2012)....7

*Curtis v. Cenlar FSB*,
No. 13 Civ. 3007, 2013 WL 5995582 (S.D.N.Y. Nov. 12, 2013)....3

*Decambaliza v. QBE Holdings, Inc.*,
No. 13-cv-286, 2013 WL 5777294 (W.D. Wis. Oct. 25, 2013)....3

*Donachy v. Intrawest U.S. Holdings, Inc.*,
No. 10-4038, 2012 WL 869007 (D.N.J. Mar. 14, 2012)....1, 9

*Gallo v. PHH Mortg. Corp.*,
916 F. Supp. 2d 537 (D.N.J. 2012)....9

*Gracey v. Eakor*,
837 So. 2d 348 (Fla. 2002)....1

*Gustafson v. BAC Home Loans Servicing, LP*,
No. 11-915, 2012 WL 7051318 (C.D. Cal. Dec. 20, 2012)....5

*Gustafson v. BAC Home Loans Servicing, LP*,
No. 11-915, 2012 WL 7071469 (C.D. Cal. Dec. 20, 2012)....9

*Hamilton v. SunTrust Mortg. Inc.*,
6 F. Supp. 3d 1312, 1317 (S.D. Fla. 2014)....8

*Indep. Trust Corp. v. Fid. Nat'l Title Ins. Co.*,
577 F. Supp. 2d 1023 (N.D. Ill. 2008) ....................7

*Kunzelmann v. Wells Fargo Bank, N.A.*,
No. 9:11-cv-81373, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013)....................4

*Lawlor v. N. Am. Corp. of Ill.*,
983 N.E.2d 414 (Ill. 2012)....................1

*Licul v. Volkswagen Grp. of Am.*,
No. 13-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)....................7

*McBrearty v. Vanguard Grp.*,
353 F. App'x 640 (2d Cir. 2009) ....................1

*Miller v. Wells Fargo Bank, N.A.*,
994 F. Supp. 2d 542 (S.D.N.Y. 2014)....................3

*Persaud v. Bank of Am., N.A.*,
No. 14-21819, 2014 WL 4260853 (S.D. Fla. Aug. 28, 2014) ....................7

*Roberts v. Wells Fargo Bank, N.A.*,
No. 4:12-cv-00200, 2013 WL 1233268 (S.D. Ga. Mar. 27, 2013)....................3

*Rothstein v. GMAC Mortg., LLC*,
No. 12-cv-3412, 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013) ....................10

*Singleton v. Wells Fargo Bank, N.A.*,
No. 2:12-cv-00216, 2013 WL 5423917 (N.D. Miss. Sept. 26, 2013)....................3

*Wexner v. First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990)....................9

*Williams v. Wells Fargo Bank, N.A.*,
No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ....................8

*Wilson v. EverBank, N.A.*,
No. 14-CIV-22264, 2015 WL 265648 (S.D. Fla. Jan. 6, 2015)....................4, 5

**Statutes**

Fla. Stat. § 631.54(5)....................2

215 Ill. Comp. Stat. § 5/155.30....................2

**Other Authorities**

1-1 *New Appleman on Insurance Law* § 1.06[9] (Library Ed. 2015) ....................6

## I. INTRODUCTION

The flaws in Plaintiffs' claims against American Modern[1] are clear from the outset of Plaintiffs' Memorandum in Opposition (ECF No. 167) to American Modern's Motion to Dismiss (ECF No. 157). Plaintiffs open their Opposition by alleging that anonymous "mortgage servicers" have "exploit[ed] the force-placed insurance ('FPI') process." (Pls.' Opp. at 1.) Applying this one-size-fits-all "blueprint," Plaintiffs argue that "this case mirrors many others" in that it involves a "typical . . . FPI kickback scheme[.]" (*See id.* at 2-3.) But those allegations alone cannot survive American Modern's motion. Plaintiffs must plead a unique injury caused by American Modern. Because they have not, and for additional reasons specific to each of Plaintiffs' claims, this Court should grant the motion.

