UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

|  |  |  |
|---|---|---|
|  | : | ECF Case |
| JIMMY LYONS, *et al.*, individually and | : |  |
| on behalf of all others similarly situated, | : | No. 13 Civ. 513 (ALC) |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| LITTON LOAN SERVICING LP, *et al.*, | : |  |
|  | : |  |
| Defendants. | : |  |

————————————————————————


**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS ASSURANT, INC., AMERICAN SECURITY INSURANCE
COMPANY, AND STANDARD GUARANTY INSURANCE COMPANY**


SULLIVAN & WORCESTER LLP
1633 Broadway
32nd Floor
New York, New York 10019
(212) 660-3000

CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson Street NW
Suite 400 East
Washington, DC 20007
(202) 965-8100

*Attorneys for Defendants Assurant, Inc.,
American Security Insurance Company, and
Standard Guaranty Insurance Company*


Dated:   New York, New York
         April 6, 2015

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .........................................................................................................................1

    I.     The Ervings Fail To State A RICO Claim ................................................................1

         A.    No RICO Enterprise Is Plausibly Alleged ....................................................1

         B.    The Assurant Defendants Conducted Their Own Affairs, Not Those Of A Purported RICO Enterprise ........................................................3

         C.    No Pattern Of Racketeering Activity Is Plausibly Alleged ........................4

              1.    The Ervings do not plead actionable mail or wire frauds ...............4

              2.    The Ervings do not plead actionable transfers of stolen property ....................................................................................6

         D.    The Ervings Lack Statutory Standing To Sue The Assurant Defendants .................................................................................................6

    II.    The Ervings Fail To State A Claim For Unjust Enrichment ..................................8

         A.    The Claim Is Predicated On Wrongful Conduct, Not Unjust Enrichment .................................................................................................8

         B.    The Assurant Defendants Received A Benefit From The Saxon Defendants, Not The Ervings ......................................................................8

         C.    There Is Nothing "Unjust" About Defendants' Alleged Conduct .............9

    III.    The Ervings Fail To State An Aiding And Abetting Claim ..................................10

CONCLUSION ....................................................................................................................10

i

# TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)**

*Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565 (S.D.N.Y. 1999)...................1, 2

*Bonilla v. Volvo Car Corp.*, 150 F.3d 62 (1st Cir. 1998)........................................................5

*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008)......................................7

*Circeo-Loudon v. Green Tree Servicing, LLC*,
 2014 WL 2014 WL 4219587 (S.D. Fla. Aug. 25, 2014)............................................3, 7, 8, 9

*Cohen v. American Security Insurance Co.*, 735 F.3d 601 (7th Cir. 2013)................................6, 9

*Cruz v. FXDirectDealer, LLC*, 855 F. Supp. 2d 89 (S.D.N.Y. 2012)......................................3

*D. Penguin Bros. v. City National Bank*, 587 F. App'x 663 (2d Cir. 2014)...............................2, 3

*Eller v. EquiTrust Life Insurance Co.*, 778 F.3d 1089 (9th Cir. 2015)...........................................5

*Environmental Services, Inc. v. Recycle Green Services, Inc.*,
 7 F. Supp. 3d 260 (E.D.N.Y. 2014)..............................................................................6

*Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir. 2014)...................................9

*Federal Insurance Co. v. Ayers*, 772 F. Supp. 1503 (E.D. Pa. 1991)..............................6

*FindTheBest.com, Inc. v. Lumen View Technology LLC*,
 20 F. Supp. 3d 451 (S.D.N.Y. 2014).........................................................................7, 8

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
 385 F.3d 159 (2d Cir. 2004).......................................................................................2

*Guyana Telephone & Telegraph Co. v. Melbourne International
 Communications, Ltd.*, 329 F.3d 1241 (11th Cir. 2003) ......................................8

*Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) .......................................7

*Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996) .................................5

*Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447 (S.D.N.Y. 2009) ...........................2, 3

*Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308 (11th Cir. 2000) ........................5

*Meyer v. One West Bank, F.S.B.*, 2015 WL 1222402 (C.D. Cal. Mar. 18, 2015) .........................6

ii

*Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542 (S.D.N.Y. 2014).................................2, 8

*Nehrer v. Bank of America, N.A.*, 2011 WL 4376776 (M.D. Fla. Sept. 2, 2011)........................10

*Perino v. Mercury Finance Co. of Illinois*, 912 F. Supp. 313 (N.D. Ill. 1995) ............................5

