UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMY LYONS, JACQUELINE LYONS, LISA CHAMBERLIN ENGELHARDT, GERALD COULTHURST, ENRIQUE DOMINGUEZ, FRANCES ERVING, JOHNNIE ERVING, ANTHONY PAPAPIETRO, and SHEILA D. HEARD individually and on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>LITTON LOAN SERVICING LP, GOLDMAN SACHS GROUP, INC., ARROW CORPORATE MEMBER HOLDINGS LLC, SAXON MORTGAGE SERVICES, INC., MORGAN STANLEY, OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, LLC, ASSURANT, INC. (d/b/a Assurant Specialty Property), AMERICAN SECURITY INSURANCE COMPANY, STANDARD GUARANTY INSURANCE COMPANY, AMERICAN MODERN INSURANCE GROUP, and AMERICAN MODERN HOME INSURANCE COMPANY,<br><br>    Defendants. | Case No. 1:13-cv-00513-ALC-HBP |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS THE GOLDMAN SACHS GROUP, INC. AND
ARROW CORPORATE MEMBER HOLDINGS LLC**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    I.    Plaintiffs' Opposition Does Not Identify Any Basis
          For Including GS Group Or Arrow As Defendants ........................................................ 2

    II.   Plaintiffs Do Not Contest Many Of GS Group
          And Arrow's Specific Arguments .................................................................................. 5

    III.  Plaintiffs Should Not Be Granted Leave To Replead ..................................................... 6

CONCLUSION ......................................................................................................................... 8

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litigation*,
   No. 13-md-2481(KBF), 2015 WL 1344429 (S.D.N.Y. Mar. 23, 2015) .................................4, 5

*DuMont v. Litton Loan Servicing, LP*,
   No. 12–cv–2677–ER–LMS, 2014 WL 815244 (S.D.N.Y Mar. 3, 2014) .............................3, 4

*Fletcher v. Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995) ................................................................................................... 2

*Lipton v. County of Orange*,
   315 F. Supp. 2d 434 (S.D.N.Y. 2004) ................................................................................... 6

*TechnoMarine SA v. Giftports, Inc.*,
   758 F.3d 493 (2d Cir. 2014) ................................................................................................... 7

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990) ................................................................................................... 6

Defendants GS Group and Arrow respectfully submit this memorandum of law in further support of their motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' Second Amended Complaint.[1]  GS Group and Arrow also join in the additional relevant arguments set forth in the reply memoranda of law filed today by the other defendants in this action in further support of their motions to dismiss the Second Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition never explains how, even assuming the Second Amended Complaint states a viable claim against Litton with respect to its practices in obtaining LPI, they have provided the requisite factual basis to pierce through multiple layers of corporate ownership to support a claim against GS Group or Arrow.  By Plaintiffs' own admissions, GS Group was the "indirect owner[]" of Litton, and Arrow was the "100% [owner] of Lloyds of London Arrow Syndicate 1910" (the "Lloyds Arrow Syndicate"), the (non-defendant) entity alleged to have reinsured the LPI policies issued by American Modern.  Yet, the Opposition totally ignores the separate corporate status of each of these entities.

The Opposition ignores the admissions in Plaintiffs' own complaint, which acknowledge that status.  And it ignores every cited, long-established, authority that supports the dismissal of claims asserted against corporate parents or affiliates based only vicariously on the alleged acts of affiliates.  Instead, the Opposition, like the Second Amended Complaint, merely conflates the separate entities into a group, thereby violating the bedrock corporate principal, deeply ingrained

---

[1] GS Group and Arrow filed their motion to dismiss on February 20, 2015 (ECF Nos. 150-152).  Unless otherwise indicated, all capitalized terms used herein have the same definitions as in the Memorandum of Law in Support of Motion to Dismiss by Defendants the Goldman Sachs Group, Inc. and Arrow Corporate Member Holdings LLC (ECF No. 152) ("Opening Brief").  References to Plaintiffs' Opposition (ECF No. 167) are cited as "Pls. Opp. at __".

in our economic and legal systems, that separate corporate entities are not liable for the acts of their affiliates or subsidiaries merely because of their legal relationships with one another.

