UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMY LYONS, JACQUELINE LYONS, LISA CHAMBERLIN ENGELHARDT, GERALD COULTHURST, ENRIQUE DOMINGUEZ, FRANCES ERVING, JOHNNIE ERVING, ANTHONY PAPAPIETRO, and SHEILA D. HEARD individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>LITTON LOAN SERVICING LP, GOLDMAN SACHS GROUP, INC., ARROW CORPORATE MEMBER HOLDINGS LLC, SAXON MORTGAGE SERVICES, INC., MORGAN STANLEY, OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, LLC, ASSURANT, INC. (d/b/a Assurant Specialty Property), AMERICAN SECURITY INSURANCE COMPANY, STANDARD GUARANTY INSURANCE COMPANY, AMERICAN MODERN INSURANCE GROUP, and AMERICAN MODERN HOME INSURANCE COMPANY,<br><br>    Defendants. | Case No.: 1:13-00513-ALC-HBP |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>LITTON LOAN SERVICING'S MOTION TO DISMISS</u>**

HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY 10166

Counsel for Defendant Litton Loan
Servicing LP

# Table of Contents

I. The Second Amended Complaint does not allege that Litton took any "kickbacks" ...................................................................................................................1

II. Plaintiffs do not address the argument that they had no contract with Litton. ..................................................................................................................3

III. Plaintiffs don't plead that Litton owed them a fiduciary duty. ...........................4

IV. Plaintiffs don't plead that Litton breached FDUTPA. .........................................4

    A. Plaintiffs don't address the fact that FDUTPA doesn't apply to insurance. ..................................................................................................4

    B. Plaintiffs don't plead that Litton was engaged in "trade or commerce" ...............................................................................................4

    C. Plaintiffs don't allege that Litton engaged in deceptive or unfair acts. ..........................................................................................................5

    D. Plaintiffs don't plead FDUTPA causation. ..............................................6

V. Plaintiffs don't plead that Litton breached the Illinois Consumer Fraud Act. ......................................................................................................................6

VI. Plaintiffs have not pleaded a RICO claim against Litton. ..................................7

    A. Plaintiffs have not alleged a RICO enterprise. ........................................7

    B. Plaintiffs have not alleged that Litton participated in the "operation or management" of a RICO enterprise. ....................................................7

    C. Plaintiffs have not adequately alleged a scheme to defraud. ..................8

    D. Plaintiffs have not alleged injury proximately caused by a RICO violation. ...................................................................................................8

    E. Plaintiffs have not alleged a violation of the National Stolen Property Act. ............................................................................................9

VII. Plaintiffs have not pleaded unjust enrichment against Litton. ...........................9

VIII. Plaintiffs have not pleaded a conversion claim against Litton. .........................9

Conclusion ....................................................................................................................10

# Table of Authorities

**Cases**                                                                                                    **Page(s)**

Benjamin v. CitiMortgage, Inc.,
    2013 WL 1891284 (S.D. Fla. May 6, 2013) ........................................................................5

Cannon v. Wells Fargo Bank, N.A.,
    2014 WL 324556 (N.D. Cal. Jan. 29, 2014) ......................................................................10

Circeo-Loudon v. Green Tree Servicing, LLC,
    2014 WL 4219587 (S.D. Fla. Aug. 25, 2014) .....................................................................8

Cohen v. Am. Sec. Ins. Co.,
    735 F.3d 601 (7th Cir. 2013) .............................................................................3 n.3, 6, 9, 10

DOD Techs. v. Mesirow Ins. Servs., Inc.,
    887 N.E.2d 1 (Ill. App. 2008) ............................................................................................7

Environmental Services, Inc. v. Recycle Green Servs., Inc.,
    7 F. Supp. 3d 260 (E.D.N.Y. 2014) ...................................................................................9

Faili v. BAC Home Loans Servicing LP,
    2014 WL 255704 (C.D. Cal. Jan. 23, 2014) ...................................................................3 n.5

Feaz v. Wells Fargo Bank, N.A.,
    745 F.3d 1098 (11th Cir. 2014) ................................................................................3 n.3, 6 n.7

Laffan v. Santander Bank, N.A.,
    2014 WL 2693158 (E.D. Pa. June 12, 2014) ..................................................................3 n.5

Lauren v. PNC Bank, N.A.,
    2013 WL 5565511 (W.D. Pa. Oct. 8, 2013) ..................................................................3 n.5, 4

