**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIMMY LYONS, *et al.*, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:13-cv-513-ALC-HBP |
| v. | |
| LITTON LOAN SERVICING LP, *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF MOTION TO DISMISS BY DEFENDANTS**
**SAXON MORTGAGE SERVICES, INC. AND MORGAN STANLEY**

MORGAN, LEWIS & BOCKIUS LLP
399 Park Avenue
New York, New York  10022
Tel:  (212) 705-7000
Fax:  (212) 752-5378

*Attorneys for Defendants Saxon Mortgage Services, Inc. and Morgan Stanley*

# TABLE OF CONTENTS

**Page**

I.   THE ERVINGS' "KICKBACK" THEORY IS UNSUPPORTED BY ANY WELL-PLED FACTUAL ALLEGATIONS ........................................................................ 1

II.   THE RICO CLAIMS FAIL AS A MATTER OF LAW ........................................ 2

III.   THE COMMON LAW CLAIMS FAIL AS A MATTER OF LAW .................... 6

IV.   THE FDUTPA CLAIM FAILS AS A MATTER OF LAW ............................... 9

V.   ALL THE ERVINGS' CLAIMS FAIL AGAINST MORGAN STANLEY ...................... 10

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

Arnett v. Bank of Am., N.A.,
  874 F. Supp. 2d 1021 (D. Or. 2012) ......................................................................8

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)..........................................................................................2

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)..........................................................................................2

Benjamin v. CitiMortgage, Inc.,
  2013 WL 1891284 (S.D. Fla. May 6, 2013) ........................................................9

Black Radio Network, Inc. v. NYNEX Corp.,
  44 F. Supp. 2d 565 (S.D.N.Y. 1999).................................................................3

Bridge v. Phoenix Bond & Indemnity Co.,
  553 U.S. 639 (2008).........................................................................................5

Cannon v. Wells Fargo Bank N.A.,
  917 F. Supp. 2d 1025 (N.D. Cal. 2013) ..........................................................6, 8

Casey v. Citibank, N.A.,
  915 F. Supp. 2d 255 (N.D.N.Y. 2013)................................................................8

Circeo-Loudon v. Green Tree Servicing, LLC,
  2014 WL 4219587 (S.D. Fla. Aug. 25, 2014)..........................................3, 5-6, 7

Cohen v. Am. Sec. Ins. Co.,
  735 F.3d 601 (7th Cir. 2013) ............................................................................5

Edwards v. Ocwen Loan Servicing, LLC,
  24 F. Supp. 3d 21 (D.D.C. 2014)......................................................................6

Ellsworth v. U.S. Bank, N.A.,
  908 F. Supp. 2d 1063 (N.D. Cal. 2012) .............................................................2

Envtl. Servs., Inc. v. Recycle Green Servs., Inc.,
  7 F. Supp. 3d 260 (E.D.N.Y. 2014) ...................................................................5

Gustafson v. BAC Home Loans Servicing, LP,
  2012 WL 7051318 (C.D. Cal. Dec. 20, 2012) .....................................................4

Hoover v. HSBC Mortg. Corp. (USA),
    9 F. Supp. 3d 223 (N.D.N.Y. 2014) ........................................................................2, 8

Kehoe v. Aurora Loan Servs. LLC,
    2010 WL 4286331 (D. Nev. Oct. 20, 2010) ...............................................................6

LaCroix v. U.S. Bank, N.A.,
    2012 WL 2357602 (D. Minn. June 20, 2012) .............................................................2

Lane v. Wells Fargo Bank, N.A.,
    2013 WL 3187410 (N.D. Cal. June 21, 2013) ............................................................8

Lomboy v. SCME Mortg. Bankers,
    2009 WL 1457738 (N.D. Cal. May 26, 2009) ............................................................6

Mahdavieh v. Suntrust Mortg., Inc.,
    2014 WL 1365425 (S.D. Fla. Apr. 7, 2014) ...........................................................8-9

Martorella v. Deutsche Bank Nat'l Trust Co.,
    931 F. Supp. 2d 1218 (S.D. Fla. 2013) ......................................................................9

McKenzie v. Wells Fargo Home Mortg., Inc.,
    2012 WL 5372120 (N.D. Cal. Oct. 30, 2012) ............................................................2

