UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | ECF Case |
| JIMMY LYONS, *et al.*, individually and on behalf of all others similarly situated, | : : : | No. 13 Civ. 513 (ALC) (HBP) |
| Plaintiffs, | : : | |
| vs. | : : | |
| LITTON LOAN SERVICING LP, *et al.*, | : : | |
| Defendants. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS FILED PURSUANT TO THIS COURT'S ORDER TO SHOW CAUSE**

Pursuant to the Court's September 29, 2015 Order to Show Cause (ECF No. 182),[1] and Fed. R. Civ. P. 12(b)(6), Defendants Litton Loan Servicing, LP ("Litton"), The Goldman Sachs Group, Inc. ("GS Group"), and Arrow Corporate Member Holdings, LLC ("Arrow") (collectively, the "Litton Defendants"), Saxon Mortgage Services, Inc. and Morgan Stanley (together, the "Saxon Defendants"), and Assurant, Inc., American Security Insurance Company and Standard Guaranty Insurance Company (collectively, the "Assurant Defendants"), jointly move to dismiss the claims asserted in the Second Amended Class Action Complaint ("Complaint" or "SAC") by plaintiffs Frances and Johnnie Erving and Sheila Heard, with

---

[1] The Order to Show Cause invited defendants to file "a consolidated motion to dismiss pursuant to Rule 12(b)(6), of no more than 20 pages specifying which claims involve FPI/LPI rates approved by regulators." In accordance with the Court's instruction, this memorandum is limited to the filed rate doctrine. It does not address Defendants several other arguments which were set forth in their earlier filed motions to dismiss. The Court terminated those motions without prejudice and directed the parties to address only the filed rate doctrine at this time. Defendants reserve the right to refile those earlier motions to dismiss, and to assert, as needed, all available arguments and defenses in support of such motions.

prejudice, pursuant to the filed rate doctrine and the Second Circuit's decision in *Rothstein v. Balboa Insurance Co.*, 794 F.3d 256 (2d Cir. 2015).[2]

## PRELIMINARY STATEMENT

In *Rothstein*, the Second Circuit reiterated that the filed rate doctrine "precludes any judicial action which undermines agency rate-making authority." *Id.* at 262 (citation omitted). The Court definitively held that the protections of the filed rate doctrine extend to lender-placed insurance ("LPI"), despite the *Rothstein* plaintiffs' assertion that the doctrine does not apply because LPI premiums pass through a loan servicer before they are received by an LPI insurer.

The situation in *Rothstein* is, in plaintiffs' own words, "exactly the situation alleged here." ECF No. 118 at 12. Plaintiffs here, like the plaintiffs in *Rothstein*, allege that the Insurer Defendants and the Loan Servicing Defendants engaged in a "kickback scheme" that impermissibly inflated LPI premiums.[3] As the Second Circuit held in *Rothstein*, however, these claims threaten to "undermine the rate-making authority of state insurance regulators," violating the nonjusticiability prong of the filed rate doctrine. 794 F.3d at 262. They also offend the

---

[2] The parties most knowledgeable about whether the LPI rates charged to plaintiffs Jimmy and Jaqueline Lyons were approved by a rate-making authority are American Modern Insurance Group and American Modern Home Insurance Company (together, "American Modern"). American Modern has advised the Court that it has reached a settlement in principle with the plaintiffs and will not be joining this motion. ECF No. 183. Accordingly, this motion is not addressed to the claims of the Lyons plaintiffs at this time.

[3] The terms "Insurer Defendants" and "Loan Servicing Defendants" have the same meaning ascribed to them by plaintiffs in the Complaint. The "Insurer Defendants" include the Assurant Defendants and American Modern. SAC ¶ 4. The "Loan Servicing Defendants" include the Litton Defendants (which includes Litton, GS Group, and Arrow), the Saxon Defendants, and Ocwen Loan Servicing, LLC and Ocwen Financial Corporation (together, "Ocwen") (although all claims against Ocwen would be settled and released pursuant to a nationwide class settlement that received final approval in the Southern District of Florida and which is now on appeal to the Eleventh Circuit). *Id.* ¶ 1.

nondiscrimination principle of the doctrine because any damages recovered by plaintiffs would "operate like a rebate" of the approved rate. *Id.* at 263.

