UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| JIMMY LYONS, *et al.*, individually and on behalf of all others similarly situated, | : : : | ECF Case |
|  | : | No. 13 Civ. 513 (ALC) |
| Plaintiffs, | : : |  |
| vs. | : : |  |
| LITTON LOAN SERVICING LP, *et al.*, | : : |  |
| Defendants. | : : |  |

_____ :

### MEMORANDUM OF LAW OF THE ASSURANT DEFENDANTS IN SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION OF THEIR RULE 12(b)(1) MOTION TO DISMISS

Pursuant to the Court's September 29, 2015 Order to Show Cause, ECF No. 182, Local Rule 6.3, and Federal Rule of Civil Procedure 12(b)(1), Assurant, Inc., ("Assurant"), American Security Insurance Company ("ASIC"), and Standard Guaranty Insurance Company ("SGIC") (collectively, the "Assurant Defendants"), move for partial reconsideration of their motion to dismiss the Second Amended Class Action Complaint ("Complaint" or "SAC," ECF No. 93) under Federal Rule of Civil Procedure 12(b)(1). Pursuant to the filed rate doctrine and the Second Circuit's decision in *Rothstein v. Balboa Insurance Co.*, 794 F.3d 256 (2d Cir. 2015), the Complaint and this action should be dismissed.

### PRELIMINARY STATEMENT

The Order to Show Cause *sua sponte* granted the Assurant Defendants leave to seek reconsideration of their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 97).[1]

_____

[1] The Order to Show Cause is limited to the filed rate doctrine. In accordance with the Court's direction, this Memorandum does not address the Assurant Defendants' other arguments set forth

*(footnote continued on next page)*

Order to Show Cause, at 3 n.5.  Partial reconsideration of the Rule 12(b)(1) motion, insofar as it contends plaintiffs' claims are barred by the filed rate doctrine, is warranted in light of the *Rothstein* decision.[2]

Plaintiffs in *Rothstein* were borrowers with residential properties in Texas, New Hampshire, and New York "who failed to purchase hazard insurance on their mortgaged properties, as required by the terms of their loan agreements."  *Id.* at 259-60.  The *Rothstein* plaintiffs' "loan servicer bought lender-placed insurance ('LPI') . . . at rates that were approved by regulators[,] . . . then sought reimbursement from Plaintiffs at those same rates."  *Id.* at 259.  The *Rothstein* plaintiffs "alleged that they were fraudulently overbilled because the rates they were charged did not reflect secret 'rebates' and 'kickbacks' that [the loan servicer] received from [the LPI insurance company]."  *Id.*  The Second Circuit held that the *Rothstein* plaintiffs' claims were barred by the filed rate doctrine:

> We hold that a claim challenging a regulator-approved rate is subject to the filed rate doctrine whether or not the rate is passed through an intermediary.  The claim is therefore barred if it would undermine the regulator's rate-setting authority or operate to give the suing ratepayer a preferential rate.  Applying this analysis, we conclude that Plaintiffs' claims are barred . . . .

*Id.* (reversing district court's denial of LPI insurer's motion to dismiss under the filed rate doctrine, and remanding for dismissal of the case).

---

in their Rule 12(b)(1) motion to dismiss, ECF Nos. 97-106, which the Court denied without opinion.  ECF No. 139.  The Assurant Defendants reserve the right to reassert, as needed, other subject matter jurisdiction questions in renewed motions to dismiss.

[2] The Order to Show Cause also permitted all defendants to file a consolidated motion to dismiss based on the filed rate doctrine pursuant to Rule 12(b)(6). Order to Show Cause at 3.  In addition to seeking partial reconsideration of their 12(b)(1) motion, the Assurant Defendants have joined the other defendants in a consolidated Rule 12(b)(6) motion.  ECF No. 191.

This case is on all fours with *Rothstein*, as plaintiffs have insisted in earlier filings when citing the district court decision that was reversed by *Rothstein*.   *See* ECF No. 118 at 12 (where plaintiffs asserted the situation in *Rothstein* is "exactly the situation alleged here."). Accordingly, as in *Rothstein*, the remaining claims against the Assurant Defendants in this case "are barred by the filed rate doctrine and its fountainhead, the doctrine of standing."   *Morales v. Attorneys' Title Ins. Fund, Inc*., 983 F. Supp. 1418, 1429 (S.D. Fla. 1997).

