UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| | : | ECF Case |
| JIMMY LYONS, *et al.*, individually and | : | |
| on behalf of all others similarly situated, | : | No. 13 Civ. 513 (ALC) (HBP) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| LITTON LOAN SERVICING LP, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**<u>FILED PURSUANT TO THIS COURT'S ORDER TO SHOW CAUSE</u>**

I.      **The Form of the Alleged "Kickback" is Immaterial.**

Plaintiffs' challenge was to show how their allegations fall outside the broad scope of *Rothstein*, which holds that claims based on allegedly inflated LPI premiums are barred under the filed rate doctrine regardless of the nature or type of the purported "kickback" or other fraudulent conduct underlying the LPI rate at issue.   *Rothstein's* reasoning applies to any challenge to the rate charged to a borrower, regardless of how framed, where the rate charged was equal to the rate approved by a regulator.   The form of the purported "kickback" is not material to the analysis, and the artificial distinctions attempted by Plaintiffs are unavailing.

Plaintiffs' effort to distinguish *Rothstein* is belied by their previous concession that *Rothstein* is "exactly the situation alleged here."  ECF No. 118 at 12.  The core allegation in each case is precisely the same: the *Rothstein* plaintiffs and plaintiffs here both allege that "kickbacks" supposedly inflated their LPI premiums.  *Compare Rothstein*, 794 F.3d at 260 ("Plaintiffs allege that the amounts billed by [the servicer] were inflated because they did not reflect hidden 'rebates' that [the servicer] received from [the insurer] through a 'kickback scheme.'") *with* SAC ¶ 44 ("The Loan Servicing Defendants pass on charges for "reimbursement" of the insurance premiums paid by them to the Insurer Defendants, despite the fact that . . . the charges for which the Loan Servicing Defendants seek "reimbursement" do not constitute their actual cost once the "commissions" tracking fees and other payments between the Insurer Defendants and the Loan Servicing Defendants are taken into account.").  Just as the Second Circuit properly did not distinguish among different kinds of alleged kickbacks in *Rothstein*,[1] neither does the complaint

_____

[1] Stray comments made by Judge Lynch at the *Rothstein* oral argument have no precedential value, and "[t]his type of interpretation of judicial precedent is unacceptable." *United States v. Bd. of Educ. of City of Chicago*, 799 F.2d 281, 284 n.4 (7th Cir. 1986) (a judicial opinion "stands as the sole expression of the court; statements made at oral argument do not determine the scope

*(footnote continued on next page)*

1

here.  It instead lumps together commissions, reinsurance premiums, outsourced services, and "other charges" as "kickbacks" that allegedly caused plaintiffs' LPI premiums to be inflated, and does not purport to distinguish claims related to "tracking services" from claims related to any other type of "kickback."  *See, e.g.,* SAC ¶ 205 ("By categorizing outsourced loan servicing functions, illusory reinsurance, commissions paid to servicers, and other charges as 'expenses,' and then conspiring to pass the cost of such 'expenses' on to borrowers whose insurance was force-placed, when the borrowers were not obligated to pay such amounts, the [defendants] committed fraud."); *see also id.* ¶¶ 96, 230(b), 294, 331(b).  Plaintiffs' argument also ignores multiple District precedents relying on the filed-rate doctrine to dismiss allegations of kickbacks involving commissions.  *See Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 548 (S.D.N.Y. 2014); *Curtis v. Cenlar FSB*, 2013 WL 5995582, at *3 (S.D.N.Y. Nov. 12, 2013).

Under the controlling precedent of *Rothstein,* plaintiffs' claims are barred under the filed rate doctrine.  Plaintiffs seek a "discount," whatever its form, allegedly provided to the loan servicers; that "question is reserved exclusively to the regulators."  *Rothstein*, 794 F.3d at 263.[2]

## II.    Plaintiffs' Characterization of Their Claims is Irrelevant.

Plaintiffs' argument that they are challenging the defendants' "unlawful conduct" rather than the actual cost of the coverage is at once disingenuous, SAC ¶¶ 13, 22-24, 36, 42, 278, and inconsequential.  *Rothstein* unequivocally held that the filed rate doctrine bars a claim "even if it

---

of an opinion unless explicitly incorporated into the opinion."); *United States v. Maciel-Alcala*, 612 F.3d 1092, 1096 (9th Cir. 2010) (comments at oral argument "have no precedential value").