## II. LAW AND ARGUMENT

### A. Plaintiffs Continue to Overlook the Causation Element of Each Claim.

Plaintiffs' smatterings of conclusory statements and exceptions to the rule do not plausibly allege causation. Plaintiffs do not dispute that causation is an essential element of each of their claims. *See Gracey v. Eakor*, 837 So. 2d 348, 353 (Fla. 2002) (Florida fiduciary duty claim); *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 433 (Ill. 2012) (Illinois fiduciary duty claim); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th Cir. 2013) (Illinois Consumer Fraud Act); *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2012 WL 869007, at *9 (D.N.J. Mar. 14, 2012) (unjust enrichment); *McBrearty v. Vanguard Grp.*, 353 F. App'x 640, 641 (2d Cir. 2009) (RICO). And they recognize that their task is to "allege[] causation" by showing that they "could not have avoided being charged" for the lender-placed insurance premiums that they allege included "kickbacks." (*See* Pls.' Opp. at 22.)

---

[1] "American Modern" means, collectively, Defendants American Modern Insurance Group, Inc. and American Modern Home Insurance Company.

Yet Plaintiffs are not up to the task. Plaintiffs could have avoided lender-placed insurance by buying their own, less-expensive personal homeowner's policies. (*See* Second Am. Compl. Ex. 27, 71, ECF Nos. 93-32, 93-76) (advising Plaintiffs exactly that). But, as Plaintiffs concede, Litton could not have bought such policies. (*See* Pls.' Opp. at 25) ("FPI is a *commercial* insurance product sold to *financial institutions*, not a *personal lines* insurance product sold to *consumers*.") (emphasis in original); *accord* Fla. Stat. § 631.54(5) ("'Homeowner's insurance' . . . policies are written directly to the individual homeowner."); 215 Ill. Comp. Stat. § 5/155.30 (providing that certain "personal multi-peril property insurance policies" are "commonly known as 'homeowners' or 'renters' insurance"). Nor could Litton have bought a less-expensive lender-placed policy than those it bought from American Modern. Surely Plaintiffs would have identified such a policy if it existed. These reasons alone starve Plaintiffs' claims of causation.

Perhaps for these reasons, Plaintiffs' Opposition lacks any meaningful causation analysis. Trying to drown out the defects in their aiding-and-abetting claims, Plaintiffs recite various exceptions to the rule that a lender-borrower relationship does not create a fiduciary duty. (*See* Pls.' Opp. at 19-20.) Only after this exposition do Plaintiffs offer the conclusory statement that American Modern's actions somehow "resulted in injury to Heard." (*Id.* at 20) (emphasis added). Plaintiffs' Illinois Consumer Fraud Act ("ICFA") arguments also treat causation as an afterthought, conflating it with the separate damages element of an ICFA claim. (*See* Pls.' Opp. at 24) ("[T]he practices have caused substantial injury because the illicit charges cost borrowers millions of dollars."). And Plaintiffs return to argument-by-exception on their RICO claims, explaining away their failure to allege reliance – and thus causation – by arguing only that is not

"always necessary" to do so. (*Id.* at 13.) None of these meager and misleading arguments without plausible allegations of causation can save Plaintiffs' claims.

**B. The Filed-Rate Doctrine Is a Live Issue and Bars Heard's Claims.**

In another misdirection, Plaintiffs incorrectly state that the distinction between personal and homeowner's insurance policies somehow "bolster[s] Plaintiffs' argument that the filed-rate doctrine does not apply" to bar Heard's claims. (Pls.' Opp. at 25.) That is wrong as a matter of both law and policy. Legally, the Second Circuit and this Court have held to the contrary. The filed-rate doctrine is "no less implicated when a plaintiff brings claims" alleging that a servicer "acquired policies with premiums based on [the insurer]'s filed rate." *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 554 (S.D.N.Y. 2014) (citing *Simon v. KeySpan Corp.*, 694 F.3d 196, 205 (2d Cir. 2012)); *see also Curtis v. Cenlar FSB*, No. 13 Civ. 3007, 2013 WL 5995582, at *3 (S.D.N.Y. Nov. 12, 2013) (observing that lender-placed insurance rate charged to servicer "applied to" plaintiff).