*Persaud v. Bank of America, N.A.*, 2014 WL 4260853 (S.D. Fla. Aug. 28, 2014) ......................9

*Rapp v. Green Tree Servicing, LLC*, 2013 WL 3992442 (D. Minn. Aug. 5, 2013) ......................4

*Redtail Leasing, Inc. v. Bellezza*, 1999 WL 32941 (S.D.N.Y. Jan. 22, 1999) ...............................3

*Rothstein v. GMAC Mortgage, LLC*, 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013)..............3, 4, 5

*Southern Illinois Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*,
    2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ......................................................................8

*U1IT4Less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275 (S.D.N.Y. 2012) .....................................3

*UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010)..........................................7, 8

*In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108 (2d Cir. 2013) ...........................7, 8

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012) ...................................................9

*Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) .....................9

*Wilson v. EverBank, N.A.*, 2015 WL 265648 (S.D. Fla. Jan. 6, 2015) .....................................8, 10

## PRELIMINARY STATEMENT

The Ervings concede that several of their claims are meritless.  In their opposition, they quietly purport to withdraw claims based on their "backdating" and "overinsurance" theories, leaving only claims based on their "kickback" theory.  ECF No. 166 at 2 n.4.  Effectuating this withdrawal by a motion under Fed. R. Civ. P. 15 or 41 would have been the more appropriate mechanism to voluntarily drop claims.  Nonetheless, to prevent the Ervings from twice-vexing defendants in a later proceeding, the Court should formally dismiss these claims.  For the reasons explained in the Assurant Defendants' concurrently filed reply memorandum of law in support of their motion to dismiss the complaint in *Clarizia v. Ocwen Financial Corp.*, No. 13 Civ. 2907 (ALC), the claims should be dismissed *with* prejudice.

The Ervings' remaining "kickback" allegations also should be dismissed *with* prejudice. Their Complaint fails to state cognizable claims for RICO violations, unjust enrichment, and aiding and abetting a breach of fiduciary duty.

## ARGUMENT

### I.    The Ervings Fail To State A RICO Claim.

#### A.    No RICO Enterprise Is Plausibly Alleged.

The Ervings fail to identify the members of the alleged RICO "Force-Placed Insurance Enterprise," to describe interrelationships among the enterprise's membership of defendants and nonparty "insurance producers and entities," or to explain the enterprise's structure.  *See* ECF No. 166 at 15.  The Ervings instead demand the opportunity to conduct discovery to flesh out their deficient Complaint.  *See id.*  That is not how federal pleading works, especially for RICO allegations.  "Plaintiffs are not entitled … to conduct discovery to discover facts that would establish a RICO enterprise."  *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565,

1

581 n.6 (S.D.N.Y. 1999).  "To withstand a Rule 12(b)(6) motion, a plaintiff must 'explain *each* participant's role in the alleged course of fraudulent or illegal conduct' to show the enterprise members 'functioned as a unit.'"  *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 551 (S.D.N.Y. 2014) (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004)) (emphasis in original).  The Ervings have not identified even *one* of the nonparty "entities" that supposedly populate the alleged enterprise, much less its role.  For this reason, Judge Briccetti recently dismissed an identically pled RICO "Force-Placed Insurance Enterprise" involving the Assurant Defendants.  *See id.*  This Court should do the same.

Nor does the purported enterprise exist separate and apart from the alleged fraudulent scheme.  *See D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014); *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 458 (S.D.N.Y. 2009).  As the Complaint itself avers, the racketeering activity *is* the "Force-Placed Insurance Enterprise":  "What outwardly appeared to be legitimate force-placed insurance activities was in reality a scheme devised and implemented by Defendants to enrich themselves[.]"  Compl. ¶ 229.  The Ervings contend that "the enterprise had both legitimate and illegitimate functions – secretly defrauding borrowers while at the same time providing actual and necessary LPI," ECF No. 166 at 16 – but these are just separate *reasons* for the same *activity*.  Motives aside, the activity involved in placing and charging for LPI is the "Force-Placed Insurance Enterprise" reified – that entity "would not still exist were the predicate acts removed from the equation."  *Black Radio*, 44 F. Supp. 2d at 581.