Indeed, Plaintiffs do not attempt to argue, even in conclusory terms, that either GS Group or Arrow's separate corporate forms should be disregarded here. Nor do Plaintiffs set forth any other legal or factual basis that could remotely justify holding either GS Group or Arrow directly or indirectly liable for the acts of which Plaintiffs complain. Plaintiffs' silence is deafening. Their unfounded claims against GS Group and Arrow should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs' Opposition Does Not Identify Any Basis For Including GS Group Or Arrow As Defendants

The Opposition does not contain any section, argument, or even a substantive discussion that provides a basis for including GS Group or Arrow as defendants in this action. Plaintiffs do not (and cannot) dispute that GS Group and Arrow are individual corporate entities organized under Delaware law which are separate and distinct from the other defendants and third parties that actually entered into mortgage agreements with Plaintiffs, serviced Plaintiffs' mortgages, obtained LPI on Plaintiffs' properties, and reinsured those LPI policies. *See* Pls. Opp. at 5-7; *see also* SAC ¶¶ 72-74. Nor do Plaintiffs offer any response to the "general principle of corporate law," cited by GS Group and Arrow, which holds "that a parent corporation . . . is not liable for the acts of its subsidiaries." Opening Brief at 7 (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).[2]

Instead, Plaintiffs make a few vague, passing references to the Am. Modern Consent Order, and otherwise lump GS Group and Arrow together with Litton, American Modern, and

---

[2] Because GS Group and Arrow are both Delaware corporations, SAC ¶¶ 72, 74, their legal separateness from the other defendants in this action is determined based on Delaware law and cannot "be disturbed until sufficient reason appears." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456-62 (2d Cir. 1995).

the Arrow Lloyds Syndicate, as if that justifies ignoring their separate corporate identities and merging them all into a single juridical entity.  The Am. Modern Consent Order, however, provided only that the non-defendant Lloyds Arrow Syndicate "made approximately $120 million nationally from 2008 to 2011 through reinsuring the insurance American Modern placed on homes securing mortgage loans serviced by Goldman Sach's subsidiary Litton Loan Servicing, LP."  SAC, Ex. 2, ¶ 10.[3]  It does not present any factual basis for ignoring the legal separateness of corporate parents and affiliates.

     Notably, Plaintiffs' Opposition does not even attempt to address this Court's recent rejection of a substantially similar attempt to hold GS Group vicariously liable for Litton's actions.  *See DuMont v. Litton Loan Servicing, LP*, No. 12–cv–2677–ER–LMS, 2014 WL 815244, at *20-22 (S.D.N.Y Mar. 3, 2014).  As discussed in our Opening Brief (at 7-8), the Court in *DuMont* ruled that the plaintiffs did "not have any basis on which to bring a direct claim against [GS Group] on any count [because there was] no suggestion that [GS Group] directly contracted with or made promises or representations to any of the Plaintiffs." *Id.* at *18.  The Court also found that the plaintiffs did not allege any indirect basis for suit (such as alter ego or agency liability) because they did not "offer [any] allegations—factual or otherwise—suggesting that Litton existed solely as a sham corporation," *id.* at *21, and because they did not "allege any facts suggesting that [GS Group's] relationship with Litton was anything other than that of a parent and its subsidiary," *id.* at *23.  Yet, despite *DuMont* being discussed at length in our Opening Brief, and despite the fact that it is squarely analogous to this case, Plaintiffs do not even refer to *DuMont* in their Opposition, much less attempt to distinguish it.

---

[3] Furthermore, American Modern "neither admit[ted] nor deni[ed] [the New York State Department of Financial Services'] Findings" when entering into the Am. Modern Consent Order.  SAC, Ex. 2 at 7.  And neither GS Group nor Arrow were parties to the Am. Modern Consent Order.  *Id.* at 23-24.