Mahdavieh v. SunTrust Mortg., Inc.,
    2014 WL 1365425 (S.D. Fla. Apr. 7, 2014) ..............................................................3 n.5, 4, 10

Martorella v. Deutsche Bank Nat. Trust Co.,
    931 F. Supp. 2d 1218 (S.D. Fla. 2013) .........................................................................6 n.7

Miller v. Wells Fargo Bank N.A.,
    994 F. Supp. 2d 542 (S.D.N.Y. 2014) ...............................................................................7

Persaud v. Bank of Am., N.A.,
    2014 WL 4260853 (S.D. Fla. Aug. 28, 2014) ..............................................................3 n.5, 4

Reeves v. Ernst & Young,
    507 U.S. 170 (1993) ...........................................................................................................7

Schauer v. Gen. Motors Acceptance Corp.,
    819 So. 2d 809 (Fla. 4th DCA 2002) ...................................................................................5 n.6

Simpkins v. Wells Fargo Bank, N.A.,
    2013 WL 4510166 (S.D. Ill. Aug. 26, 2013) .......................................................................3 n.5

U1IT4less, Inc. v. FedEx Corp.,
    896 F. Supp. 2d 275 (S.D.N.Y. 2012) ........................................................................................7

Wilson v. Everbank, N.A.,
    2015 WL 265648 (S.D. Fla. Jan. 6, 2015) ............................................................................4, 8

I.  **The Second Amended Complaint does not allege that Litton took any "kickbacks."**

Litton's initial memorandum pointed out that Plaintiffs' Second Amended Complaint does not allege that <u>Litton</u> received any of the supposed "kickbacks" on which Plaintiffs base their theory of Defendants' liability. (Litton Mem. at 3-7, 11-12.) Instead, that pleading bundles Litton into what Plaintiffs call the "Loan Servicing Defendants," and then makes allegations concerning that group: nothing at all is alleged about Litton receiving "kickbacks."

In light of Litton's argument that Plaintiffs have not pleaded that Litton received "kickbacks," one might have expected Plaintiffs' memorandum to attempt to identify the precise paragraphs of their pleading where they allege that Litton <u>specifically</u>, and not the "Loan Servicing Defendants" generally, took such "kickbacks." But Plaintiffs do not attempt such a showing. All they offer by way of rebuttal to Litton's argument is the following:

— "Defendant Litton Loan Servicing, LP ("Litton") . . . participat[ed] in a scheme with American Modern Insurance Group and its affiliates." (Pl. Mem. at 1). No supporting citation is made to the Second Amended Complaint.

— "Litton . . . improperly charged borrowers not just the cost of insurance, but also for kickbacks disguised as reinsurance, loan servicing functions, and/or other compensation under the guise of 'insurance.'" (Id. at 2.) No supporting citation is made to the Second Amended Complaint.

— "Litton's kickback scheme worked as follows . . . ." (Id.) But none of the references to the Second Amended Complaint in the text following this assertion[1] alleges that Litton took "kickbacks."

— "Litton unlawfully included in the amounts charged to borrowers as FPI not just the cost to insure the property, but also charges associated with these loan servicing functions." (Id. at 3.) Here there is a citation to the pleading: ¶¶ 15-16. But

---

[1]  SAC ¶¶ 10, 18, 20, 74, 99-101, 103, 108, 205, 282.

neither of these paragraphs mentions Litton: they again make allegations about the "Loan Servicing Defendants."[2]

— "American Modern provided Litton and its affiliate kickbacks in at least two forms: (1) cash payments funneled back to Litton's affiliates, Goldman Sachs and Arrow, through illusory reinsurance agreements, and (2) routine loan servicing functions surreptitiously charged to borrowers." (Pl. Mem. at 3.)  There is no citation to the pleading.

— "Litton and Goldman Sachs have used their relationships with American Modern and Arrow to improperly generate unauthorized income through kickbacks disguised as legitimate insurance charges." (Id. at 6.)  Here Plaintiffs cite to ¶¶ 74 and 294 of their Second Amended Complaint.  But the former paragraph doesn't allege that Litton received "kickbacks": it refers only to Goldman and Arrow receiving "illusory reinsurance payments" for reinsuring insurance American Modern placed on properties serviced by Litton.  And the latter paragraph only alleges a "scheme to force-place borrowers serviced by the Loan Servicing Defendants in unnecessary, duplicative and exorbitantly priced force-placed insurance and tracking services sold by the Insurer Defendants, in exchange for kickbacks, sham commissions, fees for sham services and 'rebates' paid to the Loan Servicing Defendants." (Emphasis added.)