Meyer v. One W. Bank, F.S.B.,
    --- F. Supp. 3d ----, 2015 WL 1222402 (C.D. Cal. Mar. 18, 2015) ..........................5

Miller v. Wells Fargo Bank, N.A.,
    994 F. Supp. 2d 542 (S.D.N.Y. 2014) .......................................................................2

Montoya v. PNC Bank, N.A.,
    2015 WL 1311482 (S.D. Fla. Mar. 23, 2015) .........................................................3, 5

In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.,
    491 F.3d 638 (7th Cir. 2007) ....................................................................................6

Perryman v. Litton Loan Servicing, LP,
    2014 WL 4954674 (N.D. Cal. Oct. 1, 2014) ..............................................................3

Persaud v. Bank of Am., N.A.,
    2014 WL 4260853 (S.D. Fla. Aug. 28, 2014) ............................................................8

Rothstein v. GMAC Mortg., LLC,
    2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013) ...........................................................3

Schauer v. Gen. Motors Acceptance Corp.,
    819 So. 2d 809 (Fla. Dist. Ct. App. 2002) .................................................................9

Trent v. Mortg. Elec. Registration Sys., Inc.,
  618 F. Supp. 2d 1356 (M.D. Fla. 2007), aff'd, 288 F. App'x 571 (11th Cir.
  2008) ...................................................................................................................9

United States v. Bestfoods,
  524 U.S. 51 (1998).........................................................................................10

Virgilio v. Ryland Grp., Inc.,
  680 F.3d 1329 (11th Cir. 2012) .......................................................................7

Wilson v. Everbank, N.A.,
  --- F. Supp. 3d----, 2015 WL 265648 (S.D. Fla. Jan. 6, 2015) ............................5, 8

**Statutes**

18 U.S.C. § 2314 ...................................................................................................5

Fla. Stat. Ann. § 501.212(4)...................................................................................9

Defendants Saxon and Morgan Stanley respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss.[1]

## I.  THE ERVINGS' "KICKBACK" THEORY IS UNSUPPORTED BY ANY WELL-PLED FACTUAL ALLEGATIONS

In response to the motion to dismiss filed by Saxon and Morgan Stanley, the Ervings outright abandon two of the three theories of liability set forth in the SAC (i.e., their so-called "excessive coverage" and "backdating" theories), which should be dismissed with prejudice. Opp. at 2 n.4.  Saxon challenged the Ervings' allegation that Saxon received "kickbacks" (in the form of alleged unearned commissions or reinsurance payments), as based exclusively on news articles, public testimony and other documents that fail to mention and are unrelated in any way to *Saxon*.[2]  In response, the Ervings fail to identify any factual allegations to support their assertion that Saxon—*as opposed to other unrelated servicers*—received any commissions or reinsurance payments.

Unable to support their allegations against Saxon, the Ervings now claim that their "kickback" theory is based upon "factual allegations regarding *ASIC's* irrefutable participation in such practices."  Opp. at 3 (emphasis added); see also id. at 7-8.  This is the very definition of conclusory pleading and it wholly fails to comport with Federal Rule 8, much less the more

---

[1]  Capitalized terms used here but not defined have the meanings ascribed to them in the Memorandum of Law in Support of Motion to Dismiss by Defendants Saxon Mortgage Services, Inc. and Morgan Stanley ("Saxon Br.") (ECF No. 162).  Plaintiffs' Memorandum of Law in Opposition to the Saxon Defendants' and Assurant Defendants' Motions to Dismiss is referred to as "Opp" (ECF No. 166).

[2]  The Ervings contend that Saxon wrongly asserted that courts around the country have uniformly upheld dismissal of LPI theories.  Opp. at 6.  That conveniently misstates Saxon's argument.  What Saxon did assert is that every *Court of Appeals* to have examined LPI theories in the past two years has uniformly upheld dismissal of such claims.  Saxon Br. at 7 (collecting cases).  The Ervings do not (and cannot) argue otherwise.