There is no material distinction between *Rothstein* and this action. Plaintiffs themselves recognized this by relying in their previous filings on the district court's opinion in *Rothstein*, which has now been reversed by the Second Circuit. Because *Rothstein* is on all fours with this action, the Second Circuit's decision in *Rothstein* compels dismissal of the Erving and Heard claims with prejudice.

## PROCEDURAL HISTORY

Plaintiffs commenced this action in January 2013 and filed the operative Complaint in November 2013. ECF No. 93. In September 2014, the Court denied defendants' motions to sever without prejudice to possible renewal at a later stage in the proceedings. ECF No. 138. The Court also denied the Assurant Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). ECF No. 139.[4] Magistrate Judge Pittman subsequently stayed all discovery pending a decision on defendants' anticipated motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and set a briefing schedule for those motions. ECF No. 146.

Before defendants' Rule 12(b)(6) motions were briefed, Ocwen and the Assurant Defendants reached a settlement in *Lee v. Ocwen Loan Servicing, LLC*, No. 14 Civ. 60649, a parallel LPI class action pending in the Southern District of Florida in which seven of the plaintiffs in this action also were named plaintiffs. *Lee* ECF No. 111-1 (Stipulation and Settlement Agreement identifying Gerald Colthurst, Lisa Chamberlain Engelhardt, Enrique Dominguez, Frances and Johnnie Erving, John Clarizia and Shelia Heard as plaintiffs). The *Lee* Settlement fully released all claims against Ocwen and the Assurant Defendants related to

---

[4] Plaintiff Anthony Papapietro voluntarily dismissed his claims in April 2014. ECF No. 130.

Ocwen LPI placements. Claims pertaining to the Saxon/Assurant LPI placements and the Litton/American Modern LPI placements were not included in or released by the *Lee* Settlement.[5]

With claims related to Ocwen/Assurant LPI placements no longer at issue, this action effectively became two separate matters proceeding under the same case number. In one, the Ervings assert claims against the Saxon Defendants and the Assurant Defendants; in the other, the Lyons and Ms. Heard assert claims against the Litton Defendants and American Modern. *See* ECF Nos. 166 at 1 n.1; 167 at 1 n.1. There is no factual overlap between the Ervings' claims and those of the Lyons and Ms. Heard. Defendants filed Rule 12(b)(6) motions to dismiss the claims of the remaining plaintiffs in February 2015, with some arguing that the filed rate doctrine precluded all of the remaining claims and others preserving the argument pending a decision in *Rothstein*; those motions were fully briefed in April 2015. ECF Nos. 147-52, 154-63, 166-72.

While the motions to dismiss were pending, the Second Circuit issued its decision in *Rothstein* in July 2015 and subsequently denied a petition for rehearing *en banc*. After the parties submitted a series of letters regarding the effect of *Rothstein*, *see* ECF Nos. 178-81, the Court entered an Order to Show Cause requiring plaintiffs to demonstrate why this action should not be dismissed against all defendants on the grounds that the filed rate doctrine precludes the remaining plaintiffs' claims. ECF No. 182 at 3. The Order to Show Cause denied without prejudice the defendants' pending Rule 12(b)(6) motions and set a procedure and schedule for the parties to submit arguments regarding application of *Rothstein* and the filed rate doctrine.

---

[5] The *Lee* Settlement received final approval in September 2015, *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015), and the claims of Colthurst, Engelhardt, Dominguez, the Ervings, Clarizia and Heard as to Ocwen/Assurant LPI placements have been released. *See* ECF Nos. 166 at 1 n.1; 167 at 1 n.1.