## RELEVANT BACKGROUND

The procedural history of this action is described in defendants' consolidated Memorandum in Support of their Motion to Dismiss, ECF No. 191, filed contemporaneously herewith, and incorporated by reference.  The only plaintiffs in this action who have litigable claims against the Assurant Defendants are Frances and Johnnie Erving, who assert various claims against Assurant and ASIC in connection with LPI purchased from ASIC by Saxon Mortgage Services, Inc. ("Saxon").  SAC ¶¶ 165-77; ECF No. 101.[3]

As detailed in the consolidated Memorandum, the claims against Assurant and ASIC are based on the theory – identical to the theory in *Rothstein* – that the Ervings were charged "inflated" or "excessive" amounts for LPI because "unjustified" or "unlawful" amounts were embedded in the LPI premiums and were paid to Saxon as so-called "kickbacks."  *See* SAC ¶¶ 4-5, 13, 15, 19, 106, 230(b), and 230(d).[4]

---

[3] All other claims against ASIC and Assurant were released by the settlement in *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015).  *See* ECF No. 191 at 3-4 and n.5.  There are no remaining claims against SGIC because plaintiff Enrique Dominguez, the only plaintiff in this action who brought claims against SGIC, settled and released those claims in *Lee*. *Id.*

[4] Although the Complaint also contains allegations of LPI "backdating" and LPI "overinsurance", plaintiffs later abandoned those theories, leaving only claims premised on purported "kickbacks."  *See* ECF No. 166 at 2, n.4.

## LEGAL STANDARDS

### Reconsideration

The Order to Show Cause "*sua sponte* grant[ed] leave for Assurant Defendants to file a motion for reconsideration" of their Rule 12(b)(1) motion.  ECF No. 182 at 3, n.5.  Although the standard for granting a motion for reconsideration under Local Rule 6.3 is exacting, *see Lopez v. Colvin*, 2014 WL 5040285, *1 (S.D.N.Y. Sept. 28, 2014), intervening and controlling judicial decisions, such as the *Rothstein* decision, justify a court's reconsideration of an earlier ruling. *Motorola Credit Corp. v. Uzan*, 2015 WL 5613077, *1 (S.D.N.Y. Sept. 9, 2015) (granting reconsideration in light of intervening decisions of the Supreme Court and the Second Circuit). The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (quoting *Nemaizer v. Baker*, 793 F.3d 58, 61-2 (2d Cir. 1986)).

### Rule 12(b)(1)

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when a court lacks the statutory or constitutional power to adjudicate the matter. *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002).  In resolving a question of jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that subject-matter jurisdiction exists, and the court may refer to evidence outside the pleadings. *Id*. at 496-97.

Lack of standing is a jurisdictional defect.  *See Tasini v. New York Times Co*., 184 F. Supp. 2d 350, 355 (S.D.N.Y. 2002) ("An objection to standing is properly made on a Rule 12(b)(1) motion.").   "The irreducible constitutional minimum of standing contains three

requirements": (1) an injury in fact; (2) traceability, *i.e.*, a causal connection between the injury and the actions complained of; and (3) redressability, *i.e.*, a likelihood that the requested relief will redress the alleged injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

"At the core of the filed rate doctrine is the issue of standing." *Morales*, 983 F. Supp. at 1429. Because insureds "have no legal right to pay anything other than the promulgated rates, they have suffered no cognizable injury by virtue of paying said rates*." Id.*; *see also Taffet v. Southern Co.*, 967 F.2d 1483, 1494 11th Cir. 1992) (holding that plaintiffs suffer "no legally cognizable injury by virtue of paying the filed rate"); *In re N.J. Title Ins. Litig*., 683 F.3d 451, 461 n.7 (3d Cir. 2012) (paying "existing rates do[es] not constitute a cognizable legal injury under the filed rate doctrine"). "They had no legal right to pay any other rate." *Taffet*, 967 F.3d at 1464.

## ARGUMENT

### I.      The Filed Rate Doctrine Bars the Ervings' Claims

*Rothstein* reaffirmed that, "[u]nder the filed rate doctrine, 'any "filed rate" – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by ratepayers.'" 794 F.3d at 261 (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994). Further,

> The doctrine reaches both federal and state causes of action and protects rates
> approved by federal or state regulators. . . . Its application does not 'depend on
> the nature of the cause of action the plaintiff seeks to bring" or the "culpability of
> the defendant's conduct or the possibility of inequitable results."

*Id.* at 261-62 (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998); citations omitted). In short, "a claim challenging regulator-approved rate" is barred by the filed rate doctrine "if it would undermine the regulator's rate-setting authority or operate to give the suing ratepayer a preferential rate." *Id*. at 259.

In *Rothstein*, the loan servicer purchased LPI "at rates approved by [three] state insurance regulators[:]" the Texas Department of Insurance, the New Hampshire Insurance Department, and the New York State Department of Financial Services. *Id.* at 260 and n.1. The loan servicer then sought reimbursement from the *Rothstein* plaintiffs "at those same rates." *Id.* The same is true here, although this case involves LPI premium rates approved by the Florida state insurance regulator, the Florida Office of Insurance Regulation ("OIR"), rather than regulators in Texas, New Hampshire, or New York.