[2] Even assuming, for purposes of this motion *only*, that commissions were paid, they are cost components of the filed and approved rates.  *See, e.g.*, ECF Nos. 105-8, 105-11.  Regulators were informed that rates included commissions and were *mandated by law* to take such costs into account in reviewing those rates, *see e.g.*, Fla. Stat. §627.062(2)(i)(1), and then approved the rates with the commission included.  Plaintiffs' suggestion that the filed rate doctrine does not apply to an identified component of the filed and approved rate defies reason and governing law.

can be characterized as challenging something other than the rate itself." 794 F. 3d at 262. Plaintiffs' claim that the *Rothstein* plaintiffs never made a similar argument is incorrect. Relying on a distinction substantively identical to the one plaintiffs make here, plaintiffs in *Rothstein* insisted "that the filed rate doctrine did not bar their claims because they were attacking the fraudulent scheme, not the rates themselves." *Rothstein*, 794 F.3d at 262. The *Rothstein* court rejected that distinction, concluding that "[p]laintiffs' claims in this appeal . . . rest on the premise that the rates approved by regulators were too high." *Id*. at 263. The court elaborated that plaintiffs' true "theory" is that they "were overbilled when they were charged the full LPI rates (which were approved by regulators), instead of lower rates net of the value of" the purported kickbacks. *Id*. The claims in *Rothstein*, therefore, "[p]lainly . . . would undermine the rate-making authority of the state insurance regulators who approved Balboa's LPI rates." *Id.*

Like the Second Circuit in *Rothstein*, other jurisdictions flatly reject the proposed conduct/rate distinction. The Eighth and Tenth Circuits, for example, aptly explained:

> [T]he ***underlying conduct does not control*** whether the filed rate doctrine applies. Rather, the focus . . . is the ***impact the court's decision*** will have on agency procedures and rate determinations. The dispositive question, then, is whether, if the plaintiffs succeed on their damages claims, the court's determination will impact the agency's rate determinations. If so, the 'filed rate' doctrine will bar the claim.

*Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 890 (10th Cir. 2011) (emphasis added); *H.J. Inc. v. NW. Bell Tel. Co.*, 954 F.2d 485, 486, 489 (8th Cir. 1992). Similarly, the court in *Trevathan v. Select Portfolio Services, Inc.*, 2015 WL 693144 (S.D. Fla. Nov. 6, 2015), recently rejected the argument that "it is not the rate itself, but rather the 'kickback' present in the inflated rate and the Defendants' alleged 'collusion and self-dealing' that is at issue" and "agree[d] with the logic and conclusions" in *Rothstein*. *Id.* at *3 & n.3; *see also Haddock  v. Countrywide Bank, N.A.*, 2015 WL 9257316, at *18-*19 (C.D. Cal. Oct. 27, 2015).

Ignoring these directly relevant authorities, plaintiffs strain to apply off-point cases from the Third Circuit, *all* of which predate *Rothstein*.  But the leading Third Circuit case cited by plaintiffs, *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009), is easily distinguishable.  *Alston* involved claims under the anti-kickback provisions of RESPA, which gave plaintiffs statutory standing that they otherwise would not have had.  *Id.* at 762-63.  Thus, in the limited circumstances where the distinction between filed rate and kickback challenges implicates separate injuries—one of which is a statutory right created by Congress—the Third Circuit ruled that the distinction is material.  *Alston* created no right of action outside of RESPA for those who paid filed rates but allege kickbacks, and the court made clear that its holding did not extend to scenarios that "directly challenge[] the filed rate as reasonable."  *Id.* at n.13 (*citing Stevens v. Union Planters Corp.*, 2000 WL 33128256 (E.D. Pa. Aug. 22, 2000).  In any event, *Alston* is not controlling in the Second Circuit, and the more directly applicable analyses by the Eighth and Tenth Circuits reject plaintiffs' purported distinction of *Rothstein*.

In short, *Rothstein* controls and expressly holds that plaintiffs' insistence that they are challenging something other than the filed rates—even if true—has no consequence on the application of the filed rate doctrine.  Any potential relief granted would plainly result in judicial interference with regulatory authority, and as such the filed rate doctrine bars plaintiffs' claims.