Policy-wise, Plaintiffs' argument acutely offends the nondiscrimination strand of the filed-rate doctrine. Whether Heard paid American Modern's filed rate directly or indirectly, a damages award would effectively allow her to "pay[] an insurance rate different from that of other insureds." *Decambaliza v. QBE Holdings, Inc.*, No. 13-cv-286, 2013 WL 5777294, at *7 (W.D. Wis. Oct. 25, 2013); *accord Singleton v. Wells Fargo Bank, N.A.*, No. 2:12-cv-00216, 2013 WL 5423917, at *2 (N.D. Miss. Sept. 26, 2013) ("The alleged kickbacks and other costs were included in the amount of the premium approved by the regulatory agency."); *Roberts v. Wells Fargo Bank, N.A.*, No. 4:12-cv-00200, 2013 WL 1233268, at *13 (S.D. Ga. Mar. 27, 2013) ("[D]amages . . . can only be measured by the difference between the premiums [that the plaintiff] paid and what the premiums would have been absent the allegedly illegal

'commissions, kickbacks, and free services' they contained."). That is price discrimination, and it is forbidden by the filed-rate doctrine.

This is so despite what this Court might have "already determined." (*Contra* Pls.' Opp. at 24) (citing ECF No. 129[2]). Courts are free to revisit the filed-rate doctrine in light of a plaintiff's later arguments. *See, e.g.*, *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373, 2013 WL 139913, at *12 (S.D. Fla. Jan. 10, 2013) ("In denying the Motion to Dismiss, I relied on Plaintiff's argument that he was not challenging the actual insurance rates . . . . [But] Plaintiff's counsel [later] seemed to concede that the 'unearned' commission, about which he complained, is part of the rate filed by the insurance carrier . . . . It seems apparent that the filed-rate doctrine is an issue that must be addressed."). This Court might consider, for example, Plaintiffs' new rate-based arguments that Litton's American Modern policies were "high-priced" and not "reasonably priced." (*See, e.g.*, Pls.' Opp. at 16, 22.) The filed-rate doctrine deserves a first look from American Modern's perspective, or at least another look, and this Court should apply it to bar Heard's claims.

### C. Plaintiffs Cannot Identify a Fiduciary Duty for Litton to Have Breached.

Plaintiffs' Opposition confirms that their claims for aiding and abetting a breach of fiduciary duty fail because Litton owed no such duty to Plaintiffs. Specifically, the Lyonses' Florida claim fails because: (1) Plaintiffs do not "allege that [the] establishment or maintenance of escrow accounts . . . [is] itself improper or unusual in the context of servicing a home mortgage" and (2) the Lyonses were informed that Litton placed an American Modern policy on their property "to protect its *own* collateral and its *own* interests." *See Wilson v. EverBank, N.A.*, No. 14-CIV-22264, 2015 WL 265648, at *12 (S.D. Fla. Jan. 6, 2015) (citing *Feaz v. Wells Fargo*

[2] Presumably, Plaintiffs intended to cite ECF No. 139 (Order Denying Assurant Defendants' Motion to Dismiss) and not ECF No. 129 (Assurant Defendants' Notice of Supplemental Authority).

*Bank, N.A.*, 745 F.3d 1098, 1110-11 (11th Cir. 2014); *Cohen*, 735 F.3d at 612 n.4; *Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-21384, 2014 WL 4219587, at *2 (S.D. Fla. Aug. 25, 2014)). In dismissing the plaintiffs' fiduciary duty claims on this basis, the *Wilson* court was well aware of the *Persaud* and *Mahdavieh* cases cited by Plaintiffs here. (*Compare id.* at *12 *with* Pls.' Opp. at 19-20.) Yet Plaintiffs' arguments rest solely on those cases and on a Pennsylvania federal court's application of Ohio law. (*See* Pls.' Opp. at 19-20.) So *Wilson* governs and defeats the Lyonses' claim.

Heard's Illinois claim is equally weak. Plaintiffs have "failed to state a claim under Illinois . . . law for breach of a fiduciary duty" because they do not allege either (1) "a confidential relationship" between Heard and Litton or (2) "that [Litton] gained superiority or influence over [Heard]." *See Gustafson v. BAC Home Loans Servicing, LP*, No. 11-915, 2012 WL 7051318, at *9 (C.D. Cal. Dec. 20, 2012). Instead, Plaintiffs resort to accusations of "stealing" and "funnel[ing] money" and provide only a single, out-of-context case quotation in support of Heard's claim. (Pls.' Opp. at 20.) Plaintiffs note that "a fiduciary relationship arises" when "an agency relationship is found," but boldly omit "the generally held view that a mortgagee is not the agent of the mortgagor, notwithstanding the mortgagee's ability to affect the legal relations of the mortgagor." *Aaron Transfer & Storage, Inc. v. Bekins Van Lines, Inc.*, No. 02 C 1836, 2002 WL 31509775, at *2 (N.D. Ill. Nov. 12, 2002) (quotation omitted). Plaintiffs give no reason to abandon this majority view.