An argument analogous to the Ervings' was rejected in *Kottler v. Deutsche Bank AG*, *supra*, which involved a purportedly fraudulent tax shelter scheme.  The *Kottler* plaintiffs argued that the alleged RICO enterprise's participants "did not come together by chance and solely for purposes of committing this particular tax fraud," but instead "worked together with these

2

plaintiffs and with other unnamed class members configuring out tax solutions." 607 F. Supp. 2d at 458-59. This argument was "unavailing," however, because even if the RICO enterprise existed for other reasons, it was defined by its activities. *Id.*[1]

**B.    The Assurant Defendants Conducted Their Own Affairs, Not Those Of A Purported RICO Enterprise.**

At most, the Complaint alleges that defendants coordinated their business activities for a common goal – perhaps *participating* in a RICO enterprise – not that the Assurant Defendants *conducted* a freestanding criminal organization. The Ervings say little about this deficiency, arguing only that each of the Assurant Defendants was a "vital actor" in the alleged enterprise. ECF No. 166 at 16. But all the Complaint alleges is that the Assurant Defendants issued LPI, received premiums for it, and paid a portion of the premiums to a licensed producer to engender a continuing business relationship. Allegedly providing LPI for a premium and compensating the insurance's producer describes the Assurant Defendants' own affairs, not how they operated or managed a separate enterprise's affairs. *See D. Penguin*, 587 F. App'x at 668; *Circeo-Loudon v. Green Tree Servicing, LLC*, 2014 WL 2014 WL 4219587, at *4 (S.D. Fla. Aug. 25, 2014).

While in some contexts paying kickbacks might constitute conduct of a RICO enterprise, that is not the case here. Here, the so-called "kickbacks" allegedly influenced a loan servicer's decision to purchase LPI from the Assurant Defendants, not the manner in which the "Force-Placed Insurance Enterprise" – a supposedly autonomous entity possessing its own structure – conducted *its* affairs. This is insufficient. *See Redtail Leasing, Inc. v. Bellezza*, 1999 WL 32941,

---

[1] Neither of the Ervings' cited cases – *U1IT4Less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275 (S.D.N.Y. 2012), and *Rothstein v. GMAC Mortgage, LLC*, 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013) – are to the contrary. *U1IT4Less* concerned RICO's "person"/"enterprise" distinctiveness requirement, not RICO's "activity"/"enterprise" distinctiveness requirement. *See Cruz v. FXDirectDealer, LLC*, 855 F. Supp. 2d 89, 99 (S.D.N.Y. 2012) (explaining the difference). *Rothstein* concerned RICO's "operation or management" test, a separate issue addressed in Part I.B, *infra*. *Rothstein* did not address the "activity"/"enterprise" requirement.

at *5 (S.D.N.Y. Jan. 22, 1999) (although RICO defendant "participated in the insider trading ring's affairs" by "paying kickbacks to the source of the inside information," another enterprise member, this did "not suggest that [defendant] directed, managed, operated or otherwise controlled some portion of the affairs of the insider trading ring").  The "kickbacks" were allegedly predetermined payments that could not have controlled anything since defendants "had *already* agreed to share revenue in the form of direct commission payments" and the like. Compl. ¶ 99 (emphasis added); *see also id.* ¶¶ 8, 9, 81, 98, 101.  Any supposed payments were made to comply with defendants' contract, not to direct an ongoing organization.

### C.     No Pattern Of Racketeering Activity Is Plausibly Alleged.

#### 1.     The Ervings do not plead actionable mail or wire frauds.

In their opposition, the Ervings clarify their belief that the cycle letters were fraudulent because the letters stated that LPI would "'have significantly higher premiums than standard insurance premiums because [the] carrier has issued the policy without the benefit of normal underwriting guidelines.'"  ECF No. 116 at 10 (quoting Compl. Ex. 40).  "This statement is false and misleading," the Ervings assert, "because the charges were higher because of the kickbacks." *Id.*  But not only is the statement *true*, it is "[c]ommon sense" and "entirely unsurprising":

> Common sense suggests that force-placed policies expose insurance carriers to more substantial risks than voluntary policies.  After all, force-placed policies are sought only when a homeowner has failed to maintain insurance on his own property, which typically indicates that the homeowner is in financial distress or that something else is amiss.  Property owned by homeowners under such circumstances is more vulnerable than property owned by homeowners who maintain their own insurance.  It is thus entirely unsurprising that a force-placed policy costs a lot more than a similar policy purchased by a homeowner.

*Rapp v. Green Tree Servicing, LLC*, 2013 WL 3992442, at *11 (D. Minn. Aug. 5, 2013).