*DuMont* follows longstanding principles respecting the corporate form. Most recently, this Court again rejected a similar attempt on the part of a different group of plaintiffs to hold GS Group liable for the acts of others and dismissed various federal antitrust and state law claims asserted against GS Group because GS Group was legally distinct from the corporate affiliates involved in the alleged misconduct. *See In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481(KBF), 2015 WL 1344429 (S.D.N.Y. Mar. 23, 2015). In *Aluminum*, as here, the operative complaints contained a "bare number of specific facts as to . . . five [of the] defendants[, including GS Group, and] . . . then purport[ed] to lump [those] defendants together within a grouping with several affiliated companies." *Id.* at *2. While the complaints there alleged that GS Group acted through two subsidiaries and its ownership of two other defendants, the Court noted that "there [were] no factual allegations that [GS Group] failed to observe corporate formalities," and that, "[a]s independent entities, claims against [GS Group were] plausible only if there [were] factual allegations that specifically pertain to [GS Group]—as distinct from those applicable to [its] corporate affiliates—that [were] sufficient to state a claim as to [GS Group] individually." *Id.* at *3. Because plaintiffs failed to "set forth any specific facts that suggest any participation [by GS Group] in the allegedly unlawful conduct," the Court dismissed all claims asserted against it. *Id.*

This Court should reach the same result. Plaintiffs seek to hold GS Group liable for no reason other than that it was the "indirect owner[]" of Litton, and seek to hold Arrow liable solely because it was the "100% [owner] of [the Lloyds Arrow Syndicate]." SAC ¶¶ 73-74. Litton and the non-defendant, the Lloyds Arrow Syndicate, are two separate corporate entities alleged to have engaged in actionable conduct relating to LPI obtained on Plaintiffs' properties. Putting aside all of the reasons identified by other defendants as to why Plaintiffs do not allege

valid claims based on this conduct, the Second Amended Complaint does not contain any factual allegations specifically pertaining to *any* conduct engaged in by GS Group or Arrow, let alone conduct that would give rise to liability, and Plaintiffs do not identify any such conduct in their Opposition.  Plaintiffs cannot obviate the requirement that they identify specific factual allegations relating to GS Group and Arrow simply by lumping them together with corporate affiliates.  *See Aluminum Warehousing Antitrust Litig.*, 2015 WL 1344429, at *3 ("The fact that two separate legal entities may have a corporate affiliation does not alter [federal] pleading requirement[s].  In the absence of allegations that corporate formalities have been ignored, defendants are presumed to be legally separate.").

## II.     Plaintiffs Do Not Contest Many Of GS Group And Arrow's Specific Arguments

Even assuming Plaintiffs had provided a legal and factual basis for piercing multiple corporate veils between GS Group and Arrow and any of the defendants that are alleged to have committed the supposed wrongful acts – which they have not – when measured against any pleading standard, they have still failed to plead a cognizable claim against GS Group or Arrow.

In their Opening Brief, GS Group and Arrow set forth several, dispositive, arguments why Plaintiffs' claims against them should be dismissed.  Specifically, GS Group and Arrow argued, *inter alia*, that they could not be liable for:

- Breach of contract because Plaintiffs did not allege that GS Group or Arrow were parties to Plaintiffs' mortgage agreements, *see* Opening Brief at 8-9;

- Unjust enrichment because Plaintiffs did not allege that GS Group or Arrow received any benefits from Plaintiffs, *see id.* at 9-12;

- Conversion because Plaintiffs did not allege that GS Group or Arrow exercised dominion or control over any of Plaintiffs' property, *see id.* at 12-13;

- Aiding and abetting breach of fiduciary duty because Plaintiffs did not allege that GS Group or Arrow were actually aware of, or substantially assisted in, any of the alleged primary breaches of fiduciary duty, *see id.* at 13-15;

- Alleged violations of the Illinois Consumer Fraud Act because Plaintiffs did not allege that GS Group or Arrow directly participated in any fraudulent or deceitful conduct, and failed to satisfy their obligation under Rule 9(b) of the Federal Rules of Civil Procedure, *see id.* at 15-16; or

- Alleged RICO/RICO conspiracy violations because Plaintiffs did not allege that GS Group or Arrow participated in the "conduct" of the so-called "Litton Force-Placed Insurance Enterprise," and failed to satisfy their obligation under Rule 9(b) of the Federal Rules of Civil Procedure, *see id.* at 16-19.