— Finally, under the heading "Plaintiffs Plausibly Allege a Kickback Scheme," Plaintiffs state that "Litton and its affiliates conspired with American Modern to funnel kickbacks to Litton and its affiliates . . . ." (Pl. Mem. at 7.)  No citation to the Second Amended Complaint is provided.

Plaintiffs' response to Litton's argument shows that argument to be correct: the reason Plaintiffs have not identified any allegations in the Second Amended Complaint that Litton received "kickbacks" is because there are no such allegations.  But Plaintiffs' case against Litton

---

[2] "15.   The charges paid by and/or assessed to Plaintiffs and members of the proposed Classes also include amounts not attributable to the cost of insuring the property but, instead, include charges associated with tracking and/or monitoring all the loans serviced by the respective Loan Servicing Defendants.
"16.   However, the Loan Servicing Defendants and other loan servicers are already compensated for tracking and monitoring loan portfolios as part of their servicing functions." (Emphasis in original.)

is predicated in its entirety on their claim that Litton took "kickbacks." (E.g. Pl. Mem. at 3: "American Modern provided Litton and its affiliate kickbacks in at least two forms . . .") Without any allegations that Litton received any "kickbacks," all Plaintiffs' claims against Litton should be dismissed.[3]

## II. Plaintiffs do not address the argument that they had no contract with Litton.[4]

Ms. Heard's and Mr. and Mrs. Lyons' mortgage agreements show that neither Litton nor any other servicer was a party to those agreements. And there is overwhelming case law rejecting any theory that makes a servicer an implied party to a mortgage agreement. (Litton Mem. at 12-13.) Plaintiffs simply do not address the fact that Litton is not a party to the mortgage agreements, and they do not address the many cases Litton cited on this point. All that Plaintiffs do is cite to a number of LPI cases in which courts have not dismissed breach of contract claims. (Pl. Mem. at 15-17.) But in almost all of these cases the contract claim was either against a lender -- who is obviously a party to the mortgage agreement -- or a close affiliate of the lender, and none of these cases addressed the argument that the servicer is not a party to the mortgage.[5] Without a contract, the claims for breach of contract and for breach of the implied covenant of good faith must be dismissed.

---

[3] Nor do Plaintiffs plead facts from which to conclude that these supposed "kickbacks" -- commissions, fees, etc. -- are barred by contract or by state or federal regulation or law. Rather, they rely solely on the pejorative label "kickback," but both the Seventh and Eleventh Circuits (in Cohen and Feaz) have rejected such pleading.

[4] We discuss Plaintiffs' claims in the order in which they are pleaded in the Second Amended Complaint (the same order in which Litton addressed them in its initial memorandum).

[5] See Persaud (cited at Pl. Mem. at 15) (denying motion to dismiss contract claim by lenders BOA and U.S. Bank); Mahdavieh (id.) (not addressing argument that servicer was not a party to plaintiff's mortgage); Simpkins (id. at 16) (Wells Fargo was loan originator and servicer); Laffan (id. at 16 n.11) (Santander Bank was lender); Faili (id.) (Bank of America was lender and servicer); Lauren (id.) (PNC Bank was loan originator and servicer).

### III. Plaintiffs don't plead that Litton owed them a fiduciary duty.

Plaintiffs argue that in certain special circumstances a fiduciary relationship might be found to exist "between lender and borrower." (Pl. Mem. at 19.) Perhaps, but Litton wasn't a lender: it was a servicer hired by the lender to act for the lender. As Litton pointed out in its initial memorandum, the "cycle letters" to Plaintiffs show that Litton was acting for the lenders in placing LPI, and not for the borrowers on whose properties LPI was placed. (Litton Mem. at 13-14.) Plaintiffs don't discuss the "cycle letters" or how they undercut their breach of fiduciary duty claim (but they don't dispute that the Court can consider the these letters on this motion). Instead, they assert that "Litton took on 'extra services' as escrow agent with extensive control" (Pl. Mem. at 19), as though by reciting formulaic phrases from other cases they can turn a blind eye to the facts of this case. Nor do Plaintiffs' citations to Persaud, Lauren and Mahdavieh (id. at 19-20) help their argument, for, unlike here, in none of these cases did the defendant demonstrate that communications with the borrower (such as the "cycle letters" here) disproved the existence of a fiduciary relationship. As the Court held in Wilson (decided after the cases Plaintiffs cite), such a demonstration supports dismissal. Wilson v. Everbank, N.A., 2015 WL 265648, at *12 (S.D. Fla. Jan. 6, 2015) (dismissing breach of fiduciary duty claim when pleading showed that LPI was placed to protect the lender).