rigorous standard that applies here under Federal Rule 9(b).[3]   See LaCroix v. U.S. Bank, N.A.,
2012 WL 2357602, at *5-6 (D. Minn. June 20, 2012) (dismissing LPI claims and holding that
allegations that "nonparty ASIC has engaged in kickback schemes with other lenders, without
specific facts regarding LaCroix's insurance policy or U.S. Bank's protocol regarding force-
placed insurance, is purely speculative and not sufficient to state a claim for relief"); McKenzie
v. Wells Fargo Home Mortg. Inc., 2012 WL 5372120, at *19-20 (N.D. Cal. Oct. 30, 2012)
(dismissing "bare conclusory factual allegations that Defendants received kickbacks and
unearned commissions from force-placing and backdating excessively priced insurance").[4]

## II.     THE RICO CLAIMS FAIL AS A MATTER OF LAW

In its opening brief (at 11-17), Saxon demonstrated that the Ervings' RICO claims fail for
four reasons, each of which is sufficient to require dismissal of the RICO claims.  The Ervings
fail to rebut any of them.

*No enterprise*.  The Ervings do not dispute that their allegations of a RICO enterprise are
nearly identical to the allegations that were soundly rejected by the court in Miller v. Wells
Fargo Bank, N.A., 994 F. Supp. 2d 542, 555 (S.D.N.Y. 2014), which held that a plaintiff must
explain "*each* participant's role in the alleged course of fraudulent or illegal conduct" and that

---

[3]     The Ervings do not dispute that their "kickback" theory sounds in fraud and is subject to the
heightened pleading requirements of Federal Rule 9(b).  Opp. at 7.  For this reason, the Ervings' reliance
on Ellsworth v. U.S. Bank, N.A., 908 F. Supp. 2d 1063, 1073, 1083 (N.D. Cal. 2012), which upheld
"kickback" allegations under Federal Rule 8, is misplaced.  The Ervings also rely on Hoover v. HSBC
Mortgage Corp. (USA), 9 F. Supp. 3d 223 (N.D.N.Y. 2014), in arguing that their "kickback" claims are
sufficiently pled.  Opp. at 6.  But the complaint at issue in Hoover contains key allegations about the
alleged kickback scheme between HSBC and ASIC that are notably absent here.  Plaintiff in Hoover
alleged that as part of the kickback scheme, HSBC's insurance affiliate, HSBC Insurance Company of
Delaware, entered into a reinsurance agreement with certain Assurant-related entities.  See Class Action
Complaint at ¶¶ 54-55, Hoover v. HSBC Mortg. Corp. (USA), No. 13-149 (N.D.N.Y. Feb. 8, 2013) (ECF
No. 1).  Here, on the other hand, it is undisputed that Saxon had no reinsurance affiliate.

[4]     To the extent the Ervings seek to base their claims instead on Saxon's alleged receipt of
purportedly "below-market" services, their allegations fail to meet even the basic pleading requirements
of Federal Rule 8 as articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

the "conclusory naming of a string of entities does not adequately allege an enterprise."  Unable to articulate any reason why the court's holding in <u>Miller</u> should not also apply here, the Ervings instead point to the Northern District of California's decision in <u>Perryman v. Litton Loan Servicing, LP</u>, 2014 WL 4954674 (N.D. Cal. Oct. 1, 2014), for the proposition that they cannot be expected to know the "exact names" of every entity involved, especially in light of the stay of discovery in this action.   Opp. at 15.   This argument is meritless.   "Plaintiffs are not entitled . . . to conduct discovery to discover facts that would establish a RICO enterprise." <u>Black Radio Network, Inc. v. NYNEX Corp.</u>, 44 F. Supp. 2d 565, 581 n.6 (S.D.N.Y. 1999).

***Saxon did not direct the affairs of an enterprise***.   The Ervings concede that they are required to plead that Saxon had a role in directing the alleged enterprise's affairs.  Opp. at 15. Although the Ervings contend that Saxon was a "vital actor," they do not cite any allegations from the SAC supporting that assertion.   To the contrary, the SAC alleges only that Saxon obtained LPI through ASIC.  SAC ¶ 230(a)-(f).  As the court held in <u>Circeo-Loudon v. Green Tree Servicing, LLC</u>, 2014 WL 4219587, at *4 (S.D. Fla. Aug. 25, 2014), performing "normal business activities" does not constitute participation in the operation or management of a RICO enterprise.   The Ervings' conclusory allegation that Saxon "abused" its authority when obtaining LPI for borrowers does nothing to change this result.   See <u>id.</u>