*Id.*[6]  As demonstrated below, and as plaintiffs previously and repeatedly have argued herein, *Rothstein* is directly on point, and the claims addressed in this motion are barred by the filed rate doctrine.

## THE CLAIMS

The Complaint, ECF No. 93, spans 94 pages, contains 350 paragraphs, and variously asserts a hodgepodge of ten claims against twelve separate defendants.  The Complaint does not contest the right of loan servicers to place LPI when borrowers fail to maintain adequate coverage.  Rather, all Counts of the Complaint rest on the theory that plaintiffs were charged and/or paid "inflated" or "excessive" LPI premiums because, as a result of the "kickback" schemes allegedly existing between different groups of defendants, LPI premiums purportedly included "unjustified" or "unlawful" amounts that were paid by the Insurer Defendants to the Loan Servicing Defendants as so-called "kickbacks" "in order to reap additional, unjustified profits in the form of fees, commissions, rebates, reinsurance and other forms of consideration." SAC ¶ 5.  *See, e.g.*, SAC ¶¶ 4-5, 13 ("borrowers are charged substantially more [for LPI] than required to insure their properties due to the perverse incentives and lucrative benefits that are shared between the Loan Servicing Defendants and the Insurer Defendants"), ¶ 15 ("charges paid by and/or assessed to Plaintiffs . . . include charges associated with tracking and/or monitoring *all* the loans serviced by the respective Loan Servicing Defendants"), ¶ 19 (regarding reinsurance, the "ceded premiums and ceding fees were nothing more than kickbacks between

---

[6] The Assurant Defendants previously argued that the filed rate doctrine deprived plaintiffs of standing to assert their kickback claims.  ECF Nos. 97-106.  The Court denied that motion without opinion.  ECF No. 139.  The Order to Show Cause also permitted the Assurant Defendants to request reconsideration of the order denying their Fed. R. Civ. P. 12(b)(1) motion.  In addition to moving for reconsideration, the Assurant Defendants join the other defendants in this submission.

Defendants and a method for Defendants to profit from the force-placement of borrowers' hazard insurance"), ¶ 106 ("servicing costs were included in the charges assessed to borrowers purportedly for force-placed insurance"), ¶ 230(b) ("The Loan Servicing Defendants and their affiliates and subsidiaries, in coordination with the Insurer Defendants, provided and administered excessively priced policies charging Plaintiffs . . . not only for the cost of their force-placed insurance, but also charging them for the costs of kickbacks, fees, commissions and other considerations in the form of force-placed insurance premiums" that were charged to plaintiffs), and ¶ 230(d) (the Loan Servicing Defendants made and used "arrangements with the Insurer Defendants to establish conduits to funnel a portion of Plaintiffs' . . . premiums back to themselves").

Although the Complaint includes, in addition to the "kickback" theory, allegations of LPI "backdating," and LPI "overinsurance," plaintiffs subsequently renounced the latter two theories, leaving only claims premised on purported "kickbacks." *See* ECF No. 166 at 2 n.4.

## ARGUMENT

**I.     The Filed Rate Doctrine And *Rothstein*.**

The Second Circuit described the filed rate doctrine aptly in *Wegoland, Ltd. v. NYNEX Corp.*:

> The filed rate doctrine bar suits against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable. Simply stated, the doctrine holds that any "filed rate" – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by ratepayers.

27 F.3d 17, 18 (2d Cir. 1994). As noted in *Rothstein*, "The doctrine reaches both federal and state causes of action, and protects rates approved by federal or state regulators." 794 F.3d at 261 (citing *Wegoland*, 27 F.3d at 20).

6

> The [filed rate] doctrine is grounded on two rationales: first, that courts should not "undermine[] agency rate-making authority" by upsetting approved rates (the principle of "nonjusticiability"); and, second, that litigation should not become a means for certain ratepayers to obtain preferential rates (the principle of "nondiscrimination").