Florida "heavily regulates the insurance industry." *Gilchrist v. State Farm Mut. Auto. Ins. Co.*, 390 F.3d 1327, 1334 (11th Cir. 2004); *Woodham v. Williams*, 207 So. 2d 320, 322 (Fla. 1st DCA 1968). The Florida Insurance Code specifically regulates premium rates for the LPI insurance at issue, and "promote[s] the public welfare by regulating insurance rates … to the end that they shall not be excessive …." Fla. Stat. §§ 627.031(1)(a), 627.062; *see generally* Fla. Stat. Ch. 627, Pt. I. Insurers "must" file "cop[ies] of rates … and changes thereto" with the Florida OIR. Fla. Stat. § 627.062(2)(a).[5] The OIR also enforces the Insurance Code. In sum, "[t]he insurance industry is heavily regulated in Florida and its pricing is carefully governed by the [OIR]." *Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 438 (M.D. Fla. 2000).[6]

As in *Rothstein*, "[ASIC's] LPI rates were filed with regulators [(the Florida OIR)] and [the Ervings] were billed at those same rates by [Saxon]." *Id.* at 262. The Declaration of Rebecca H. Voyles, submitted in support of the Assurant Defendants' initial 12(b)(1) motion,

---

[5] Florida's OIR is required to determine if a rate is "excessive," and the OIR's review must consider fifteen factors. Fla. Stat. § 627.062(2)(b)1-15; see also § 627.062(2)(c) and (d) (providing additional factors applicable to fire insurance rates and to conflagration or catastrophe hazards).

[6] Florida expressly prohibits insurers from charging any amount for insurance in excess of that prescribed by the approved rate. Florida Statute § 626.9541(1)(o)2.

provides copies of ASIC's public record LPI rate filings applicable to the LPI placements purchased by Saxon from ASIC to provide coverage for the Ervings' property. ECF No. 105 ¶¶ 12-13 and Exs. 8-13 (ECF Nos. 105-8 through 16).  Further, the Declaration of Ronald K. Wilson Regarding Frances and Johnnie Erving explains how the charges for the ASIC LPI coverages for the Ervings' property are computed based on the filed and approved rates.  ECF No. 101 ¶¶ 19-26.[7]  The computations explained in Mr. Wilson's declaration for charges of $4,811.68 for the LPI coverage provided for the period between August 9, 2010 to August 9, 2011, and $4,989.17 for the coverage for the period between August 9, 2011 and August 9, 2012, match *exactly* the amounts that the SAC alleges were charged to the Ervings' account.  *Compare* SAC ¶¶ 169-71, *with* ECF No. 101 ¶¶ 23-26.

It is therefore undisputed that ASIC's LPI rates were filed with the Florida regulator and that the Ervings were billed at those same rates by Saxon.  Under *Rothstein*, the only remaining question is "whether [the Ervings'] claims would offend either the nonjusticiability principle or the nondiscrimination principle [of the filed rate doctrine]."  794 F.3d at 262.  That issue is

---

[7] The Court may consider the Voyles and Wilson Declarations because (1) the Court may consider these Declarations as part of its subject-matter jurisdiction analysis, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (noting that in resolving a motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings); (2) ASIC's rate filings are part of the public record filed with governmental agencies and this Court may take notice of them, Fed. R. Evid. 201(b); *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991) (noting that a district court may consider matters of which judicial notice may be taken); *Chinn v. PNC Bank, N.A.*, 451 F. App'x 859, 860 n.1 (11th Cir. 2012); *Trevathan v. Select Portfolio Servicing, Inc.*, 2015 WL 6913144, at *2 (S.D. Fla. Nov. 6, 2015) (taking judicial notice of ASIC LPI rate filings); *Armour v. Transamerica Life Ins. Co.*, 2012 WL 234032, *5 (D. Kan. Jan. 25, 2015) (taking judicial notice of rate filing with the department of insurance); *Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 835 n.4 (N.D. Ill. 2011) (taking judicial notice of ASIC rate filings); and (3) ASIC's LPI rate filings are central to the allegations and claims asserted in the Complaint, as are letters attached to the Wilson Declaration, *see* Complaint ¶¶ 169-71 and Exs. 38-40; *Allen*, 945 F.2d at 44 (stating that a district court may consider documents appended to the complaint or incorporated in the complaint by reference when deciding a motion to dismiss).

discussed at length in the defendants' consolidated Memorandum filed contemporaneously herewith, ECF No. 191, at 6-15, and the Assurant Defendants adopt those arguments by reference.  In short, the Ervings' claim are virtually identical to the LPI claims that *Rothstein* found to violate both the nonjusticiability and nondiscrimination principles underlying the filed rate doctrine.[8]  As in *Rothstein*, the filed rate doctrine bars the Ervings' claims against ASIC and Assurant.