## III.    It Is Immaterial That Plaintiffs Are "Additional Insureds."

Plaintiffs further attempt to distinguish *Rothstein* by emphasizing that the LPI policies here list the servicer as the insured and the borrower as an additional insured, whereas those roles were reversed in *Rothstein*.  This is once again a distinction without a difference.  *Rothstein* specifically held that the filed-rate doctrine is "not limited" to the "simple A-to-B transaction" where "the [borrower] deals directly with the [insurer]."  *Rothstein*, 794 F.3d at 264.  In *all*

4

contexts "[t]he purpose of LPI is to enforce the borrower's contractual obligation to maintain adequate hazard insurance; the lender acts on the borrower's behalf and in the borrower's place to 'force place' a transaction that the borrower should have entered." *Id*. at 265. Because "LPI travels invariably 'A-to-B-to-C,'" and the borrower is always the ultimate party responsible for paying for the coverage, it is immaterial which party is named primary versus additional insured. *Id*. at 265. At least two post-*Rothstein* courts have not limited the decision's reach in the manner urged by plaintiffs. *See Trevathan*, 2015 WL 6913144; *Haddock*, 2015 WL 9257316.

**IV.   *Rothstein* Bars Claims Against Loan Servicers.**

Plaintiffs argue that because the loan servicer was not a party to the appeal, *Rothstein* does not bar claims against servicers. But *Rothstein* expressly held that the filed rate doctrine should apply "when the rate has passed through an intermediary." *Rothstein*, 794 F.3d at 264. The Second Circuit recognized that "LPI is an A–to–B–to–C transaction that implements a two-party transaction between the insurer and the borrower," and that "it would make little sense for the doctrine to apply as between the rate filer and the intermediaries, but not when it comes to the ultimate ratepayers." *Id.* at *265. *Rothstein* holds that claims by borrowers, the "ultimate ratepayers," are barred, and plaintiffs' citation to pre-*Rothstein* district court decisions that either (i) were overruled by *Rothstein* or (ii) rely on the same flawed analysis that *Rothstein* rejected does nothing to alter that analysis.

Plaintiffs also label *Trevathan* as "isolated" and an "outlier." But *Trevathan* addresses head-on whether the filed rate doctrine bars claims against servicers that pass on LPI charges equal to, but not greater than, the filed rate and concludes, relying on *Rothstein*, that it does. 2015 WL 6913144, at *3. Permitting claims against servicers which pass along the exact rate insurers are required to charge "would contravene the purposes of the filed rate doctrine." *Id.*

5

Dated:    January 8, 2016

STROOCK & STROOCK & LAVAN LLP

By: */s/ Melvin A Brosterman*
Melvin A. Brosterman
mbrosterman@stroock.com
Quinlan D. Murphy
qmurphy@stroock.com
Patrick N. Petrocelli
ppetrocelli@stroock.com
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

  -and-

Benjamin G. Diehl
bdiehl@stroock.com
Wesley M. Griffith
wgriffith@stroock.com
2029 Century Park East, Suite 1600
Los Angeles, California 90067-3086
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

*Attorneys for Defendants The Goldman Sachs Group, Inc. and Arrow Corporate Member Holdings LLC*

HUNTON & WILLIAMS LLP

By: */s/ Brian V. Otero*
Brian V. Otero
botero@hunton.com
Stephen R. Blacklocks
sblacklocks@hunton.com
Ryan A. Becker
rbecker@hunton.com
200 Park Avenue, 52nd Floor
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Defendant Litton Loan Servicing LP*

Respectfully submitted,

CARLTON FIELDS JORDEN BURT, P.A.

By: */s/ Frank G. Burt*
Frank G. Burt (*pro hac vice*)
fburt@cfjblaw.com
W. Glenn Merten (*pro hac vice*)
gmerten@cfjblaw.com
Brian P. Perryman (*pro hac vice*)
bperryman@cfjblaw.com
1025 Thomas Jefferson Street NW
Suite 400 East
Washington, DC 20007
Telephone: (202) 965-8100
Facsimile: (202) 965-8104

SULLIVAN & WORCESTER LLP
Andrew T. Solomon
asolomon@sandw.com
1633 Broadway
32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Defendants Assurant, Inc., American Security Insurance Company, and Standard Guaranty Insurance Company*

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Mary Gail Gearns*
Mary Gail Gearns
marygail.gearns@morganlewis.com
Matthew Minerva
matthew.minerva@morganlewis.com
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001

*Attorneys for Defendants Saxon Mortgage Services, Inc. and Morgan Stanley*

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of January, 2016, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

<u> /s/   <i>Frank G. Burt</i></u>