**D. Heard's ICFA Claim Defies Appellate Authority.**

In a misguided attempt to preserve Heard's ICFA claim, Plaintiffs draw upon a narrow selection of federal district court and Illinois authority. (*See* Pls.' Opp. at 23-24 & nn.16-17.) But Plaintiffs completely ignore *Cohen*, a federal appellate decision that is directly on point – and that turns Plaintiffs' Illinois authority against Heard. Faced with similar ICFA allegations to

Plaintiffs' here, the Seventh Circuit asked whether the plaintiff "plausibly alleged an 'unfair' or 'deceptive' act or practice" and concluded that "[t]he answer is 'no.'" *Cohen*, 735 F.3d at 608.[3] Regardless of the defendants' alleged conduct, the *Cohen* plaintiff's ICFA claim failed because her lender "fully disclosed that lender-placed insurance may be significantly more expensive than her own policy and may include a fee or other compensation to the [lender] and its insurance-agency affiliate." *Id.* at 604. And, as the lender further disclosed, "the choice to purchase her own, less-expensive insurance was available to [the plaintiff] at all times." *Id.* at 609. These disclosures "conclusively defeat[ed]" the plaintiff's ICFA claims.[4] *Id.* at 608.

In reaching this conclusion, the Seventh Circuit found *Robinson* – the primary ICFA authority in Plaintiffs' Opposition – "analogous" to *Cohen*:

> In that case lessees of automobiles sued the lessor alleging that the lease agreements violated the [ICFA] by imposing penalties for "excess wear and tear" to the leased vehicles and also for "excess mileage" on those vehicles . . . . The plaintiffs alleged that the penalties were duplicative and therefore unfair in violation of the [ICFA]. The Illinois Supreme Court rejected the claim, agreeing with the lower court that "there was a total absence of the type of oppressiveness and meaningful choice necessary to establish unfairness [because] *plaintiffs could have gone elsewhere* to lease a car."

*Id.* at 610 (quoting and citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961-62 (Ill. 2002)) (emphasis added). So all of Plaintiffs' authority is either governed by or analogous to *Cohen*, which renders Heard's ICFA claim implausible.

---

[3] The allegedly unfair or deceptive acts in *Cohen* involved both commissions and "other compensation to the bank and its insurance-agency affiliate." *Id.* at 603-04. Although *Cohen* did not explicitly address allegations of "sham reinsurance" (Pls.' Opp. at 24), Plaintiffs' assertion that "no real risk was assumed by the reinsurer" (*id.* at 2) shows that their reinsurance allegations rest on a misunderstanding of the practice. "Reinsurance is essentially insurance for insurance companies. Reinsurance should not be confused with the situation where one insured takes out two or more policies covering the same risk with two or more insurers . . . ." 1-1 *New Appleman on Insurance Law* § 1.06[9] (Library Ed. 2015).

[4] Accordingly, there was no need to resolve any purported "question of fact" about "[w]hether an act violates the ICFA." (*Contra* Pls.' Opp. at 23 n.17.)

**E. Plaintiffs Cannot Overcome Any of American Modern's Several Reasons for Dismissing Their Unjust Enrichment Claims.**

Plaintiffs' unjust enrichment claims should be dismissed for all of the above reasons. Plaintiffs do not dispute that an unjust enrichment claim "should be dismissed as duplicative" under Florida law when it "is a vague catch-all that does no more than incorporate by reference the alleged wrongdoing already addressed by . . . other legal causes of action." *Licul v. Volkswagen Grp. of Am.*, No. 13-61686, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013). Nor do Plaintiffs dispute that Illinois law requires the same result when one of those "other legal causes of action" is dismissed. *Control Solutions LLC v. Oshkosh Corp.*, No. 10 C 121, 2012 WL 3096678, at *10 (N.D. Ill. July 27, 2012). So Plaintiffs' unjust enrichment claims fail because they, like all of Plaintiffs' other claims, depend on allegations of excessive "force-placed hazard insurance premiums." (*Compare* Second Am. Compl. ¶ 277 *with* Second Am. Compl. ¶¶ 230 (RICO), 286 (fiduciary duty), 331 (ICFA).)