At bottom, the Ervings fault defendants for not having enumerated in the cycle letter *all* the multitude of reasons an LPI policy might be higher priced than a standard policy.  But under RICO, "a seller generally has no duty to disclose internal pricing policies or its method for

4

valuing what it sells," *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092-93 (9th Cir. 2015);

*Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1314 (11th Cir. 2000) ("We do not expect

retailers to disclose information about their pricing schemes – consumers are the actors who are

best able to gather pricing information and put it to its highest and best use."), nor is there a

"general obligation of the seller to tell the buyer everything negative that the buyer might be

interested in learning about the transaction or item to be purchased." *Bonilla v. Volvo Car Corp.*,

150 F.3d 62, 70 (1st Cir. 1998). "Repeated allegations of 'secret agreements' and 'kickbacks' do

not transform this perfectly legal conduct into actionable fraud under RICO." *Perino v. Mercury*

*Fin. Co. of Ill.*, 912 F. Supp. 313, 316 (N.D. Ill. 1995) (alleged scheme to kickback portion of

finance charges not fraudulent under RICO, even if defendant's actual "buy rate" was misstated).

The Ervings hope to hitch their wagon to the decision in *Rothstein v. GMAC Mortgage,*

*LLC*, *supra*, where the cycle letters purportedly "misrepresent[ed] the nature of the amounts that

would be billed stating that the amounts represent the 'cost of the insurance' and that Plaintiffs

are required to 'reimburse' [defendant] for having 'advanced' these purported costs."  2013 WL

5437648, at \*13.  *Those statements and phrases do not appear in the letters sent to the Ervings.*

Compl. Exs. 38, 40.  Unlike in *Rothstein*, the letters here did not represent that LPI charges

equaled the LPI's cost, stating only that LPI would have "higher premiums."  "This language is

not limited to the amount of money it 'costs' the bank to buy the insurance on the [property] in

question.  'Cost' and 'premium' are not synonymous." *Kenty v. Bank One, Columbus, N.A.*, 92

F.3d 384, 391 (6th Cir. 1996) (dismissing RICO claim based on agreement between bank and

collateral protection insurer to pay bank "kickbacks" for force-placing insurance).  Nor does

*Rothstein* stand for the unfounded notion that an entirely true statement is misleading if it does

not disclose a seller's internal pricing structure.  (If it does, then *Rothstein* was wrongly decided.)

The Ervings' RICO claims are based on the premise that the cycle letters were fraudulent. Yet on identical facts and allegations, many courts have ruled that such letters *refute* an alleged scheme to fraud.  *See* ECF No. 148 at 13-14 (collecting cases).  Since defendants' motions to dismiss were filed, yet another court has agreed.  *See Meyer v. One West Bank, F.S.B.*, 2015 WL 1222402, at *5 (C.D. Cal. Mar. 18, 2015).  This Court should reach the same conclusion.

### 2.    The Ervings do not plead actionable transfers of stolen property.

The Ervings have not pled that, for any single LPI placement, they were charged $5,000 or more.  Absent that allegation, the Ervings cannot assert a single violation of 18 U.S.C. § 2314, much less a "pattern" (two or more) of such violations totaling at least $10,000.  *See Fed. Ins. Co. v. Ayers*, 772 F. Supp. 1503, 1508 (E.D. Pa. 1991).  Their sole citation, *Environmental Services, Inc. v. Recycle Green Services, Inc.*, 7 F. Supp. 3d 260 (E.D.N.Y. 2014), is not to the contrary since that decision did not address whether § 2314's economic threshold had been met or state that each transfer of stolen property never exceeded the value of $5,000.[2]

### D.    The Ervings Lack Statutory Standing To Sue The Assurant Defendants.

***Proximate Causation.***  The Ervings' explanation for RICO proximate causation, *see* ECF No. 166 at 13, only confirms that their claims are "senseless."  *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013).  Other than breaching the mortgage by refusing to pay the LPI charges, the Ervings do not articulate what, if anything, they could or would have done to avoid what *they* characterize as "*force*-placed" charges.  Here, like in *Cohen*, the Ervings' "theory of damages seems to be that had [they] known the charges were really kickbacks, [they] would have breached [their] contractual duty to pay.  That is senseless.  Losing an opportunity to breach a

---

[2] The Ervings also miss the point that adding debt to a mortgage loan, which the borrower may or may not repay, is not a "transfer" of "stolen" money.  Even if it were, the Ervings allege that escrowed funds are pooled and transferred on a daily basis, Compl. ¶ 238, but nowhere allege that *they* actually paid LPI charges, which payment was then pooled and transferred.

contract cannot constitute a cognizable fraud harm." *Id.*; *see also Circeo-Loudon*, 2014 WL 2014 WL 4219587, at \*3; *Miller*, 994 F. Supp. 2d at 558.