Plaintiffs did not respond to any of these arguments. Thus, in addition to being dismissed as legally insufficient for the reasons detailed in the Opening Brief, the claims against GS Group and Arrow should also be dismissed because Plaintiffs should be deemed to have abandoned those claims. *See Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").[4]

### III. Plaintiffs Should Not Be Granted Leave To Replead

Plaintiffs filed their initial complaint, in which they named GS Group but not Arrow, on January 23, 2013 (ECF No. 1). Their first amended complaint, in which they joined Arrow, was filed on July 17, 2013 (ECF No. 37), and their second amended complaint was filed on November 19, 2013 (ECF No. 93). The indirect corporate relationships between GS Group, Litton, Arrow, and the Arrow Lloyds Syndicate has been known to Plaintiffs for years, and

---

[4] Plaintiffs also failed to respond meaningfully to GS Group and Arrow's argument that Plaintiffs' Illinois Consumer Fraud Act and RICO/RICO conspiracy claims failed for the separate reason that Plaintiffs' allegations did not satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See* Opening Brief at 15-19. Instead, Plaintiffs only stated, in conclusory terms, that Rule 9(b)'s requirements should be "relaxed" because Plaintiffs are "not in a position to know specific facts until after discovery." Pls. Opp. at 8. The very case Plaintiffs cite in support of this argument, however, specifically notes that "[t]his exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). That is precisely what Plaintiffs do here.

certainly since September, 2011, when GS Group, along with Goldman Sachs Bank USA, entered into the Consent Order with the Board of Governors of the Federal Reserve System, which described GS Group's relationship with Litton as one of "indirect ownership." SAC, Ex. 22 at 2; *see also* SAC, Ex. 2 at 5 (indicating that the Arrow Lloyds Syndicate was an "affiliate of Goldman Sachs"). Moreover, had they named the Arrow Lloyds Syndicate as a defendant, the same arguments set forth in Point II above, and in the Opening Brief, would have been available to it.

In light of Plaintiffs' failure to provide any response to many of the arguments raised by GS Group and Arrow in their motion to dismiss, and no meaningful response to the remaining arguments, and because Plaintiffs have failed to identify any facts which could cure the Second Amended Complaint's numerous identified deficiencies, Plaintiffs' request for leave to replead should be denied. *See, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014). Plaintiffs should not be given a fourth bite at the apple.

**CONCLUSION**

For the foregoing reasons and for the reasons stated in their Opening Brief, GS Group and Arrow respectfully request that the Court enter an order dismissing with prejudice all claims against GS Group and Arrow.

Dated:  April 6, 2015

    /s/ Melvin A. Brosterman

Melvin A. Brosterman
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY  10038-4982
Telephone:  (212) 806-5400
Facsimile:  (212) 806-6006
Email:  mbrosterman@stroock.com

-and-

2029 Century Park East, Suite 1600
Los Angeles, California  90067-3086
Telephone:  (310) 556-5800
Facsimile:  (310) 556-5959

Of Counsel:
   Quinlan D. Murphy
   Benjamin G. Diehl
   Patrick N. Petrocelli
   Wesley M. Griffith

Attorneys for Defendants
THE GOLDMAN SACHS GROUP, INC.
and ARROW CORPORATE MEMBER
HOLDINGS LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 6, 2015, I electronically filed the Reply Memorandum of Law in Support of Motion to Dismiss by Defendants the Goldman Sachs Group, Inc. and Arrow Corporate Member Holdings LLC with the Clerk of the United States District Court for the Southern District of New York through the CM/ECF system, thereby automatically serving all registered parties.

    /s/ Melvin A. Brosterman
    Melvin A. Brosterman