### IV. Plaintiffs don't plead that Litton breached FDUTPA.

#### A. Plaintiffs don't address the fact that FDUTPA doesn't apply to insurance.

FDUTPA doesn't apply to matters relating to insurance. (Litton Mem. at 15.) Plaintiffs are silent about this threshold problem with their claim.

#### B. Plaintiffs don't plead that Litton was engaged in "trade or commerce."

Litton bought LPI to insure the lenders' interests in the properties securing Plaintiffs' loans, and then sought reimbursement of the premium amounts from Plaintiffs. Litton wasn't

buying anything for, or selling anything to, Plaintiffs, and so in charging Plaintiffs for LPI Litton was not "conduct[ing] . . . trade or commerce." (Litton Mem. at 15-16.) Plaintiffs don't discuss the authorities Litton cited on this point, but instead cite to <u>Benjamin v. CitiMortgage, Inc.</u>, 2013 WL 1891284 (S.D. Fla. May 6, 2013), in which the court <u>granted</u> a motion to dismiss a FDUTPA claim against a mortgage servicer for failure to plead the "trade or commerce" element, observing that the "'trade or commerce' requirement is often not met in cases dealing with borrowers alleging FDUPTA violations against mortgage servicers" because servicers do not "advertise, solicit, provide, offer or distribute" anything to the borrowers whose loans they service. <u>Id.</u> **4-5. Rather, servicers "enforce the terms of [the borrower's] mortgage." <u>Id.</u> *5.[6] Plaintiffs contend that Litton did more than enforce the terms of the mortgages because it charged for amounts greater than it was entitled to. (Pl. Mem. at 23.) But this argument makes no sense: an act taken to enforce the terms of a borrower's mortgage doesn't become an act in "trade or commerce" just because the borrower contends that the enforcement was unjustified.

    C.    **Plaintiffs don't allege that Litton engaged in deceptive or unfair acts.**

Plaintiffs' one-sentence response to the argument that they haven't pleaded a FDUTPA deceptive or unfair act (Pl. Mem. at 22) says far too little to rescue their FDUPTA claim. Even apart from their failure to allege that Litton received any "kickbacks," they don't address the fact that they were told by Litton that an affiliate would receive reinsurance premiums (Litton Mem. at 16); that Litton did not coerce Plaintiffs into breaching their mortgage commitment to maintain their own insurance (<u>id.</u> at 16-17); that Florida law requires Plaintiffs to show that they

---

[6] In <u>Benjamin</u>, CitiMortgage had "obtained a legal interest in a mortgage note from a third party lender." <u>Id.</u> *5. Litton had no such interest in Plaintiffs' notes or mortgages. Plaintiffs also cite <u>Schauer</u> which held that a lender-borrower relationship satisfied the "trade or commerce" requirement. (Pl. Mem. at 22.) But of course a lender provides a service to a borrower -- the loan. In arranging LPI, Litton provided a service to the Plaintiffs' <u>lenders</u>, not to the Plaintiffs.

could not have avoided the alleged injury (for example, by continuing to pay for their own insurance as they undertook to do) (id. at 17); or that both Courts of Appeal to have addressed LPI claims have held that there were no "kickbacks" of the sort Plaintiffs here allege (id. at 17-18).[7]

### D. Plaintiffs don't plead FDUTPA causation.

Plaintiffs contend that they adequately plead FDUPTA causation because they allege that Litton's supposed (but unpleaded) acceptance of "kickbacks" caused them to pay more for LPI than they would have done without the kickbacks. (Pl. Mem. at 22.) But this contention is belied by the "cycle letters," for when Plaintiffs were told in those letters that LPI was being placed, and the cost of that LPI, and that an affiliate of Litton would receive a reinsurance premium, Plaintiffs did not reinstate their own insurance -- even though they contend it was cheaper -- but continued with LPI coverage.