***No racketeering activity***.   The Ervings' opposition brief makes clear that their mail and wire fraud allegations depend entirely on whether they have sufficiently alleged their "kickback" theory, which fails for the reasons explained above.   See, <u>supra</u>, Part I.[5]  In addition, the Ervings

---

[5]   The Ervings' RICO arguments rely heavily on the court's decision in <u>Rothstein v. GMAC Mortgage, LLC</u>, 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013), which is on appeal to the Second Circuit and scheduled to be heard on May 1, 2015.  See <u>Rothstein v. GMAC Mortg., LLC</u>, No. 14-2250 (2d Cir.). In addition, although the court in <u>Montoya v. PNC Bank, N.A.</u>, 2015 WL 1311482, at *15 (S.D. Fla. Mar. 23, 2015), upheld the ***fourth*** version of the complaint in that action, the RICO claim survived by a "razor-

argue that even if the letters they received did not contain any false statements, they can nevertheless prevail because the letters were intended "to lull the victims into a false sense of a security."  Opp. at 10.  But if the Ervings cannot identify a false statement in the letters, then they have not identified *any* allegedly false statements in support of their RICO claims and they must be dismissed for this reason alone.  See Gustafson v. BAC Home Loans Servicing, LP, 2012 WL 7051318, at *6 (C.D. Cal. Dec. 20, 2012) ("A scheme to defraud requires an affirmative, material misrepresentation or the nondisclosure of facts where there exists an independent duty to disclose") (citation and quotation omitted).[6]  In any event, the Ervings' assertion that the letters were intended to "lull" them into inaction is utter nonsense.  Those letters "**strongly urge[d] [the Ervings] to contact an agent of [their] choice to obtain the coverage [they] need at a more competitive price**."  SAC Ex. 40 (emphasis in original).  The Ervings never explain (nor could they) how these words could be interpreted to suggest that they do nothing.

In arguing that Saxon acted with an intent to defraud, the Ervings again ignore the actual content of the letters sent to them, which (a) warned the Ervings that their previous policy was expiring and, if they did not procure their own insurance, Saxon would obtain a policy for them; (b) identified the exact premium amount the Ervings would be charged; (c) warned the Ervings that the premium amount may be higher than what they otherwise could obtain; and (d) urged the Ervings to obtain insurance at a more competitive rate.  SAC Exs. 38, 40.  Yet another court recently rejected plaintiff's "tortured interpretation of relatively straightforward language" and joined those courts that have concluded that such disclosures are "incompatible with allegations

thin margin," notwithstanding that the court found the allegations both "problematic and not intuitively logical."

6       The Ervings do not attempt to establish that Saxon had a duty to disclose. Opp. at 10. Accordingly, Saxon cannot be liable for any alleged omissions.

of a scheme intended to deceive."[7]   Meyer v. One West Bank, F.S.B., --- F. Supp. 3d ----, 2015 WL 1222402, at *5 (C.D. Cal. Mar. 18, 2015); see also Saxon Br. at 16.  The same result follows here.[8]

**No causation**.  According to the Ervings, proximate cause is "readily satisfied" because they received "mailings that misstated the amounts that those borrowers were obligated to pay" and that subsequent escrow charges for LPI were "not just foreseeable, but explicitly intended." Opp. at 13.  But this argument has been soundly rejected in other LPI cases as well.  See Cohen v. Am. Sec. Ins. Co., 735 F.3d 601, 614 (7th Cir. 2013) (rejecting as "senseless" plaintiff's causation theory); Wilson v. Everbank, N.A., --- F. Supp. 3d ----, 2015 WL 265648, at *14 (S.D. Fla. Jan. 6, 2015) (holding plaintiffs' RICO causation theory was implausible).

In any event, the Ervings have not alleged that **anyone** relied upon (or even read) the letters sent to them.  Although the Ervings argue that reliance is not required (Opp. at 13), the Supreme Court explained in Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 658-59 (2008), that "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation" and the "complete absence of reliance may prevent the plaintiff from establishing proximate cause."  See also Circeo-Loudon, 2014 WL 4219587, at *3

---

[7]   Even the Ervings' own authorities note that borrowers "need to confront the argument that letters urging them to obtain their own insurance and warning them of the adverse financial consequences of LPI could be deemed the **last** thing a bank bent on perpetrating a fraudulent [LPI] scheme . . . would pursue." Montoya, 2015 WL 1311482, at *15 (emphasis in original).