*Id.* (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 61 (2d Cir. 1998)).

*Rothstein* emphasizes that "[t]he [filed rate] doctrine 'prevents more than judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority.'" *Id.* at 262 (quoting *Marcus*, 138 F.3d at 61).

> Thus, a claim may be barred even if it can be characterized as challenging something other than the rate itself. *Id.; see also Fax Telecommunicaciones Inc. v. AT&T,* 138 F.3d 479, 489 (2d Cir. 1998) (rejecting plaintiff's "attempts to recharacterize its argument in order to avoid the harsh inequities occasioned by application of the filed rate doctrine"); *Wegoland*, 27 F.3d at 21 ("The fact that the remedy sought can be characterized as damages for fraud does not negate the fact that the court would be determining the reasonableness of rates." (emphasis and internal quotation marks omitted)).

*Id.* It is not the plaintiff's legal theory or "the underlying conduct . . . [that] control[s] whether the filed rate doctrine applies. Rather, the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations." *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 890 (10th Cir. 2011) (internal quotation marks and citation omitted) (emphasis added).

As another court explained in the context of LPI, a plaintiff's "attempt[] to characterize her claims as a challenge to improper and unlawful insurance practices and not to the reasonableness of the filed rate" is "an illusory distinction because the "alleged kickbacks . . . are part of a premium that was approved by a regulatory entity." *Decambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294, at *6-7 (W.D. Wis. Oct. 25, 2013).

> Allowing plaintiff to challenge [filed LPI rates] would contravene the non-justiciability and non-discrimination purposes of the filed rate doctrine. In order to calculate the amount of the alleged kickbacks, it would be necessary for this

7

court to determine a reasonable rate and subtract it from the premium. . . .

*Id.* at *7; *see also Trevathan v. Select Portfolio Services, Inc.*, 2015 WL 6913144, at *2-3 (S.D. Fla. Nov. 6, 2015) (relying on *Rothstein* and dismissing LPI "inflated premium" claims regarding Florida placements pursuant to the filed rate doctrine); *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 553-54 (S.D.N.Y. 2014) (dismissing LPI "kickback" claims as barred by the filed rate doctrine); *Curtis v. Cenlar, F.S.B.*, 2013 WL 5995582, at *3-4 (S.D.N.Y. Nov. 12, 2013) (same).

*Rothstein* confirms that the filed rate doctrine applies to claims involving LPI such as the ones asserted in this action. Plaintiffs in *Rothstein* brought RICO and RESPA claims alleging that, when their loan servicer sought reimbursement from them of the LPI premium at the same rates it paid the insurer, they "were fraudulently overbilled because the rates they were charged did not reflect secret 'rebates' and 'kickbacks' that [the servicer] received from [the LPI insurer]." 794 F.3d at 259. The Second Circuit reversed the district court's denial of the defendants' motion to dismiss, holding:

> [A] claim challenging a regulator-approved rate is subject to the filed rate doctrine whether or not the rate is passed through an intermediary. The claim is therefore barred if it would undermine the regulator's rate-setting authority or operate to give the suing ratepayer a preferential rate. Applying this analysis, we conclude that Plaintiffs' claims are barred . . . .

*Id.*

The *Rothstein* court ruled that the claims in that case, similar to the claims asserted here, violated both the nonjusticiability and nondiscrimination principles underlying the filed rate doctrine. The claims violated the nonjusticiability principle because they depended on plaintiffs' allegation that they should not have been charged the filed rate but, rather, "the lower rates net of the value of loan tracking services provided by [the insurer]." 794 F.3d at 262. "That theory can

8

succeed only if the arrangement with [the insurer] should have been treated as part and parcel of the LPI transaction and *reflected in the LPI rates*. But, under the nonjusticiability principle, it is squarely for the regulators to say what should or should not be included in a filed rate." *Id.* (citing *Wegoland*, 27 F.3d at 21; emphasis in original).