## II.   The Filed Rate Doctrine Is Properly Considered A Standing Issue Under Rule 12(b)(1)

Although the filed rate doctrine may be addressed in the context of a Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted, *see Rothstein*, 794 F.3d at 261, it also may be raised and properly considered as a standing issue in a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

"At the core of the filed rate doctrine is the issue of standing."  *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1429 (S.D. Fla. 1997).  The Article III standing inquiry turns on plaintiffs' injuries and whether they are actual, traceable, and redressable.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).  Without a legally cognizable injury, there is no standing; here, plaintiffs have no legally cognizable injury.  "Where the legislature has conferred power upon an administrative agency to determine the reasonableness of a rate, the rate-payer 'can claim no rate as a legal right that is other than the filed rate[.]'"  *Taffet v. Southern Co.*, 967 F.2d 1483, 1494 11th Cir. 1992) (quoting *Montana-Dakota Utils. Co. v. Nw.*

---

[8] Post-*Rothstein*, the court in *Trevathan v. Select Portfolio Servicing., Inc.*, 2015 WL 6913144 (S.D. Fla. Nov. 6, 2015), assessed the application of the filed rate doctrine to Florida LPI placements like the Ervings and "agree[d] with the logic and conclusions" of *Rothstein*. *Trevathan* further held that permitting claims identical to the ones here to proceed "would contravene the purposes of the filed-rate doctrine."  *Id.* at *3 and n.3.

*Public Serv. Co.*, 341 U.S. 246, 251 (1951)).  A plaintiff suffers "no legally cognizable injury by virtue of paying the filed rate."  *Id.*; *see also In re N.J. Title Ins. Litig.*, 683 F.3d 451, 461 n.7 (3d Cir. 2012) (paying "existing rates do[es] not constitute a cognizable legal injury under the filed rate doctrine"); *Morales*, 983 F. Supp. at 1429 (holding that insureds "have no legal right to pay anything other than the promulgated rates, they have suffered no cognizable injury by virtue of paying said rates").

Because plaintiffs "have no legal right to pay anything other than the promulgated rates, they have suffered no cognizable injury by virtue of paying said rates."  It is proper to raise the filed rate doctrine as a Rule 12(b)(1) challenge to the Ervings' standing, in addition to raising the doctrine in a Rule 12(b)(6) challenge to the merits of the Ervings' claims.[9]

## CONCLUSION

In light of the decision in *Rothstein*, the Court should partially reconsider the Assurant Defendants' Rule 12(b)(1) motion as it concerns the filed rate doctrine and, because this action is barred against the Assurant Defendants by the filed rate doctrine, it should be dismissed.  SGIC should be dismissed independently because no claims remain against it.

---

[9] *See, e.g., Keogh v. Chicago & Nw. Ry. Co.*, 260 U.S. 156, 163 (1922) (when a party pays the filed rate, they have suffered no injury); *Wah Chang v. Duke Energy Trading & Mkt'g, LLC*, 507 F.3d 1222, 1225, 1227 n.17 (9th Cir. 2007) (affirming dismissal under 12(b)(1) where filed rate doctrine applied to "completely dispose[] of this case"); *Saunders v. Farmers Ins. Exchange*, 440 F.3d 940, 944 (8th Cir. 2006) ("the no-injury principle of *Keogh* applies to deprive a RICO or antitrust plaintiff of standing under federal law to challenge a filed rate that must be charged under state law."); *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 846, 849 (N.D. Ohio 2010) ("[t]he filed rate doctrine is merely a judicially created restriction on remedies and standing.").

Dated:     November 20, 2015                    Respectfully submitted,


SULLIVAN & WORCESTER LLP                CARLTON FIELDS JORDEN BURT, P.A.

Andrew T. Solomon
asolomon@sandw.com                      By: */s/ Frank G. Burt*_____
1633 Broadway                           Frank G. Burt (*pro hac vice*)
32nd Floor                              fburt@cfjblaw.com
New York, New York 10019                W. Glenn Merten (*pro hac vice*)
Telephone: (212) 660-3000               gmerten@cfjblaw.com
Facsimile: (212) 660-3001               Brian P. Perryman (*pro hac vice*)
                                        bperryman@cfjblaw.com
                                        1025 Thomas Jefferson Street NW
                                        Suite 400 East
                                        Washington, DC 20007
                                        Telephone: (202) 965-8100
                                        Facsimile: (202) 965-8104

                                        *Attorneys for Defendants Assurant, Inc.,*
                                        *American Security Insurance Company, and*
                                        *Standard Guaranty Insurance Company*