American Modern's other reasons for dismissal also remain sound. Heard's "wrongful conduct"-based claim under Illinois law fails for lack of causation. *See Indep. Trust Corp. v. Fid. Nat'l Title Ins. Co.*, 577 F. Supp. 2d 1023, 1051 (N.D. Ill. 2008) (requiring "a causal link between the wrongful conduct and the acquisition by the defendant of the benefit"). And the Lyonses' Florida claim "fails because [Plaintiffs] do not allege any facts showing a direct payment of the premium, or premium components such as commissions, by [the Lyonses] to [American Modern]." *See Circeo-Loudon*, 2014 WL 4219587, at *5.

Plaintiffs' characterization of *Circeo-Loudon* as an "anomaly" cannot withstand a careful reading of the cases cited in Plaintiffs' Opposition. (*Contra* Pls.' Opp. at 18 n.13.) Each case is distinguishable. One dealt only with whether the plaintiff conferred "any benefit" – direct or otherwise – on *all* of the defendants. *See Persaud v. Bank of Am., N.A.*, No. 14-21819, 2014 WL

4260853, at *14 (S.D. Fla. Aug. 28, 2014). Another found only a direct payment between the plaintiff and a *lender*. *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011). And another relied on a finding that the plaintiffs did not "seek to recover any money that [the lender] may have paid to the [insurer] for other services under entirely separate contracts." *Hamilton v. SunTrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1317 (S.D. Fla. 2014). Here, in contrast, Plaintiffs complain of being "charge[d]" for "the cost of tracking and monitoring mortgages," which they allege "is a loan servicing function for which loan servicers are *separately compensated*." (Second Am. Compl. ¶¶ 200-01) (emphasis added). So if *Circeo-Loudon* is an "anomaly," then that is because it is the only analogous case.

*Circeo-Loudon* also confirms that American Modern can "use the existence of the mortgage contract[s] between Plaintiffs and their loan servicers" to establish that Plaintiffs' unjust enrichment claims are barred by the existence of an express contract. (*Contra* Pls.' Opp. at 19.) Plaintiffs cite no authority in support of their contrary position, while the *Circeo-Loudon* court held that "a written insurance contract" barred the plaintiffs' unjust enrichment claim because that claim was "based on [the insurer]'s receipt of alleged benefits in the form of funds for force-placed insurance premiums related to force-placed insurance policies." 2014 WL 4219587, at *5. This is yet another reason to dismiss Plaintiffs' unjust enrichment claims.

**F. Plaintiffs Cannot Plead a RICO Claim with Particularity by Pointing to "Hundreds of Thousands of Mailings" and Other Documents.**

American Modern maintains that Plaintiffs' RICO claims should be dismissed for the reasons stated by the Assurant Defendants in support of their Motion to Dismiss (ECF No. 147). This Court need not reach those reasons, however, because Plaintiffs' RICO claims fail to satisfy the particularized pleading requirements of Fed. R. Civ. P. 9(b). Plaintiffs do not entertain American Modern's observation that their allegations are essentially *identical* to those that were

dismissed for failure to plead with particularity in the *Gustafson* lender-placed insurance litigation.[5] (*Compare Gustafson v. BAC Home Loans Servicing, LP*, No. 11-915, 2012 WL 7071469, at *5 (C.D. Cal. Dec. 20, 2012) *with* Second Am. Compl. ¶¶ 40(i)-(j), 233-34, 236(a).)

Instead, Plaintiffs rely on two inapposite cases in arguing that Rule 9(b) should be "relaxed." (Pls.' Opp. at 8 & n.7.) One of those cases warned that, "relaxed" or not, Rule 9(b) requires a complaint to "adduce *specific facts* supporting a *strong inference* of fraud." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (emphasis added). And the other case involved a claim under the New Jersey Consumer Fraud Act, not RICO. *Gallo v. PHH Mortg. Corp.*, 916 F. Supp. 2d 537, 555 n.13 (D.N.J. 2012). Notwithstanding its name, the New Jersey Consumer Fraud Act requires only "unlawful conduct" and not the fraud upon which Plaintiffs' RICO claims are based. *See Donachy*, 2012 WL 869007, at *3. *Wexner* and *Gallo* are no basis for the "relaxation" that Plaintiffs seek.