Somewhat inscrutably, the Ervings contend that proximate cause is satisfied just because the LPI was overpriced – "the amounts Saxon charged the Ervings in reality included not just the cost to insure the property, but also included unlawful and concealed charges and illicit profits." ECF No. 166 at 13. This theory of causation traces from the "kickback" arrangement in general, and is not connected to any specific mail or wire frauds. In other words, "the conduct directly causing the harm was distinct from the conduct giving rise to the fraud," a nonstarter under RICO. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 11 (2010). "After *Hemi Group*, it is clear that plaintiffs' overpricing theory is too attenuated to 'meet RICO's requirement of a direct causal connection between the predicate offense and the alleged harm.'" *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 136 (2d Cir. 2010) (quoting *Hemi Group*, 559 U.S. at 10-11).

**"But-For" Causation.** Relying on *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), the Ervings take the unsupportable position that they need not allege that they or anybody else relied on something said or left unsaid. True, reliance is not a RICO element but, "[i]n most cases, the plaintiff will not be able to establish even but-for causation if *no one* relied on the misrepresentation." *Bridge*, 553 U.S. at 658 (emphasis added). The Ervings ignore binding Second Circuit precedent interpreting *Bridge* as still requiring RICO plaintiffs asserting mail and wire frauds to demonstrate reliance. "In the context of the predicate acts of mail and wire fraud, 'proof of misrepresentation – even widespread and uniform misrepresentation – only satisfies half of the equation because plaintiffs must also demonstrate reliance on a defendant's misrepresentation to establish causation under RICO.'" *FindTheBest.com, Inc. v. Lumen View Technology LLC*, 20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014) (quoting *In re U.S. Foodservice Inc.*

*Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013)); *see also UFCW*, 620 F.3d at 132-33.  Even

after *Bridge*, this is a matter of pleading, not just proof.  Where, as here, a RICO plaintiff fails to

allege that *anybody* relied on mail or wire frauds, dismissal is mandated.  *See FindTheBest.com*,

20 F. Supp. 3d at 459; *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, 2009

WL 3151807, at *7 (S.D.N.Y. Sept. 30, 2009); *accord Wilson v. EverBank, N.A.*, 2015 WL

265648, at *15 (S.D. Fla. Jan. 6, 2015); *Circeo-Loudon*, 2014 WL 2014 WL 4219587, at *3.

## II.     The Ervings Fail To State A Claim For Unjust Enrichment.

### A.     The Claim Is Predicated On Wrongful Conduct, Not Unjust Enrichment.

The Ervings ignore the Assurant Defendants' point that their unjust enrichment claim is

founded upon alleged "unfair, unlawful, and/or deceptive practices," Compl. ¶ 283, not any

quasi-contractual liability.  *See* ECF No. 148 at 19-20.  Not a single one of the Ervings' cited

cases address this point.  But under Florida law, if "a claimant relies on a wrong to supply the

unjust factor, the right on which he relies arises from that wrong, not from unjust enrichment."

*Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241, 1245 (11th Cir.

2003); *see also Miller*, 994 F. Supp. 2d at 557 (dismissing identical claim for this reason under

New York law).  It is apparent from the Complaint – *and now undisputed* – that the Ervings are

asserting a claim for "wrongful" enrichment, not "unjust" enrichment.  *See* Compl. ¶¶ 276-83.[3]

### B.     The Assurant Defendants Were Only Indirectly Benefited.

Although the Ervings' opposition suggests that they "conferred a direct benefit" because

"[t]he Assurant Defendants were paid for FPI policies at the Ervings' and class members'

expense," ECF No. 166 at 19, the passive voice "were paid" masks what the Complaint alleges

---

[3] The Ervings also fail to respond to the Assurant Defendants' separate point that the Ervings'
written contracts preclude their unjust enrichment claim under Florida law.  *See* ECF No. 148 at
21-22 (citing, among others, *Circeo-Loudon*, 2014 WL 2014 WL 4219587, at *5).

happened.  According to the Complaint and the Ervings' prior briefing, the Saxon Defendants paid the Assurant Defendants a premium for the LPI and later separately charged the Ervings' escrow account to recoup that cost.  *See* Compl. ¶¶ 285-88, 300-02; ECF No. 118 at 12.  The Ervings never conferred a benefit directly on the Assurant Defendants.  *See, e.g.*, *Circeo-Loudon*, 2014 WL 2014 WL 4219587, at *5.  None of the Ervings' cited cases are to the contrary because:  (i) the case did not address this requirement, *e.g.*, *Persaud v. Bank of Am., N.A.*, 2014 WL 4260853 (S.D. Fla. Aug. 28, 2014); (ii) the point was decided against a servicer, not an LPI provider, *e.g.*, *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011); or (iii) it preceded the decision in *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012).