### V. Plaintiffs don't plead that Litton breached the Illinois Consumer Fraud Act.

Remarkably, Plaintiffs discuss their Illinois CFA claim without mentioning the Seventh Circuit's decision in Cohen. The allegations in Cohen are substantially identical to those made by Plaintiffs, and the reasoning in Cohen applies with full force here. (See Litton Mem. at 16-19.) Plaintiffs make no attempt to show that the result here should be any different. (Plaintiffs mention Cohen only once in their memorandum, where they say that it and the Eleventh Circuit's decision in Feaz "have been widely distinguished as outliers decided on their own unique pleading deficiencies." (Pl. Mem. at 7.) But they nowhere attempt to describe how the pleading deficiencies in Cohen differ from their own pleading. The fact is that there are no material

---

[7] Plaintiffs offer a block quote from the Martorella opinion (Pl. Mem. at 22), but that decision came before the Eleventh Circuit's LPI ruling in Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098 (11th Cir. 2014). A motion to dismiss an amended pleading is currently pending in Martorella, citing Feaz and other recent case law.

differences.) Nor do Plaintiffs address DOD Techs (see Litton Mem. at 19), which dismissed a CFA claim because the plaintiff did not plead that it would not have used the defendants' service had it known of a commission arrangement. Likewise here, Plaintiffs have not alleged that they would not have entered into their mortgages if they had known of the reinsurance premiums paid to Arrow.

VI. **Plaintiffs have not pleaded a RICO claim against Litton.**

    A. **Plaintiffs have not alleged a RICO enterprise.**

In Miller v. Wells Fargo Bank N.A., 994 F. Supp. 2d 542 (S.D.N.Y. 2014) this Court recently dismissed a RICO LPI claim which, like Plaintiffs' claim, alleged an enterprise defined to include "other insurance producers and entities involved in force-placing insurance on behalf of [the defendants]," on the ground that merely listing a string of entities doesn't adequately allege a RICO enterprise. (Litton Mem. at 21). Plaintiffs don't address this argument (they mention Miller only once, in a different context.)

    B. **Plaintiffs have not alleged that Litton participated in the "operation or management" of a RICO enterprise.**

Plaintiffs acknowledge that they are required to plead that Litton participated in the "operation or management" of the supposed RICO enterprise, "not just their own affairs." (Pl. Mem. at 14, citing Reeves v. Ernst & Young, 507 U.S. 170, 183 (1993).) But because they don't allege that Litton took any "kickbacks," all they allege is that Litton placed LPI on their properties -- an action taken in the course of its normal activities as loan servicer. (Plaintiffs' citation at page 15 of their memorandum to U1IT4less, Inc. v. FedEx Corp., 896 F. Supp. 2d 275 (S.D.N.Y. 2012), is beside the point, for that case addresses the existence of an enterprise, not whether a plaintiff has sufficiently alleged participation in the enterprise.)

C. **Plaintiffs have not adequately alleged a scheme to defraud.**

Plaintiffs acknowledge that they must plead facts "giv[ing] rise to a strong inference of fraudulent intent." (Pl. Mem. at 9.) But Plaintiffs fall far short of this requirement. Thus, their allegation that the reinsurance agreement American Modern had with Arrow Syndicate was "illusory" is unsupported by any facts at all. Because this allegation is inadequately pleaded, Plaintiffs have not pleaded an intent to defraud. And, of course, Plaintiffs have not pleaded fraudulent intent against Litton for they haven't pleaded that Litton received any "kickbacks." Plaintiffs' further argument that some other courts have allowed RICO LPI claims to proceed is beside the point: these decisions were made on the basis of different pleadings, and the fact that these different pleadings managed to plead a strong inference of fraudulent intent against the defendants in those cases has no bearing on whether Plaintiffs' Second Amended Complaint has pleaded facts supporting such an inference against Litton or the other defendants here.

D. **Plaintiffs have not alleged injury proximately caused by a RICO violation.**

Plaintiffs argue that Litton's supposed fraud proximately caused injury because Litton's mailings to Plaintiffs "misstated the amounts" they were obliged to pay and "also included unlawful and concealed charges and illicit profits." (Pl. Mem. at 13.) Suppose, though, contrary to fact, that Plaintiffs had adequately pleaded that there had been "unlawful and concealed charges," and suppose too that Litton had told Plaintiffs in the "cycle letters" about these supposed charges. What then would Plaintiffs have done: reinstated their own insurance? refused to pay the LPI charge? paid the LPI charge? Plaintiffs don't answer this question (likely because the answer is going to differ from borrower to borrower and so will prevent class certification). They therefore haven't pleaded RICO causation. (Plaintiffs address <u>Wilson</u> and <u>Circeo-Loudon</u> (discussed at Litton Mem. at 23) in a footnote (Pl. Mem. at 13 n.10) which refers to page 14 of their <u>Saxon</u> memorandum, where they contend that those decisions were the

consequence of "unique pleading deficiencies," but they make no attempt to identify how the pleadings in those cases differ from the Second Amended Complaint in such a way as to make the cases not relevant here.)