[8]   The Ervings' NSPA allegations also fail.  Saxon did not steal, convert or take anything by fraud. See, supra, Part I.  In any event, the Ervings have not alleged a single transaction (much less two) over the statutory threshold of $5,000 (see 18 U.S.C. § 2314).  Rather than identify such a transaction, the Ervings merely repeat the same conclusory allegation in the SAC that pooled transfers of escrow funds "frequently, if not always, exceed $5,000."  Opp. at 12 (citing SAC ¶ 239).  Moreover, nothing in Environmental Services, Inc. v. Recycle Green Services, Inc., 7 F. Supp. 3d 260, 272 (E.D.N.Y. 2014), supports the Ervings' argument here, that unidentified escrow payments made by unidentified persons can be aggregated for purposes of meeting the NSPA threshold.  Opp. at 12.  To the contrary, the single plaintiff in Environmental Services alleged that $4 million in oil was stolen directly from it.  See 7 F. Supp. 3d at 269.

("Since plaintiffs do not direct the Court to any allegations of reliance whatsoever, their RICO claims fail") (citation and quotation omitted).  The Ervings failure to allege that anyone relied upon the letters is thus fatal to their RICO claim.

## III.   THE COMMON LAW CLAIMS FAIL AS A MATTER OF LAW

***Saxon did not have a contractual relationship with the Ervings.***   As Saxon demonstrated in its moving brief, the Ervings' breach of contract claim fails because the SAC lacks a single well-pled allegation of wrongdoing by Saxon and because Saxon was not a party to the Ervings' Mortgage.[9]  Saxon Br. at 18.  The Ervings argue, in response, that Saxon can be held liable for breach of contract notwithstanding that it was not a party to the Mortgage, relying on the court's decision in In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation, 491 F.3d 638, 644-5 (7th Cir. 2007).  Opp. at 17.  But in Ocwen, the unrelated issue before the court was whether a regulation promulgated by the Office of Thrift Supervision pre-empted the plaintiff's right to bring a breach of contract claim, and the court held it did not.  Id.  On the other hand, "Judges around the country . . . have held that a loan servicer, as a lender's agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract."  Edwards v. Ocwen Loan Servicing, LLC, 24 F. Supp. 3d 21, 27-28 (D.D.C. 2014); see also Kehoe v. Aurora Loan Servs. LLC, 2010 WL 4286331, at *8 (D. Nev. Oct. 20, 2010) (Although a servicer may "assume[] the duties of the lender" by taking on the servicing role, this does not "create contractual privity" between the servicer and the borrower).  These authorities apply here and compel dismissal of the Ervings' breach of contract claim against Saxon.

---

[9]    See Cannon v. Wells Fargo Bank N.A., 917 F. Supp. 2d 1025, 1052 (N.D. Cal. 2013) (applying Florida law and dismissing breach of contract claim against servicer sua sponte, because the loan servicer "was not a contracting party"); see also Lomboy v. SCME Mortg. Bankers, 2009 WL 1457738, at *5 (N.D. Cal. May 26, 2009) (dismissing breach of contract claim because there was no contractual relationship between mortgagor and loan servicer).

***The implied covenant claim is redundant***.  As Saxon demonstrated in its moving brief, the Ervings' claim for breach of the implied covenant of good faith and fair dealing must be dismissed because it is based on the same allegations as their express breach of contract claim. See Saxon Br. at 19 (citing Mendez-Arriola v. White Wilson Medical Center PA, 2011 WL 3269451, at *5-6 (N.D. Fla. July 29, 2011)).  In their opposition, the Ervings ignore this argument and instead cite to three decisions in which the courts allowed a claim for breach of the implied covenant to proceed.  Opp. at 18.  But none of those decisions applied Florida law, and none of the defendants in those cases argued that the claim for breach of the implied covenant was duplicative of the claim for breach of contract.  See id.  Accordingly, the Ervings' claim for breach of the implied covenant of good faith and fair dealing must be dismissed.[10]