The *Rothstein* plaintiffs' claims violated the nondiscrimination principle because "[a]ny damages recovered" by the plaintiffs would operate like a rebate on rates, giving them preference over other borrowers charged for LPI. *Id.* at 263. Furthermore, the nondiscrimination "problem is not obviated simply because plaintiffs have brought their claims on behalf of a putative class." *Id.* (citing *Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2d Cir. 1995), and *Marcus*, 138 F.3d at 61).

Finally, the *Rothstein* court held that "the filed rate doctrine is not limited to transactions in which the ratepayer deals directly with the rate filer. The doctrine operates notwithstanding an intermediary that passes along the rate." *Id.* at 264. The applicability of the filed rate doctrine is unaffected by the fact that, in an LPI context, the LPI insurer charges the premium to the loan servicer which, in turn, charges that same premium to the borrower. "The principles of nonjusticiability and nondiscrimination have undiminished force even when the rate has passed through an intermediary." *Id.* The Second Circuit therefore reversed the district court's ruling on defendants' Rule 12(b)(6) motion and remanded for dismissal of the case. *Id.* at 259.

## II. The Filed Rate Doctrine Bars LPI Claims Based on Purported "Kickbacks," Plaintiffs' Sole Remaining Theory of Liability.

*Rothstein* confirms that the Erving and Heard claims are barred by the filed rate doctrine. It is undisputed that the premium rates charged to the Ervings and Ms. Heard were filed with and approved by the appropriate state regulators. ECF Nos. 101 and 105 (Ervings); ECF Nos. 159 and 160 (Heard). As in *Rothstein*, the Complaint rests on the premise that plaintiffs allegedly

were overcharged for LPI coverage because, as a result of purported "kickback" arrangements between the Insurer Defendants and the Loan Servicing Defendants, the LPI premiums the Loan Servicing Defendants charged were "inflated," "exorbitant," and included amounts for "kickbacks" paid by the insurers to the servicers.

*Rothstein* requires that the Erving and Heard claims be dismissed for two separate and "independently sufficient" reasons. *Rothstein*, 794 F.3d at 264. First, the doctrine's nonjusticiability principle is implicated because, as in *Rothstein*, the claims here "rest on the premise that the rates approved by regulators were too high." *Id.* at 262. Accordingly, this case would require the Court to consider whether the LPI premiums were excessive or reasonable, and "what should or should not be included in a filed rate." *Id.* That determination would "undermine the ratemaking authority of the state insurance regulators who approved" the LPI premium rates, *id.*, and is not a task for the Court.

The Erving and Heard claims also separately violate the nondiscrimination principle "because they undermine . . . the scheme of uniform rate regulation." *Id.* at 263 (quoting *Wegoland*, 27 F.3d at 19). As in *Rothstein*, any damages those plaintiffs might recover would operate as a rebate, affording them a preference over other borrowers who were billed at the same LPI premium rates outside the proposed class period, or who might opt out of the putative class. *Id.*

### III.      Plaintiffs' Arguments Concerning *Rothstein* Are Without Merit.

Although *Rothstein* confirmed that the filed rate doctrine bars their claims, plaintiffs have presented several arguments in opposition to dismissal of this case. ECF No. 179.[7] They argue that *Rothstein* is distinguishable because (a) *Rothstein* rejected claims only against insurers, while this action includes claims against lenders and servicers, *id*. at 1 and n.1; and (b) plaintiffs in *Rothstein* alleged "kickbacks" in the form of free or below-cost loan tracking for loan servicers, whereas plaintiffs here allege, in addition, "direct cash payments and elaborate, phony reinsurance arrangements." *Id*. at 2. Neither of these arguments affects the application of *Rothstein* or the filed rate doctrine to this case.