Even if they were, Plaintiffs' claims would still fail. *Gustafson* applies even if Plaintiffs "could not reasonably be expected to have[] the specific written agreements that document the [alleged] kickback scheme." (*Contra* Pls.' Opp. at 8.) In *Gustafson*, the plaintiffs failed to state a RICO claim despite needing to plead only "the circumstances constituting fraud" with particularity. 2012 WL 7071469, at *5. The plaintiffs were permitted to plead "malice, intent, knowledge, and other conditions of a person's mind" generally. *Id.* Nonetheless, the *Gustafson* court dismissed the plaintiffs' RICO allegations for inadequately "stat[ing] the when, where, and why of the[] allegedly fraudulent acts." *Id.* It was not enough for the plaintiffs to simply point

[5] The identity of the allegations is more fully illustrated in the chart at pages 22 and 23 of American Modern's Memorandum in Support of Motion to Dismiss (ECF No. 158).

to "hundreds and thousands of letters and other mailings and communications . . . sent to Plaintiffs and class members." *Id.*[6]

Yet Plaintiffs' Second Amended Complaint does just that, sending American Modern on a scavenger hunt to review "hundreds of thousands of mailings," examine "Exhibits 27, 29, 30, 33, 38, 40, 42, 45, 46, 47, 64, 65, 67, 68, 69, 70, 71, 72, 73, [and] 74," and pore over selected "NYDFS Testimony." (Second Am. Compl. ¶ 236(a).) But there is more. In their Opposition, Plaintiffs add an indefinite number of items to the list: "the American Modern NYDFS Consent Order, and the wealth of documentation regarding similar FPI kickback schemes." (Pls.' Opp. at 8.) That is not how to plead "the litigation equivalent of a thermonuclear device." *See Cedar Swamp Holdings v. Zaman*, 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007) (quotation omitted). Plaintiffs have not pleaded their RICO claims with particularity.

## III. CONCLUSION

Failure to plead causation is the most glaring of many reasons why Plaintiffs have not stated a claim against American Modern. Plaintiffs have also failed to escape the filed-rate doctrine, to establish a fiduciary relationship between themselves and Litton, to contradict the truthful disclosures that they received, to clear several bars to their unjust enrichment claims, and to plead their RICO claims with particularity. For each of these reasons, and those stated by the Assurant Defendants, American Modern respectfully requests that this Court grant its Motion to Dismiss.

---

[6] This aspect of *Gustafson* has not "been rejected by other . . . courts." (*Contra* Pls.' Opp. at 12) (citing *Cannon v. Wells Fargo Bank, N.A.*, No. 12-cv-1376, 2014 WL 324556, at *3 (N.D. Cal. Jan. 29, 2014; *Rothstein v. GMAC Mortg., LLC*, No. 12-cv-3412, 2013 WL 5437648, at *13 (S.D.N.Y. Sept. 30, 2013)). The issue of pleading with particularity was not before the *Cannon* court. *See* 2014 WL 324556, at *2-3. And *Rothstein* was distinguishable from *Gustafson* because the *Rothstein* plaintiffs "specif[ied] the *dates* the letters were sent, what role *each Defendant* played, and what the *specific misstatement* in the letter was." 2013 WL 5437648, at *13 (emphasis added). Plaintiffs have not done so here.

    Respectfully submitted,

/s/ Mark A. Johnson

Mark A. Johnson (*pro hac vice*)
mjohnson@bakerlaw.com
Rodger L. Eckelberry (*pro hac vice*)
reckelberry@bakerlaw.com
Joseph E. Ezzie (*pro hac vice*)
jezzie@bakerlaw.com
Robert J. Tucker (*pro hac vice*)
rtucker@bakerlaw.com
BAKER HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
T 614.228.1541
F 614.462.2616

Lauren J. Resnick
lresnick@bakerlaw.com
BAKER HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
T 212.589.4200
F 212.589.4201

*Attorneys for Defendants American Modern Insurance Group, Inc. and American Modern Home Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 6, 2015, I electronically filed the foregoing with the Clerk of the United States District Court for the Southern District of New York through the CM/ECF system, thereby automatically serving all registered parties.

/s/ Mark A. Johnson
Mark A. Johnson