## C.    There Is Nothing "Unjust" About Defendants' Alleged Conduct.

The Ervings hope to distinguish the Seventh and Eleventh Circuit's recent decisions in *Cohen v. American Security Insurance Co.*, *supra*, and *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir. 2014), but their reasoning is unavailing.  *See* ECF No. 166 at 6-7.  Both appellate courts affirmed dismissal of LPI "kickback" claims, including unjust enrichment claims.  The mortgages' language made clear that LPI was for the lender's protection, so there was no issue of divided loyalties or, consequently, "kickbacks."  *See Cohen*, 735 F.3d at 611; *Feaz*, 745 F.3d at 1111.  The Ervings' mortgage, a Fannie Mae/Freddie Mac Uniform Instrument, *see* Compl. Ex. 20, is almost verbatim the Fannie Mae/Freddie Mac Uniform Instrument at issue in *Cohen*. *Compare* Compl. Ex. 20 §§ 5, 9 *with Cohen*, 735 F.3d at 604-05.  The Ervings, like the *Cohen* plaintiff, received cycle letters reiterating that LPI would protect the lender's interest and be more expensive than what could be obtained elsewhere.  *Compare* Compl. Exs. 38, 40 *with Cohen*, 735 F.3d at 611.  The cases simply cannot be distinguished on any material point.  Since "the 'kickback' premise doesn't hold up," the unjust enrichment claim "is not viable."  *Id.* at 615.

### III.     The Ervings Fail To State An Aiding And Abetting Claim.

Acknowledging that "a lender does not ordinarily owe a fiduciary duty to its borrower under Florida law," the Ervings nonetheless profess to have alleged "special circumstances" giving rise to such a duty.  ECF No. 166 at 20.  Identical allegations were rejected in *Wilson v. EverBank, N.A.*, *supra*.  For example, Saxon did not assume any "extra services" for borrowers.  As *Wilson* explains, the "maintenance of escrow accounts" is neither "improper or unusual in the contract of servicing a home mortgage" and, in any event, LPI is purchased to protect the lender's interest, not for the borrower's benefit.  2015 WL 265648, at *12.

The argument that Saxon received a "greater economic benefit than from a typical mortgage transaction," ECF No. 166 at 21, is equally untenable.  The Complaint itself emphasizes, at considerable length, that the "greater economic benefit" supposedly derived from LPI is a standard industry practice, *not an atypical one*.  *See* Compl. ¶¶ 91-125.  The Complaint pointedly alleges that *all* putative class members were allegedly subjected to defendants' LPI "kickback" practices.  *See id.* ¶ 257.  Worse, the Ervings' misinterpretation of Florida law would render virtually limitless the imposition of fiduciary duties on lenders.  All assertedly illegal fees imposed or profits made – large or tiny – would automatically convert a lender into a fiduciary simply because the lender economically benefited.  Plainly, that is not the case.  *See, e.g.*, *Nehrer v. Bank of Am., N.A.*, 2011 WL 4376776, at *3 (M.D. Fla. Sept. 2, 2011) (plaintiffs did not plead "special circumstances" giving rise to fiduciary duty even if defendant lender allegedly "received a greater economic benefit through its referral and kickback program").

### CONCLUSION

Accordingly, the Assurant Defendants respectfully move for an order dismissing the Ervings' (potentially) litigable claims, with prejudice, from the Complaint.

Dated:     New York, New York
           April 6, 2015

CARLTON FIELDS JORDEN BURT, P.A.
Frank G. Burt (*pro hac vice*)
W. Glenn Merten (*pro hac vice*)
Brian P. Perryman (*pro hac vice*)
1025 Thomas Jefferson Street NW
Suite 400 East
Washington, DC 20007
(202) 965-8100

SULLIVAN & WORCESTER LLP

By: */s/ Andrew T. Solomon*
Andrew T. Solomon
1633 Broadway
32nd Floor
New York, New York 10019
(212) 660-3000

*Attorneys for Defendants Assurant, Inc.,*
*American Security Insurance Company,*
*and Standard Guaranty Insurance Company*

11