    E.    **Plaintiffs have not alleged a violation of the National Stolen Property Act.**

Plaintiffs do not respond to the arguments Litton made concerning the NSPA. (See Litton Mem. at 23-24.) (Plaintiffs argue only that funds can be "pooled" to reach the $5,000 requirement, but their argument rests on a case (Environmental Services, Inc. v. Recycle Green Servs., Inc., 7 F. Supp. 3d 260 (E.D.N.Y. 2014),) where the pooling was of amounts alleged to have been taken from a single plaintiff, not a pooling of amounts across class members.)

**VII.**    **Plaintiffs have not pleaded unjust enrichment against Litton.**

Plaintiffs acknowledge that one element of unjust enrichment is that the plaintiff conferred a benefit on the defendant. (Pl. Mem. at 17.) The benefits in question are the supposed "kickbacks," Plaintiffs claim. But not having pleaded that Litton received such "kickbacks," Plaintiffs have not pleaded that Litton was unjustly enriched.

**VIII.**    **Plaintiffs have not pleaded a conversion claim against Litton.**

Plaintiffs acknowledge that to plead conversion they must seek recovery of a "specific and identifiable" pool of money, and they cite an LPI case (Mahadavieh) where the court dismissed an LPI conversion claim because the plaintiff sought money damages, not the return of any specific funds. (Pl. Mem. at 20-21.) But, they argue, their claim should not be dismissed because "data necessary to calculate these amounts can only be known to the Lyons through discovery." (Id.) But this misses the point: conversion doesn't just require an exact calculation, it requires a specific pool of money -- as the Seventh Circuit put it in Cohen in dismissing an LPI case under Illinois law, the money "must be capable of being described as a specific chattel."

(Litton Mem. at 24-25.)  Plaintiffs here are seeking damages, not a specifically identifiable pool of money, so conversion is not available to them.

Plaintiffs argue that they have identified specific funds that were converted -- funds in their mortgage escrow accounts.  (Pl. Mem. at 21-22.)  But they are not seeking the return of specific funds sitting in an escrow account; rather, they are seeking damages in an amount equal to the "kickbacks" they allege the "Loan Servicing Defendants" received.  These damages are not to be found residing in some fund awaiting return to Plaintiffs.  In fact, as Litton pointed out in its initial memorandum, far from being a pool of money waiting to be claimed by its rightful owner, Plaintiffs' escrow accounts recorded negative values.  There's no specific pool of money here, so no conversion claim.  Plaintiffs also agree that conversion requires a plaintiff to have an absolute and unconditional right to the property.  (Id. at 21.)  But they don't allege any such right; moreover, they cannot, for they were required by their mortgages to make payments to the escrow accounts.  (Litton Mem. at 25.)

Finally, Plaintiffs cite some LPI cases where courts outside of Florida and Illinois have not dismissed conversion claims, but they don't address Cohen, where the Seventh Circuit dismissed an LPI conversion claim under Illinois law, and they themselves cite Mahdavieh, where the court dismissed an LPI conversion claim under Florida law.  (Cannon also applied Florida law but the defendants there didn't argue that the conversion claim was barred by Florida's restriction of that claim to recovery for "specific and identifiable money.")

## Conclusion

For the reasons stated above, and for the reasons stated in the other Defendants' motions to dismiss, which Litton incorporates herein, Plaintiffs' Second Amended Complaint should be dismissed for failure to state a claim against Litton.

Dated:  April 6, 2015

Respectfully submitted,

By:  <u>  Brian V. Otero                          </u>
Brian V. Otero
botero@hunton.com
Stephen R. Blacklocks
sblacklocks@hunton.com
Ryan A. Becker
rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
Telephone:  212-309-1000
Fax:  212-309-1100

Counsel for defendant Litton Loan Servicing LP

- 11 -