***The unjust enrichment claim fails.***  The Ervings' unjust enrichment claim fails because the Ervings' allegation that Saxon received any unjust payment or benefit is not well-pled.  See, supra, Part I.  The claim also fails because the Ervings have not pled a single fact to demonstrate compliance with Florida's "direct payment" requirement.[11]  Circeo-Loudon, 2014 WL 4219587, at *5.  The Ervings concede that any benefit Saxon allegedly received came from ASIC, not the Ervings.  Opp. at 19.  The Ervings try to circumvent this fatal deficiency by insisting that the money used by ASIC allegedly to enrich Saxon previously belonged to the Ervings.  Id.  But this is precisely the type of allegation that fails to satisfy Florida's "direct payment" requirement. See Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012) (affirming dismissal of unjust enrichment claim where plaintiffs' funds went to an entity they accused of being a "pass

---

[10]     The Ervings also concede (by their silence) that their implied breach claim fails to the extent it is premised on obligations that are extraneous to the contract.  Saxon Br. at 19.

[11]     The Ervings do not contest that if their breach of contract claim against Saxon is allowed to proceed, then their unjust enrichment claim must be dismissed.  Saxon Br. at 20 n.10.

through conduit" before reaching defendant).

**Saxon did not owe a fiduciary duty**.  The Ervings argue that because Saxon established an escrow account for them, it provided "extra services," warranting an exception from the general rule that a servicer owes no fiduciary duty to a borrower.[12]  Opp. at 21.  But as Saxon explained in its moving brief, this precise theory was recently rejected by the court in Wilson, which held that creating an escrow account is not "atypical of a lender borrower relationship," and does not "establish the 'special circumstances' of trust and confidence required for a fiduciary duty to exist."  2015 WL 265648, at *12; see also Saxon Br. at 21 n.11 (collecting cases).[13]

**The Ervings fail to plead conversion of "specific and identifiable" money**.  The Ervings' claim for conversion fails because—as the Ervings concede—they have not alleged that "specific and identifiable" money was converted from them, as required by Florida law.  Opp. at 22.  The Ervings try to salvage their claim by pointing to a string of LPI cases where a conversion claim survived a motion to dismiss, but none of those cases address the argument made by Saxon and only one of them was decided under Florida law.[14]  The only LPI case that has addressed the argument under Florida law, Mahdavieh v. Suntrust Mortg., Inc., held the

---

[12]    The Ervings also argue that "special circumstances" exist because Saxon received "greater economic benefit" than anticipated from the transaction in the form of "unearned kickbacks."  Opp. at 21. But as discussed supra, the Ervings fail to adequately plead their "kickback" theory.

[13]    The Ervings' reliance on the pre-Wilson decision of Persaud v. Bank of America, N.A., 2014 WL 4260853, at *12 (S.D. Fla. Aug. 28, 2014), is misplaced.  Persaud rested on the erroneous assumption that establishing an escrow account for a mortgagor constitutes "special circumstances," but, as the court in Wilson recognized, that premise is wrong.  It is commonplace for a lender/servicer to create an escrow account for a mortgagor.  See Wilson, 2015 WL 265648, at *12.

[14]    See Hoover, 9 F. Supp. 3d at 253 (applying New York law); Casey v. Citibank, N.A., 915 F. Supp. 2d 255, 261-62 (N.D.N.Y. 2013) (applying New York law); Lane v. Wells Fargo Bank, N.A., 2013 WL 3187410, at *10 (N.D. Cal. June 21, 2013) (applying California law); Arnett v. Bank of Am., N.A., 874 F. Supp. 2d 1021, 1035-36 (D. Or. 2012) (applying Oregon law).  The Ervings also cite to Cannon, 917 F. Supp. 2d at 1053-54, but it is clear from the decision that the defendants never raised this argument and the court never addressed it.

plaintiff's conversion claim was "insufficient as a matter of law" and granted a motion to dismiss.  2014 WL 1365425, at *5-6 (S.D. Fla. Apr. 7, 2014).  The same result is compelled here.