#### A.      The Filed Rate Doctrine Bars The Ervings' and Ms. Heard's Claims Against The Loan Servicing Defendants.

The filed rate doctrine bars all claims relating to LPI purchased at a filed rate and charged to a borrower at that rate, regardless of whether the claims are asserted against insurers, lenders, servicers, or any other entities allegedly involved in the transaction. From the perspective of the filed rate doctrine and its underlying principles of nonjusticiability and nondiscrimination, it is irrelevant who was involved in the alleged "scheme" to charge borrowers supposedly excessive LPI rates, as long as the rates charged were within the filed rate.

In *Rothstein*, the Second Circuit expressly rejected the assertion that the filed rate doctrine applies only to transactions directly between the insurer and the borrower, and not also to transactions in which the entity that bought the insurance billed the borrower to recover the cost of that insurance. As the court explained, "[t]he filed rate doctrine is not limited to transactions in which the ratepayer deals directly with the rate filer. The doctrine operates

---

[7]  To the extent plaintiffs noted that a petition for panel rehearing and/or rehearing *en banc* was pending in Rothstein, ECF No. 179 at 2, that petition has now been denied.

notwithstanding an intermediary that passes along the rate." 794 F.3d at 264. The court added: "The principles of nonjusticiability and nondiscrimination [underlying the filed rate doctrine] have undiminished force even when the rate has passed through an intermediary," and the role of an intermediary in the LPI context is "especially immaterial." *Id.* at 264-65; *see also Miller*, 994 F. Supp. 2d at 554 (the filed rate doctrine's "twin principles" "are no less implicated when a plaintiff brings claims against an entity like Wells Fargo Bank, which acquired policies with premiums based on ASIC's filed rate, than when claims are asserted against the rate-filing entity itself").[8]

*Rothstein* thus requires dismissal of all borrowers' claims when those borrowers were charged filed rates, regardless of whether the rates were charged by a mortgage loan servicer and not directly by the insurer. *See Rothstein*, 794 F.3d at 264. Not only have courts "applied the filed rate doctrine to claims brought against parties that did not file the rate at issue," but there is no authority "for the proposition that the filed rate doctrine cannot bar claims against entities not directly regulated by the rate-making authority." *Roussin*, 664 F. Supp. 2d at 419.

---

[8] *Accord Decambaliza*, 2013 WL 5777294, at *8 (holding that the filed rate doctrine bars claims based on alleged kickbacks brought against a servicer and other parties that did not file the rate at issue, and stating that "[t]ry as she might, plaintiff cannot avoid the fact that she is asking this court to determine what rate the insurance company defendants should have charged instead of the rates they did charge," which is "exactly what the filed rate doctrine forbids"). *Decambaliza* cites a number of cases reaching the same conclusion: *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 418-19 (S.D.N.Y. 2009), *aff'd*, 379 F. App'x 30 (2d Cir. 2010) (dismissing claims against group health insurance trust for passing filed insurance rates on to insured that include an "AARP Allowance," holding that the doctrine bars challenges to any component of a filed rate, even if the defendant was not the filer); *Hooks v. Am. Med. Sec. Life Ins. Co.*, 2008 WL 3911130, at *5-6 (W.D.N.C. Aug. 19, 2008) (applying doctrine to dismiss claims against a non-profit holder of group policies that did not file the rates itself and rejecting plaintiffs' attempt to avoid the doctrine by basing claims on (unfiled) renewal rates because "any determination concerning renewal rates must refer to the initial rates approved by the Commissioner"); *Stevens v. Union Planters Corp.*, 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000) (dismissing RESPA claims against mortgage servicer based on alleged kickbacks from LPI and holding that "the [filed] rate plaintiff was charged is conclusively presumed reasonable under the filed rate doctrine").