## IV.   THE FDUTPA CLAIM FAILS AS A MATTER OF LAW

The FDUTPA claim fails for the reasons identified in Saxon's moving brief.  Saxon Br. at 22-24.  <u>First</u>, neither insurance nor loan servicing falls within the scope of the statute.[15] Relying on <u>Schauer v. General Motors Acceptance Corp.</u>, 819 So. 2d 809, 812 (Fla. Dist. Ct. App. 2002), the Ervings argue that mortgage servicing is a "service" that constitutes "trade or commerce" under FDUTPA because Saxon assessed and sought to collect amounts outside the scope of its entitlement.  Opp. at 23-24.  But <u>Schauer</u> is inapposite and stands for the proposition that a FDUTPA claim is stated where a lender "willfully harass[es]" a debtor and his family with respect to the collection of a debt.   819 So. 2d at 812.   That is not remotely similar to the circumstances here.

<u>Second</u>, the Ervings rely on <u>Martorella v. Deutsche Bank National Trust Co.</u>, 931 F. Supp. 2d 1218, 1223 (S.D. Fla. 2013), for the proposition that Saxon's conduct was "unfair." Opp. at 23.  But the court in <u>Martorella</u> did not consider Saxon's argument here, namely, that conduct is not "unfair" unless it caused an injury that consumers themselves could not reasonably have avoided.  Saxon Br. at 22-23.  Because the Ervings could have avoided their alleged injury by obtaining their own insurance—***which they were required to do under the terms of their Mortgage***—their FDUTPA claim necessarily fails.

---

15    <u>See</u> Fla. Stat. Ann. § 501.212(4); <u>Benjamin v. CitiMortgage, Inc.</u>, 2013 WL 1891284, at *4-5 (S.D. Fla. May 6, 2013) (holding that "the loan servicer's actions do not qualify as 'trade or commerce' under [FDUTPA]"); <u>see also</u> <u>Trent v. Mortg. Elec. Registration Sys., Inc.</u>, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007), <u>aff'd</u>, 288 F. App'x 571 (11th Cir. 2008) (dismissing FDUTPA claim because "under the plain language of the statute," servicing activities do not constitute "trade or commerce").

Third, as described above (see, supra, Part II) any alleged harm suffered by the Ervings was not the result of any alleged conduct by Saxon; thus the SAC fails to allege causation.

## V.  ALL THE ERVINGS' CLAIMS FAIL AGAINST MORGAN STANLEY

By arguing that their claims against Morgan Stanley are "based on its substantial involvement in servicing loans through Saxon" (Opp. at 1 n.2), the Ervings concede that they are trying to hold Morgan Stanley liable based on its indirect ownership of Saxon.[16]  As Saxon demonstrated in its opening brief, however, it is a "deeply ingrained" principle of corporate law that a parent corporation is not liable for the alleged wrongdoing of its subsidiaries.  United States v. Bestfoods, 524 U.S. 51, 61 (1998) (citation and quotation omitted).  And the Ervings do not even attempt to refute Morgan Stanley's showing that it:  (1) did not have any contract with the Ervings; (2) did not accept any benefit from the Ervings; (3) did not convert any identifiable sum of money owned by the Ervings; (4) did not engage in any racketeering activity or direct any alleged enterprise's affairs; and (5) did not substantially assist any alleged breach of fiduciary duty by Saxon.  Accordingly, all claims against Morgan Stanley should be dismissed.

## CONCLUSION

For the foregoing reasons, Saxon and Morgan Stanley respectfully request that the Court dismiss all claims asserted against them in the SAC, with prejudice, and grant such other and further relief it deems proper.[17]

---

[16]    The improper group pleading utilized by the Ervings in the SAC also infects their opposition brief.  Opp. at 1 (improperly defining Saxon and Morgan Stanley as the "Saxon Defendants").

[17]    The Ervings cursory request for leave to amend a third time should be denied.  Opp. at 24.  As the Court put it at the October 29, 2013 conference, the SAC was the Ervings chance to "shoot their best shot."  Transcript at 40 (ECF No. 91).

Dated:   New York, New York         Respectfully submitted,
         April 6, 2015

MORGAN, LEWIS & BOCKIUS LLP

By:  /s/ Mary Gail Gearns
        Mary Gail Gearns
Matthew Minerva
Michael J. Ableson
399 Park Avenue
New York, New York 10022
Tel:  (212) 705-7000
Fax:  (212) 752-5378
Email:  marygail.gearns@morganlewis.com
Email:  matthew.minerva@morganlewis.com
Email:  michael.ableson@morganlewis.com

*Attorneys for Defendants Saxon Mortgage*
*Services, Inc. and Morgan Stanley*