The only court to have addressed the issue since *Rothstein* was decided reached the same conclusion. *Trevathan v. Select Portfolio Services, Inc.*, 2015 WL 6913144, at *2-3 (S.D. Fla. Nov. 6, 2015). The court in *Trevathan* rejected plaintiff's argument that a servicer could not assert the filed rate doctrine, holding that a failure to dismiss such claims "would contravene the purposes of the filed-rate doctrine." *Id.* at *3. Rejecting attempts to distinguish *Rothstein* as "unavailing," the Court "agree[d] with the logic and conclusions of the subsequently issued *Rothstein* appellate decision," and held that the plaintiff's claims were barred by the nonjusticiability and nondiscrimination principles underlying the filed rate doctrine. *Id*.

Nor can plaintiffs evade the filed rate doctrine by characterizing their claims as challenging supposedly improper benefits received by the Loan Servicing Defendants, rather than the amount charged for LPI. *See, e.g.*, SAC ¶ 44. As *Rothstein* clearly establishes, the filed rate doctrine "precludes *any* judicial action which undermines agency rate-making authority," and "a claim may be barred even if it can be characterized as challenging something other than the rate itself." 794 F.3d at 262 (emphasis added); *see also Trevathan*, 2015 WL 6913144, at *3 (rejecting plaintiff's argument that "it is not the rate itself, but rather the 'kickback' present in the inflated rate and the Defendants' alleged 'collusion and self-dealing' that is at issue"). The *Rothstein* plaintiffs claimed they should have been billed the cost of LPI net of the value of benefits provided by the insurer to the lender. The Second Circuit recognized, however, that such a claim could succeed only if the benefits provided by the insurer to the lender "should have been treated as part and parcel of the LPI transaction and *reflected in the LPI rates*." *Rothstein*, 794 F.3d at 262 (emphasis in original). The court held that under the filed rate doctrine, it was "squarely for the regulators"—and not for the court—"to say what should or should not be included in a filed rate." *Id.*

The Ervings and Ms. Heard similarly seek to have this Court second-guess the judgment of regulators that "employ their peculiar expertise to consider the whole picture regarding the reasonableness of a proposed rate." *Id*. (quoting *Wegoland*, 27 F.3d at 21). *Rothstein* clearly bars these plaintiffs' claims against the Loan Servicing Defendants.

### B. Plaintiffs' Allegations Regarding "Kickbacks" Are Not Meaningfully Distinguishable From The Analogous Allegations In *Rothstein*.

Plaintiffs seek to distinguish *Rothstein* on the additional grounds that the alleged "kickbacks" in that case "came only in the form of free or below-cost loan tracking services," whereas plaintiffs here allege the "kickbacks" came also in the form of fraudulent schemes to "funnel cash back" as "expense reimbursements," "commissions," "reinsurance," and/or other forms of consideration. ECF No. 179 at 1-2. Plaintiffs' suggestion that they are able to escape the filed rate doctrine because they have alleged "more," "more grievous," or "different" misconduct than was alleged in *Rothstein* is rejected by *Rothstein* itself:

> [Application of the filed rate doctrine] does not "depend on the nature of the cause of action the plaintiff seeks to bring" or the "culpability of the defendant's conduct or the possibility of inequitable results."

*Rothstein*, 794 F.3d at 261-62 (quoting *Marcus*, 138 F.3d at 58); *see also Miller*, 994 F. Supp. 2d at 554 (holding that for purposes of the filed rate doctrine, the nature of the challenged conduct "simply does not matter"; the doctrine applies regardless of the kind of impropriety in the method by which the rate is determined) (citation omitted); *Curtis*, 2013 WL 5995582, at *4 ("The applicability of the Filed Rate Doctrine does not turn on the conduct underlying the rate setting. Rather, 'it is the judicial determination of a reasonable rate that the filed rate doctrine forbids.'") (quoting *Wegoland*, 27 F.3d at 21).

While plaintiffs understandably now claim that *Rothstein* is distinguishable on its facts, *see* ECF No. 179, they previously insisted that *Rothstein* is an "analogous action," that

14

application of the filed rate doctrine turns on "precisely the distinction drawn by Judge Nathan in *Rothstein*,"[9] and that *Rothstein* "is exactly the situation here." ECF No. 118 at 10, 13. Indeed, when opposing American Modern's motion to dismiss, the *only* authority plaintiffs cited concerning the filed rate doctrine was the now-defunct district court opinion in *Rothstein*. ECF No. 167 at 24-25. Plaintiffs were correct—the situation presented in *Rothstein* is precisely the situation presented here—and the Second Circuit's decision in *Rothstein* requires dismissal of this action.

The filed rate doctrine is concerned with whether plaintiffs' claims implicate the nonjusticiability or the nondiscrimination principles. It is not concerned with the nature of the claims, the alleged misconduct of the defendants, or the supposed inequities that may exist. The precise manner in which LPI premium rates allegedly were inflated is therefore irrelevant; what matters is that plaintiffs seek a judicial refund of the premiums that were charged based on those rates. Here, regardless of the type of conduct alleged to be a "kickback," the gravamen of plaintiffs' claims is that the "kickback" caused the rates they were charged to be too high. As the Second Circuit held in *Rothstein*, the filed rate doctrine bars any such claim. *Rothstein*, 794 F.3d at 263.

## **CONCLUSION**

The indisputable record establishes that the LPI rates charged to the Erving and Heard plaintiffs were filed with, and approved by, the appropriate rate-making authority. Accordingly, their claims should be dismissed with prejudice under *Rothstein*.

---

[9] Judge Nathan distinguished between situations in which an insurer charges a filed rate directly and situations in which the filed rate is charged through an intermediary such as a servicer. The Second Circuit unequivocally rejected that distinction, holding that "[t]he distinction between an 'A-to-B' transaction and an 'A-to-B-to-C' transaction is especially immaterial in the LPI context because LPI travels invariably 'A-to-B-to-C.'" *Rothstein*, 794 F.3d at 265.

Dated: November 20, 2015

Respectfully submitted,

| STROOCK & STROOCK & LAVAN LLP | CARLTON FIELDS JORDEN BURT, P.A. |
|---|---|

By: */s/ Melvin A Brosterman*
Melvin A. Brosterman
mbrosterman@stroock.com
Quinlan D. Murphy
qmurphy@stroock.com
Patrick N. Petrocelli
ppetrocelli@stroock.com
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

  -and-

Benjamin G. Diehl
bdiehl@stroock.com
Wesley M. Griffith
wgriffith@strook.com
2029 Century Park East, Suite 1600
Los Angeles, California 90067-3086
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

*Attorneys for Defendants The Goldman Sachs Group, Inc. and Arrow Corporate Member Holdings LLC*

By: */s/ Frank G. Burt*
Frank G. Burt (*pro hac vice*)
fburt@cfjblaw.com
W. Glenn Merten (*pro hac vice*)
gmerten@cfjblaw.com
Brian P. Perryman (*pro hac vice*)
bperryman@cfjblaw.com
1025 Thomas Jefferson Street NW
Suite 400 East
Washington, DC 20007
Telephone: (202) 965-8100
Facsimile: (202) 965-8104

SULLIVAN & WORCESTER LLP
Andrew T. Solomon
asolomon@sandw.com
1633 Broadway
32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Defendants Assurant, Inc., American Security Insurance Company, and Standard Guaranty Insurance Company*

| HUNTON & WILLIAMS LLP | MORGAN, LEWIS & BOCKIUS LLP |
|---|---|

By: */s/ Brian V. Otero*
Brian V. Otero
botero@hunton.com
Stephen R. Blacklocks
sblacklocks@hunton.com
Ryan A. Becker
rbecker@hunton.com
200 Park Avenue, 52nd Floor
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Defendant Litton Loan Servicing LP*

By: */s/ Mary Gail Gearns*
Mary Gail Gearns
marygail.gearns@morganlewis.com
Matthew Minerva
matthew.minerva@morganlewis.com
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001

*Attorneys for Defendants Saxon Mortgage Services, Inc. and Morgan Stanley*